
5 Original

1 | Robert Mitchell P-87230

2 | C.S.P-Sacramento

3 | P.O. Box 29

4 | Represa, CA 95671

5 | Plaintiff, In Pro Per

6

7

FILED

MAY 3 0 2008

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

8 |        THE UNITED STATES DISTRICT COURT

9 |        THE EASTERN DISTRICT OF CALIFORNIA

10

11 | Robert Mitchell,                    Case No.

12 |        Plaintiff,            2:08CV-1196 JAM EFB PC

13 | vs.                         Complaint For Violation of

14 | T. Felker, Warden,          Civil Rights 42 U.S.C. § 1983

15 | J. Walker, Warden;          And 42 U.S.C. § 1985 (2)

16 | C. Buckley, Classification  And Demand For Jury Trial

17 | Service Representative ("CSR");

18 | D. Vanderville, Facility Captain ("CCII");

19 | D. Leiber, Facility Captain ("CCII");

20 | J. Mayfield, Facility Captain ("CCII");

21 | A. Masuret, Facility Captain ("CCII");

22 | T. Barnard, Correctional Counselor ("CCI");

23 | J. Owen, Correctional Counselor ("CCI");

24 | D. Hellwig, Correctional Counselor ("CCI");

25 | T. Kimzey, Correctional Counselor ("CCI");

26 | D. Cade, Correctional Counselor ("CCI");

27 | B. Blanthora, Alternative Correctional Personnel ("CSW");

28 | A. Beamon, Alternative Correctional Personnel;

page 1.

1  N. Grannis, Chief Inmate Appeals Officer,

2        , Inmate Appeals Examiner;

3  T. Lockwood, Chief Regulation And Management Branch ("RPMB");

4  J. McClure, Chief Regulation And Management Branch ("RPMB");

5  J. Tilton, Director of California Department of Corrections

6  And Rehabilitation ("CDCR") And

7  Does 1 to 10, Inclusive,

8                              Defendants.

1        _____Jurisdiction And Venue_____

2  1.) This action arises under the United States Constitution

3  And the Civil Rights Acts pursuant to 42 U.S.C. 1983, and

4  42 U.S.C. 1985 (2), And the First, Eighth And Fourteenth

5  Amendment to the United States Constitution.

6        Jurisdiction of this Court is invoked under 28 U.S.C.

7  1343 (a) (3) And 1391, And the aforementioned

8  Statutory And constitutional provisions.

9        Plaintiff further invokes Supplemental Jurisdiction

10  pursuant to 28 U.S.C. 1367, to hear And decide State law

11  Claims.

12        Venue is founded in this Judicial District upon

13  28 U.S.C. 1391.

14        _____General Allegations_____

15  2.) At all times mentioned, Plaintiff resided at High

16  Desert State Prison ("HDSP"), Susanville, California

17  And California State Prison-Sacramento ("CSP-SAC"),

18  Represa, California.

19        _____Parties_____

20  3) Defendant I Felker, Warden, is employed by the

21  California Department of Corrections And Rehabilitations

22  And is the Chief Executive Officer At High Desert State

23  Prison ("HDSP"), And is responsible for the custody,

24  treatment And discipline of all inmates under his

25  charge. The Warden is also the supervising officer of

26  every other defendant At High Desert State Prison ("HDSP"),

27  And is responsible for ensuring that All subordinate

28  Staff Are in full compliance with all applicable rules,

1  regulations, laws and prison guidelines. The warden is
2  also required to obey all applicable rules, regulations,
3  laws and prison guidelines. He is sued in his individual
4  capacity.

5  4.) Defendant J. Walker Warden, is employed by the California
6  Department of Corrections and Rehabilitation, and is the
7  Chief Executive Officer at California State Prison-Sacramento
8  ("CSP-SAC") and is responsible for the custody, treatment
9  and discipline of all inmates under his charge. The
10  warden is also the supervising officer of every other
11  defendant at California State Prison-Sacramento ("CSP-SAC")
12  and is responsible for ensuring that all subordinate staff
13  are in full compliance with all applicable rules, regulations,
14  laws and prison guidelines. The warden is also required
15  to obey all applicable rules, regulations, laws and prison
16  guidelines. He is sued in his individual capacity.

17  5.) Defendant D. Vanderville Facility Captain, is Chief
18  Custodial officer of High Desert State Prison ("HDSP")
19  and is responsible for the custody, treatment and
20  discipline of all inmates under his charge at High Desert
21  State Prison ("HDSP"). The Facility Captain is also the
22  supervising officer of every other defendant at High
23  Desert State Prison ("HDSP"), and is responsible for
24  ensuring that all subordinate staff are in full compliance
25  with applicable rules, regulations, laws and prison guidelines.
26  The Facility Captain is also required to obey all applicable
27  rules, regulations, laws and prison guidelines. He is sued
28  in his individual capacity.

6.) Defendants D. Leiber, J. Mayfield, and A. Masuet are all Facility Captains at California State Prison-Sacramento ("CSP-SAC"), they are Chief Custodial Officers of California State Prison-Sacramento ("CSP-SAC"), and they're responsible for the custody, treatment and discipline of all inmates under their charge, at California State Prison-Sacramento ("CSP-SAC"). The Facility Captain is also the supervising officer of every other defendant at California State Prison-Sacramento ("CSP-SAC"), and is responsible for ensuring that all subordinate staff are in full compliance with all applicable rules, regulations, laws and prison guidelines. The Facility Captain is also required to obey all applicable rules, regulations, laws and prison guidelines. They are all sued in their individual capacity.

7.) Defendants T. Barnard, J. Owen and D. Hellary are all Correctional Counselors employed by the California Department of Corrections and Rehabilitation at High Desert State Prison ("HDSP") and they're responsible for the custody, treatment and discipline of all inmates under their charge at High Desert State Prison ("HDSP"). The Correctional Counselor is also responsible for ensuring that all subordinate staff are in full compliance with all applicable rules, regulations, laws and prison guidelines. The Correctional Counselor is also required to obey all applicable rules, regulations, laws and prison guidelines. They are all sued in their individual capacity.

8) Defendants _T. Kimzey_ and _D. Cade_ are both Correctional Counselors employed by the California Department of Corrections and Rehabilitation at California State Prison - Sacramento ("CSP-SAC"). And they're responsible for the custody, treatment and discipline of all inmates under their charge at California State Prison - Sacramento ("CSP-SAC"). The Correctional Counselor is also responsible for ensuring that all subordinate staff are in full compliance with all applicable rules, regulations, laws and prison guidelines. The Correctional Counselor is also required to obey all applicable rules, regulations, laws and prison guidelines. They are both sued in their individual capacity.

9) Defendant _C. Buckley_ Classification Service Representative ("CSR"), is employed by the California Department of Corrections and Rehabilitation at High Desert State Prison ("HDSP") and is the inmate classification service representative ("CSR"), assigned to review, approve, modify or disapprove inmate special housing programs and treatment category designations as recommended by institution staff. To conduct special audits and reviews of classification committee actions to determine that departmental policy is being followed. The Classification Service Representative ("CSR"), is responsible for ensuring that all correctional staff are in full compliance with all applicable rules, regulations, laws and prison guidelines. The Classification Service Representative ("CSR") is also required to obey all applicable rules, regulations, laws and prison guidelines. He is sued in his individual capacity.

Case 2:08-cv-01196-TLN-EFB   Document 1   Filed 05/30/08   Page 7 of 53

1  (a) Defendants R. Blanthorn and R. Beamon Alternative
2  Correctional Personnel, is employed by the California
3  Department of Corrections and Rehabilitation at High Desert
4  State Prison ("HDSP") and was appointed as an Alternative
5  Classification Committee members, assigned to oversee
6  inmate classifications. The alternative Correctional
7  Personnel, is responsible for ensuring that all classification
8  Committee members are in full compliance with all applicable
9  rules, regulations, laws and prison guidelines. The Alternative
10 Correctional Personnel is also required to obey all applicable
11 rules, regulations, laws and prison guidelines. They are both
12 sued in their individual capacity.
13 11.) Defendant N. Grannis Chief Inmate Appeals Officer, is
14 employed by the California Department of Corrections and
15 Rehabilitation, and is the Chief Executive Inmate appeals
16 Officer in Sacramento, And is responsible for reviewing
17 inmate appeals at the Director's level, meeting with CDCR
18 Administrators to review policy and procedures needs as
19 revealed by inmate appeals, conducting audits of facility
20 units and providing inmates with the ability to exhaust
21 all administrative remedies before requesting review by
22 the Courts. The Chief Inmate Appeals officer is also
23 responsible for ensuring that all subordinate staff inmate
24 Appeals examinators are in full compliance with all
25 applicable rules, regulations, laws and prison guidelines.
26 The Chief Inmate Appeals officer is also required to obey
27 all applicable rules, regulations, laws and prison guidelines
28 She is sued in her individual capacity.

page 8

1 | 12.) Defendant _____ Inmate Appeal Examiner
2 | is employed by the California Department of Corrections and
3 | Rehabilitation at the Chief Inmate Appeals Branch in
4 | Sacramento, and is responsible for processing inmate appeals
5 | at the Director's Level, monitor the system, prepare the
6 | quarterly appeals report, recommend corrective action
7 | where indicated, work with the Chief Inmate Appeals
8 | Officer to ensure that all appeals procedures are carried
9 | out. The Inmate Appeals Examiner is also responsible
10 | for ensuring that all staff are in full compliance with
11 | all applicable rules, regulations, laws and prison guidelines.
12 | The Inmate Appeals Examinator is also required to obey
13 | all applicable rules, regulations, laws and prison guidelines.
14 | He is sued in his individual capacity.
15 | 13. Defendants T. Lockwood, Chief, Regulation & Policy Management
16 | Branch ("RPMB") and T. McClure, Regulation & Policy
17 | Management Branch ("RPMB"), are both employed by the
18 | California Department of Corrections and Rehabilitation at
19 | the Regulation & Policy Management Branch ("RPMB") in
20 | Sacramento And the ("RPMB") oversees the regulatory process
21 | for CDCR. The ("RPMB") is responsible for CDCR's policy
22 | development process and coordinates the publication and
23 | distribution of Administrative, and Informational Bulletins
24 | and the Director's Rules. The ("RPMB") also supervises the
25 | revision, publication, and distribution of ("DOM") and ensures
26 | that all policies, procedures, and regulations are consistent
27 | with California laws. The ("RPMB") is also responsible
28 | for ensuring that all staff are in full compliance with all

1  Applicable rules, regulations, laws and prison guidelines.
2  The ("RPMB") is also required to obey all applicable
3  rules, regulations, laws and prison guidelines. The are both
4  sued in their individual capacity.
5  14.) Defendant J. Tilton _____ Director of the California
6  Department of Corrections and Rehabilitation ("CDCR"),
7  is employed by the ("CDCR") in Sacramento, and is
8  the Chief Executive and Administrator of ("CDCR") in
9  the operation of its programs, for the supervision,
10  management, and control of State Correctional Facilities.
11  The Director is also Chairman of ("PTB"), and member
12  of the Board of Corrections. The Director is also the
13  supervising officer of all defendants, and is responsible
14  for ensuring that all subordinate staff are in full compliance
15  with all applicable rules, regulations, laws and prison guidelines.
16  The Director is also required to obey all applicable rules,
17  regulations, laws and prison guidelines. He is sued in his
18  individual capacity.
19  15.) Defendant Does 1 to 10, are Correctional Personnel employed
20  by the California Department of Corrections and Rehabilitation
21  at California State Prison - Sacramento, and is responsible
22  for the custody, treatment and discipline of all inmates
23  under their charge. Defendant Does is also required to obey
24  all applicable rules, regulations, laws and prison guidelines.
25  They are all sued in their individual capacity.
26
27
28

1  16.) By reason of the Defendant's conduct, and each of

2  them, the plaintiff was deprived of rights; privileges

3  And immunities secured to him by the First, Eighth

4  and Fourteenth Amendment of the United States.

5  Constitution and laws enacted thereunder.

6  17.) At all material times relevant in this complaint,

7  every defendant, and each of them, including Does 1 to 10,

8  were acting and continues to act under the color of

9  State Law,

10                Exhaustion of Administrative Remedies

11  18. All facts were presented in plaintiff's complaint for

12  review, through the Prisons' Grievance procedure. Plaintiff's

13  Complaint was denied on all four (4) levels of review.

14  A.) Informal Level "Denied" date: Bypass

15  B) First Formal Level "Denied" date: February 6, 2008

16  C.) Second Formal Level "Denied" date: April 7, 2008

17  D.) Third Director's Level "Denied"

18  This completed the exhaustion of administrative remedies

19  for 602-Appeal log No. SAC-B-08-00079.

20  19.) On February 27, 2008, plaintiff submitted a claim for

21  Damages with the State Government Claims Board Claim No.

22  G-569735.

23  20. On March 20, 2008,  the claim was denied in its entirety.

24  21. Plaintiff Robert Mitchell, is currently incarcerated at

25  California State Prison-Sacramento, proceeding proper, brings

26  his action pursuant to 42 U.S.C.1983 and 42 U.S.C.1985 (2),

27  Against the Director of Corrections, the Warden and Several

28  Correctional personnel at California State Prison-Sacramento,

1  And High Desert State Prison, alleging that defendants at
2  both prisons collectively conspired to and violated his
3  First, Eighth and Fourteenth Amendment rights.
4  22) By Defendants' conspiring and obstructing the due
5  course of Justice in state court, Plaintiff was denied
6  rights, privileges and immunities secured to him under
7  42 U.S.C. 1985 (2) and laws enacted thereunder.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

page 12

<u>Factual Allegations</u>

23    The conflict with Defendants T. Felker, C. Buckley, D. Vanderville, T. Barnard, J. Owen, D. Hellwig, R. Blanthorn and R. Beamon began on September 12, 2006, when plaintiff and the entire African American inmate population on Facility 'C' yard at High Desert State Prison, were placed on full lockdown status because of an incident that occurred on another facility yard involving another race.

24. On September 18, 2006, plaintiff submitted a 602-appeal log no. HDSP-C-06-02672, challenging High Desert State Prison's preferential race segregation lockdown policy. The defendants refused to respond while plaintiff and the entire African American inmate population remained on full lockdown status, confined to their cells, not permitted to receive fresh air, exercise or participate in programming or other activities.

25. On November 24, 2006, plaintiff and the entire African American inmate populations' full lockdown status was continued, due to an assault that occurred on Facility 'A', Building 2, involving Twelve (12) Asian-Pacific Islander inmates assaulting two correctional officers.

26. Again, plaintiff and the entire African American inmate population Facility 'C' remained on full lockdown status, while other inmates identified as white, Hispanic, and Asian-Pacific Islanders were allowed to continue programming.

Case 2:08-cv-01196-TLN-EFB   Document 1   Filed 05/30/08   Page 13 of 53

27. Plaintiff and the entire African American inmate population on Facility 'c' remained on full lockdown status and confined to their cells, after an investigation determined that the November 24, 2006 incident had nothing to do with African American inmates, that the incident occurred on Facility 'a' and it was an isolated event involving inmates classified as Asian-Pacific Islanders.

28. On December 13, 2006, plaintiff and the entire African American inmate population on Facility 'c' yard #1, again remained on full lockdown status, because of an incident occurring on Facility 'c' yard #2, involving African American inmates.

29. Plaintiff and the entire African American inmate population on Facility 'c' yard #1 remained on full lockdown status until January 3, 2007

30. On January 4, 2007 plaintiff and the entire African American inmate population on Facility 'c' yard again, was placed back on full lockdown status, because of an incident involving one (1) African American inmate.

31. After an investigation, it was determined that the incident was an isolated event, plaintiff and the entire African American inmate population on Facility 'c' yard, again remained on full lockdown status, while inmates classified as White, Hispanic and Asian-Pacific Islanders were allowed to continue programming.

page 14

1  32. After approximately four (4) months without

2  plaintiff receiving a response to his 602-appeal

3  log no. HDSP-C-06-02672, relating to High Desert

4  State Prison's preferential race segregation lockdown

5  policy, defendants interviewed plaintiff regarding

6  the abovementioned 602-appeal.

7  33. During this interview, plaintiff was told by

8  Sergeant C. Scott, that "this is High Desert, where

9  everything here is done according to race. So, if

10  one black does something, all blacks are placed

11  on lockdown." Regardless, if they had anything

12  to do with the incident or not."

13  34. From January 4, 2007, through March 30, 2007

14  plaintiff and the entire african american inmate

15  population on Facility 'C' yard, remained on Full

16  lockdown status, while inmates classified as

17  white, Hispanic and asian-pacific Islander inmates

18  were not lockdown and allowed to continued

19  programming.

20  35. From March 30, 2007, to plaintiff's subsequent transfer

21  from High Desert State Prison on December 5, 2007, plaintiff

22  and the entire African American inmate population on

23  Facility 'C' remained on Full lockdown status after an

24  investigation determined that the incident giving rise

25  to the lockdown, had nothing to do with plaintiff

26  and/or African American inmates, that the incident

27  was isolated and involved inmates classified as

28  white and Hispanic.

36. On July 2, 2007, plaintiff received a Director's Level Appeal Decision, relating to 602-appeal log no. HDSP-C-06-02672, challenging High Desert State Prison's preferential race segregation lockdown policy.

37. In this response, the Findings state that "the Warden has placed the institutions' inmate population on modified program." The DLR, notes that the CDCR's policy is that when there is an incident involving any race, all inmates of that race are locked up. Ethnic groups are appropriate in segmenting the inmate population during the process of establishing a regular program following an incident."

38. Plaintiff has submitted several 602-appeals, challenging High Desert State Prison's preferential race segregation lockdown policy. Despite, repeated 602-appeals, plaintiff and the entire African American inmate population on Facility 'C' has remained on full lockdown status, confined to their cells and not permitted to receive fresh air, exercise or participate in programming or other activities for approximately fourteen (14) months.

39. As a result of defendants' preferential race segregation lockdown policy, plaintiff remained on full lockdown status for approximately fourteen (14) months, confined to his cell and not allowed to receive fresh air, exercise or participate in programming or other activities. Despite, the fact that the incidents causing the lockdowns involved inmates classified as white, Hispanic, and Asian-Pacific Islanders, that the incidents occurred

1  on other facility yards that plaintiff had no access

2  to, and after an investigation determined that

3  these were isolated events.

4  40. Plaintiff advised the Defendants, and each of them,

5  that he is a "Disabled Inmate," and a participant in

6  the American with Disabilities Act ("ADA"), due to a

7  medical condition that required him to have orthoscopic

8  surgery that left him mobility impaired.

9  41. Furthermore, plaintiff advised defendants, and each of

10  them, that he would experience medical complications, if

11  he was not allowed to ambulate and exercise daily, as

12  part of his post operative recovery and rehabilitation

13  as ordered by his doctor.

14  42. Despite plaintiff's diagnosed medical condition and

15  in disregard of plaintiff's health and safety, the

16  defendants, and each of them, denied plaintiff fresh air,

17  and exercise for approximately fourteen (14) months.

18  43. As a result of the defendants' preferential race

19  segregation lockdown policy, and their display of

20  deliberate indifference, plaintiff was denied fresh air,

21  and exercise for approximately fourteen (14) months.

22  By reason of the aforedescribed acts and omissions,

23  plaintiff has become mentally upset, distressed and

24  aggravated. By reason of the acts and omissions of

25  the defendants, and each of them, plaintiff sustained

26  numerous physical, mental and emotional injuries,

27  including, but not limited to, muscles starting to atrophy,

28  loss of bone density, and severe swelling to his left leg,

1 severe pain, anxiety, dizziness, blurred vision, nightmares,

2 humiliation, indignities and great physical, mental,

3 and emotional pain and suffering. Plaintiff claims

4 general and compensatory damages for such Mental

5 Distress and aggravation in a sum of One Million

6 Dollars ($1,000,000.00).

7 44. The aforementioned acts of Defendants, and each of

8 them, were willful, wanton, malicious, oppressive, vexatious,

9 and done with reckless indifference to and/or callous

10 disregard for plaintiff's rights and Justify an award

11 of Exemplary and Punitive Damages in a sum of Two

12 Million Dollars ($2,000,000.00).

13 45. After Defendants, and each of them, failed and refused

14 to take corrective action, and/or allow plaintiff Fresh

15 Air, and exercise, on September 4, 2007, plaintiff filed

16 a petition for writ of habeas corpus, Case no. CHW-2327,

17 challenging two (2) issues, one, the preferential race

18 segregation lockdown policy, and the undue restriction

19 imposed by High Desert State Prison on petitioner's right

20 to Fresh air and exercise constitutes cruel and unusual

21 punishment, in violation of the Eighth Amendment. And,

22 Two, High Desert State Prison's preferential race segregation

23 lockdown policy, is in violation of the Equal Protection

24 Clause of the Fourteenth Amendment.

25 46. On November 27, 2007, Defendant T. Barnard told Plaintiff

26 that "Mitchell, I attended a staff meeting with Felker, Buckley,

27 Vanderville, owen, Hellwig, Blanthorn and Beaman, where

28 we decided to increase your security housing level From

1 270 to 180, because of all your complaints, lawsuits

2 and the habeas corpus challenging our preferential race

3 segregation lockdown policy."

4 47. Plaintiff explained to Defendant T. Barnard that, to

5 increase his security housing level from 270 to 180, then

6 transfer him to a higher security prison, because he files

7 complaints is a violation of his rights.

8 48. Defendant T. Barnard responded, "look, the department

9 needs to put a 'stop to your filing complaints and lawsuits.

10 This is why the warden held this meeting, and why we took

11 you to committee, so that we can increase your security

12 housing level from 270 to 180 and transfer you out of High

13 Desert."

14 49. Plaintiff replied, "so, the reason you guys are

15 increasing my security housing level from 270 to 180, is

16 because the administration is tired of me filing complaints

17 and lawsuits, and this is why they're transferring me

18 out of High Desert."

19 50. Defendant T. Barnard said, "yes! we don't like your kind

20 here, so warden Felker, and vanderville told Buckley from

21 ("CSR") to increase your security housing level to 180

22 and endorse you to a higher maximum security prison."

23 51. Plaintiff responded, "my kind, what does that mean?"

24 52. Defendant T. Barnard replied, "I mean inmates like

25 you, who file lawsuits and complaints are trouble

26 makers, and they have to go. so, once we transfer you out

27 of High Desert, we won't have to answer anymore of your

28 complaints, and your habeas corpus issues will become moot.

It's a win, win situation for us."

53. Defendant T. Barnard's statements were made in front of other inmates.

54. On December 3, 2007, the Court of Appeals for the Third Appellate District issued an Order to Show Cause to Defendants.

55. On December 5, 2007, approximately thirty six ("36") hours after defendants were ordered to show cause, relating to their preferential race segregation lockdown policy, defendants increased plaintiff's security housing status from 270 to 180, and transferred him to California State Prison- Sacramento ("level-IV-180").

56. On December 13, 2007, plaintiff appeared before Facility 'c' initial classification committee members D. Leiber, D. Cade, J. Mayfield and T. Kimzy regarding plaintiff's December 5, 2007 transfer from High Desert State Prison

57. At plaintiff's initial classification, he explained to defendant committee members D. Leiber, D. Cade, J. Mayfield and T. Kimzey, and each of them, that his security housing level was increased from 270 to 180, that he was transferred from High Desert State Prison because he had filed several complaints, lawsuits and a habeas corpus challenging High Desert State Prison's preferential race segregation lockdown policy. Plaintiff also explained that he had received a CDC-115, Disciplinary Rules Violation Log No. HDSP-C-06-0032, for Manipulation of staff, that was ordered to be Reissued/Reheard

page 20

Case 2:08-cv-01196-TLN-EFB   Document 1   Filed 05/30/08   Page 20 of 53

1  and that according to CDC-operations Manual Section

2  5410.18.3 "Rehearing" a decision to order the rehearing

3  of disciplinary charge acts to void all prior dispositions"

4  concerning the CDC Form 115 being appealed. The CDC-Form

5  115, shall be rewritten and processed as a new CDC Form

6  115."

7  **58.** Plaintiff further explained that according to CDC-

8  operations Manual Section 5410.18.3.1 "Time Limits and

9  CCR Title 15 Section 3320 Hearing Procedures and Time

10  Limitations" states that, they had approximately 30 days

11  in which to reissue his CDC-115 Disciplinary Rules

12  Violation log No. HDSP-C-06-0032.

13  **59.** Plaintiff also explained that on November 27, 2007 he

14  asked Defendants Vanderville, Barnard, Hellwiy, owen,

15  Blanthorn and Beamon, "are you guys going to reissue my

16  CDC-115, log no. HDSP-C-06-0032, because its been

17  approximately seven (7) months and it has not been

18  reissued"? Defendants Vanderville and Barnard said,

19  "look Mitchell, its been over seven (7) months, since we

20  ordered the CDC-115 log no. HDSP-C-06-0032 to be

21  reissued. If we were going to reissue the CDC-115, we

22  had 30 days to do so. Now, because your due process

23  rights were violated, and the fact that the CDC-115 log

24  no. HDSP-C-06-0032 should have never been issued in the

25  first place, we are not going to reissue or rehear CDC-115

26  log No. HDSP-C-06-0032, its going to be abandoned."

27

28

60. Defendant J. Mayfield replied, "Mitchell there's a memo here from High Desert State Prison UCC committee members: Vanderville, Barnard, Owen, Hellwig, Blankhorn, Beamon and Classification Service Representative Buckley, stating that "Mitchell's transfer and increase security housing status from 270 to 180, is due to the filing of several complaints, lawsuits and habeas corpus challenging our segregation lockdown policy."

61. Plaintiff told Defendant J. Mayfield that First, this transfer is illegal, and my rights are being violated. Second according to CDC-operations Manual section 54100.18.3 Rehearing my CDC-115 log no. HDSP-C-06-0032 was voided out, and Abandoned. Therefore, the four (4) classification Score points that were assessed because of the original guilty findings must be removed. This therefore, reduces my classification score by four (4) points from 53 to 49 thereby, making me a level 3 security level.

62. Furthermore, plaintiff explained that, an additional two (2) classification score points must be removed because, my CDC-115 log no. HDSP-C-06-0032 was voided out. This therefore, should've reduced my classification score by eight (8) points, at my annual review on November 6, 2007, because my CDC-115 log no. HDSP-C-06-0032 was voided out. This therefore, allows me to earn Two (2) Quater Periods of Average work performance, instead of Six (6) classification score points that were removed due to One (1) Quater Period of no serious CDCR-115s.

1 | Now, based on this, this reduces my classification score

2 | from 49 to 47, further making me a level 3 security

3 | level.

4 | 63. Plaintiff again told Defendants D. Leiber, D. Cade,

5 | J. Mayfield and T. Kimrey, and each of them, that his

6 | transfer to C.S.P.-Sacramento, was illegal and plaintiff

7 | requested that they immediately take corrective action,

8 | by voiding out and removing CDC-115 log no. HDSP-C-06-0032

9 | from his Central File ("C-File"), adjust his classification

10 | score by substracting six (6) classification score points

11 | and transfer him to another institution that's consistant

12 | with level 3 security level placement score (47) according

13 | to department policy and procedure.

14 | 64. Defendant J. Mayfield replied, "Mitchell, I don't care

15 | about department policy or your rights being violated.

16 | You were sent here because of your complaint filing. If

17 | you don't like the way your being treated, then stop

18 | filing lawsuits."

19 | 65. Plaintiff said, "the department operations manual

20 | ("DOM") says that your suspose to voidout and restore

21 | all penalty assessments associated with CDC-115 log no.

22 | HDSP-C-06-0032 and removed it from my central file

23 | ("C-File").

24 | 66. Defendant J. Mayfield responded, "I don't care what the

25 | DOM says. If we don't want to remove a CDC-115 from

26 | your C-file, we don't have to. Regardless, what the DOM

27 | says."

28 |

1 | **67.** Plaintiff told Defendants D. Leiber, J. Mayfield, T. Kimzey,
2 | and each of them, that he would be filing a complaint on
3 | them, because they were encouraging, tollerating and ratifying
4 | the violation of his rights.
5 | **68.** Defendant J. Mayfield responded, "your rights being
6 | violated, I don't care about your rights being violated,
7 | because you don't have any rights. The only rights you
8 | have are what we give you. So, if you want to 602 us,
9 | go ahead, and; Just so you know, I'm going to see to
10 | it that your 602-appeal is heard by CCII Masuret
11 | and
12 | from the chief inmate appeals office in sacramento, and
13 | I am going to personally instruct each of them, not
14 | to correct any constitutional and/or departmental
15 | policy or procedure violations. Just issue a denial and
16 | send it back to you."
17 | **69.** After these statements, plaintiff was escorted back
18 | to his cell.
19 | **70.** On December 13, 2007, plaintiff filed a 602-appeal log
20 | no. SAC-B-08-00079, regarding his December 5, 2007
21 | transfer and the December 13, 2007, Icc committee
22 | hearing.
23 | **71.** On February 6, 2008, plaintiff was interviewed by Defendant
24 | A. Masuret, regarding 602-appeal log no. SAC-B-08-00079
25 | **72.** During this interview, plaintiff explained to Defendant
26 | A. Masuret that his transfer was the product of retaliation,
27 | that he had a CDC-115 log no. HDSP-C-06-0032 for
28 | manipulation of staff, that has been voided out, but

page **24**

1  it has not been removed from his Central File ("C-File") And

2  that he didn't belong at C.S.P.-Sacramento, a maximum

3  security level-IV-180 design prison, because his classification

4  score is (47), and according to the departments'

5  operations manual ("DOM") an inmate with a

6  classification score of (47) is a level 3, security

7  level

8  73. Defendant A. Masuret responded that according to

9  this memorandum dated April 4, 2007, regarding Second

10  Level Appeal Response 602-Appeal log no. HDSP-C-07-

11  01034, the CDC-115 log no. HDSP-C-06-0032, was

12  ordered reissued/reheard, and Mitchell, your right,

13  that according to section 54100.18.3, of the

14  departments' operations manual ("DOM") your CDC-115

15  should've been voided out and removed from your

16  Central File ("C-File") and your classification score

17  should be (47) and not (53).

18  74. Plaintiff then told Defendant A. Masuret that he

19  wanted his 602-appeal log no. SAC-B-08-00079, granted

20  in full, and to be transfered to an institution that's

21  consistant with his (47) classification score.

22  75. Defendant A. Masuret responded, "look Mitchell,

23  there's nothing I can do. Because, I was told by CCII.

24  Mayfield, that your the inmate who filed several

25  complaints, lawsuits and a habeas corpus challenging

26  CDC segregation lockdown policy. Now, I was told by

27  CCII Mayfield not to take any corrective action and

28  I'm not going to take any corrective action. Were done.

1 So, you can go back to your housing unit."

2 76. Plaintiff told Defendant A. Masuret that he was

3 violating his rights by refusing to take corrective action

4 and that he would be grievancing him.

5 77. Defendant A. Masuret responded, "I don't care what

6 you do, because CCII. Mayfield and I, have already.

7 contacted

8 in Sacramento, and we've told them both, not to

9 review or take any corrective action on your 602-appeal

10 log no. SAC-B-08-00079, Just rubber stamp our decision

11 'denied' and send it back to you. So go ahead, send it

12 to sacramento, because nothing is going to happen."

13 78. After the statements, plaintiff was escorted back

14 to his cell.

15 79. On April 17, 2008, plaintiff submitted his 602-appeal

16 log no. SAC-B-08-00079 to Defendants N. Grannis And

17 ____ at the Chief Inmate Appeals Branch

18 in sacramento to correct constitutional And departmental

19 policy and procedure violations.

20 80. On ____ Defendants

21 and N. Grannis upon order from Defendants J. Mayfield And

22 A. Masuret refused to correct constitutional and departmental

23 policy and procedure violations. Instead, issued a "robber

24 stamp" denial without investigating any facts relating to

25 plaintiff's 602-appeal, log no. SAC-B-08-00079.

26

27

28

page 26

1  *81.* Plaintiff alleges that in response to his repeated

2  grievances, and the filing of the following 42 U.S.C. 1983

3  Civil Rights Complaints:

4  A.) Robert Mitchell v. D.G. Adams, et al.

5      No. CIV-06-2321-GEB-GGH (PC);

6  B) Robert Mitchell v. R. Wong, et al.

7      No. CIV-07-2090-LEW-CMK;

8  C.) Robert Mitchell v. Correctional Officer L.Villa

9      No. 03 CV-1157-WQH (PoR);

10 D) Carlos Rosado v. Edward Alameida, Jr, et al.

11     No. 03-CV-1110-J (PoR), And the filing of writ of

12 habeas corpus Case No. CHW-2327, Defendants, and each

13 of them, conspired to abstract the due course of Justice

14 in state court, and interfered with and denied plaintiff

15 his First, Eight and Fourteenth Amendment rights under

16 the U.S. Constitution and laws enacted thereunder.

17 *82.* By Defendants collectively conspiring to increase plaintiff's

18 security housing states from 270 to 180, and transferring him

19 to another prison to moot claims relating to plaintiff's

20 writ of habeas Corpus, Case No. CHW-2327, the Defendants,

21 And each of them, obstructed the due course of Justice in

22 State court, pursuant to 42 U.S.C. 1985 (2) And violated

23 the substantive due process and equal protection clauses

24 of the Fourteenth Amendment.

25 *83.* Plaintiff Alleges that in response to his repeated grievances,

26 And the filing of several 42 U.S.C 1983 Civil Rights Complaints,

27 And a writ of habeas corpus, challenging defendant's

28 preferential Cace segregation lockdown policy, the defendants,

1 And each of them, retaliated against plaintiff for

2 exercising his First Amendment rights, by increasing his

3 security housing status from 270 to 180, then transfered

4 him to another prison to moot all claims relating to

5 plaintiff's writ of habeas corpus Case no. CHW-2327, in

6 violation of the First Amendment... [And that]

7 Defendants, and each of them, collectively conspired to,

8 And chilled plaintiff's exercise of his First Amendment

9 rights [through actions that] do [ ] not advance any

10 legitimate penological goals, nor [are] tailored narrowly

11 enough to achieve such goals.

12 84. By Defendants, and each of them, collectively conspiring

13 to 'moot' all claims relating to Plaintiff's writ of habeas

14 corpus in State court, in retaliation against plaintiff

15 for exercising his First Amendment rights. Plaintiff

16 suffered a chilling effect, when his writ of habeas corpus

17 challenging defendants' preferential race segregation

18 lockdown policy Case No. CHW-2327, was dismissed as

19 a moot claim, because plaintiff was transfered from

20 High Desert State Prison while the case was pending.

21 85. The aforementioned acts of Defendants, and each

22 of them, were willful, wanton, malicious, oppressive,

23 vexatious, deliberate and done with reckless indifference

24 to and/or callous disregard for Plaintiff's rights

25 And justify an award of exemplary and punitive

26 damages in the sum of Two Million Dollars ($2,000,000.00)

27

28

86. Plaintiff advised the Defendants, and each of them, that he is a disabled inmate, and a participant in the Americans with Disabilities Act ("A.D.A"), due to a medical condition that required him to have orthoscopic surgery that left him mobility impaired.

87. Furthermore, plaintiff advised Defendants, and each of them, that he would experience severe medical complications, if he was not allowed to ambulate and exercise daily, as part of his post operative recovery and rehabilitation as ordered by his doctor.

88. Despite, plaintiff's diagnosed medical condition and in deliberate indifference to and in reckless disregard of plaintiff's health and safety, the Defendants, and each of them, denied plaintiff fresh air and exercise for approximately fourteen (14) months.

89. Plaintiff alleges that, as a result of the Defendants' preferential race segregation lockdown policy, and their display of deliberate indifference, plaintiff was denied fresh air and exercise for approximately fourteen (14) months. By reason of the aforedescribed acts and omissions, plaintiff has become mentally upset, distressed and aggravated. By reason of the acts and omissions of the defendants, and each of them, plaintiff sustained numerous physical, mental and emotional injuries, including, but not limited to, muscles starting to atrophy, loss of muscle mass and bone density, and severe pain and swelling to his left leg and hip, severe pain, anxiety, dizziness, blurred vision, nightmares, humiliation, indignities and great physical, mental and emotional pain and suffering.

1  Plaintiff claims General and Compensatory Damages for

2  such mental distress and aggravation in a sum of one

3  Million Dollars ($1,000,000.00)

4  90. The aforementioned acts of Defendants, and each of them,

5  were willful, wanton, malicious, oppressive, vexatious

6  deliberate and done with reckless indifference to and/or

7  callous disregard for plaintiff's rights and Justify an award

8  of exemplary and punitive damages in an amount of Two

9  Million Dollars ($2,000,000.00)

10  91. Plaintiff alleges that Defendants J. Tilton, T. Lockwood,

11  J. McClure and Defendants at High Desert State Prison, possess

12  invidious discriminatory animus towards plaintiff and

13  all inmates classified as African American, and it was

14  this invidious discriminatory animus towards African

15  Americans, that was the catalysis behind the defendants'

16  implementation of a state wide preferential race

17  segregation lockdown policy of segregating inmates by

18  race, and that Defendants' policy was not narrowly

19  tailored, nor did it advance or support any legitimate

20  penological objective.

21  92. Plaintiff alleges that Defendants J. Tilton, T. Lockwood,

22  J. McClure and Defendants at High Desert State Prison,

23  maintains a preferential race segregation lockdown policy of

24  segregating inmates by race, that when there's an incident

25  involving any race, i.e, African Americans," all inmates

26  classified as African Americans are lockdown, even if they

27  had no knowledge or personal involvement in the incident

28  causing the lockdown. While other inmate ethnic groups

page 30

1  i.e white inmates are not lockdown and allowed to continue

2  programming. And, it was this custom, policy and practice

3  that was the moving force behind plaintiff being lockdown

4  and confined to his cell for approximately fourteen (14)

5  months, and not allowed to receive fresh air or exercise.

6  By reason of the aforedescribed acts and omissions of

7  Defendants and each of them, plaintiff has become mentally

8  upset, distressed and aggravated. By reason of the acts

9  and omissions of Defendants, and each of them, plaintiff

10  sustained numerous physical, mental and emotional injuries,

11  including, but not limited to, muscles starting to atrophy,

12  loss of muscle mass and bone density, and severe pain and

13  swelling to his left leg and hip, severe pain, anxiety,

14  dizziness, blurred vision, nightmares, humiliation, indignities

15  and great physical, mental and emotional pain and suffering.

16  Plaintiff claims General and Compensatory Damages for

17  such mental distress and aggravation in a sum of one Million

18  Dollars ($1,000,000.00)

19  93. Plaintiff alleges that Defendants, and each of them, possess

20  invidious discriminatory animus towards plaintiff and all

21  African American inmates, and, it was this class based

22  animus towards African Americans, that was the moving

23  force behind plaintiff and the entire African American

24  inmate population on Facility 'c' at High Desert State Prison

25  being forced to stay on lockdown, and confined to their

26  cells and not allowed to receive fresh air or exercise for

27  approximately fourteen (14) months. The aforedescribed acts

28  and omissions of Defendants, and each of them, shocks

1 | the conscience and interfered with rights implict in the
2 | concept of ordered liberty and violates both the
3 | substantive and procedural due process and equal protection
4 | clauses of the Fourteenth Amendment of the U.S Constitution.
5 | 94. By Defendants' conduct, and each of them, Plaintiff was
6 | deprived of rights, privileges and immunities secured to him
7 | the Fourteenth Amendment of the U.S. Constitution and laws
8 | enacted thereunder.
9 | 95. Plaintiff alleges that as a result of the aforesaid acts
10 | and omissions of Defendants, and each of them, plaintiff
11 | has become mentally upset, distressed and aggravated. By reason
12 | of the acts and omissions of Defendants, and each of them,
13 | Plaintiff sustained numerous physical, mental and emotional
14 | injuries, including, but not limited to, muscles starting to
15 | atrophy, loss of muscles mass and bone density, and severe
16 | pain and swelling to his left leg and hip, severe pain,
17 | anxiety, dizziness, blurred vision, nightmares, humiliation,
18 | indignities, and great physical, mental and emotional pain
19 | and suffering. Plaintiff claims General and Compensatory
20 | Damages for such mental distress and aggravation in a
21 | sum of Two Million Dollars ($2,000,000.00)
22 | 96. The aforementioned acts of Defendants, and each of them,
23 | were willful, wanton, malicious, oppressive, vexatious, deliberate
24 | and done with reckless indifference to, and/or callous
25 | disregard for plaintiff's rights and justify an award of
26 | Exemplary and Punitive Damages in the amount of Two
27 | Million Dollars ($2,000,000.00)
28 |

1 _Count One_

2 _Violation of Civil Rights 42 U.S.C. 1983, First Amendment_

3 _Retaliation_

4 _(By Plaintiff Against All Defendants and Does 1 to 10)_

5 **97** _Plaintiff hereby incorporates and realleges paragraphs_

6 _1 through 96, of this Complaint, as fully set forth at_

7 _this place._

8 **98.** _In Committing the acts set forth in paragraphs_

9 _1 through 96, of this Complaint. Plaintiff alleges that_

10 _in response to his repeated grievances and the filing_

11 _of several 42 U.S.C. 1983, Civil Rights Complaints:_

12 _a) Robert Mitchell V. D.G. Adams, et al,_

13 _No. CIV-06-2321-GEB-GGH (PC):_

14 _b) Robert Mitchell V. B. Wong, et al,_

15 _No. CIV-07-2090-LEW-CMK:_

16 _c) Robert Mitchell V. Correctional Officer L. Villa,_

17 _No. 03-CV-1157-WBH (PGR)_

18 _d) Carlus Rosado V. Edward Alameida, Jr. et al,_

19 _No. 03-CV-1110-J (PGR), and the filing of writ of_

20 _habeas corpos Case No. CHW-2327. Defendants, and each_

21 _of them, conspired to and obstructed the due course_

22 _of Justice in State Court And interfered with And_

23 _denied plaintiff his First Amendment rights._

24 **99.** _Plaintiff Alleges that in response to his repeated_

25 _grievances and the filing of several 42 U.S.C. 1983, Civil_

26 _Rights Complaints, And a writ of habeas corpos, challenging_

27 _Defendants' preferential race segregation lockdown policy,_

28 _the Defendants, and each of them, retaliated against_

1 Plaintiff for exercising his First Amendment rights, by
2 increasing his security housing status from 270 to 180,
3 then transfered him to another prison to moot all claims
4 relating to plaintiff's writ of habeas corpus Case In re
5 Robert Mitchell No. CHW-2327, in violation of the
6 First Amendment... [and that] Defendants, and each of
7 them, collectively conspired to, and chilled plaintiff's
8 exercise of his First Amendment rights [through actions
9 that] do [ ] not advance any legitimate penological
10 goals, nor [are] tailored narrowly enough to achieve
11 such goals.
12 100. By Defendants, and each of them, collectively conspiring
13 to 'moot' all claims relating to Plaintiff's writ of habeas
14 Corpus, in State Court, in retaliation against plaintiff for
15 exercising his First Amendment rights. Plaintiff suffered a
16 'Chilling effect', when his writ of habeas corpus, challenging
17 defendants' preferential race segregation lockdown policy,
18 Case In re Robert Mitchell No. CHW-2327, was dismissed as
19 a 'moot' claim, because plaintiff was transfered from High
20 Desert State Prison, while the case was pending.
21 101. As a result of Defendants' conduct, and each of them,
22 plaintiff was deprived of rights, privileges and immunities secured
23 to him by the First Amendment of the U.S. Constitution and
24 laws enacted thereunder.
25 102. By reason of the aforedescribed acts and omissions, of
26 defendants, and each of them, plaintiff has become mentally
27 upset, distressed and aggravated. By reason of the
28 afuredescribed acts and omissions of defendants, and each

page 34

1 | of them, plaintiff sustained numerous physical, mental
2 | and emotional injuries, including, but not limited to, muscles
3 | starting to atrophy, loss of muscle mass and bone density,
4 | and severe pain and swelling to his left leg and hip, severe
5 | pain, anxiety, dizziness, blurred vision, nightmares, humiliation,
6 | indignities, and great physical, mental and emotional pain and
7 | suffering. Plaintiff claims General and Compensatory Damages
8 | for such mental distress and aggravation in a sum of
9 | One Million Dollars ($1,000,000.00)

10 | 103. The aforementioned acts of Defendants, and each of them,
11 | were willful, wanton, malicious, oppressive, vexatious, deliberate
12 | and done with reckless indifference to and/or callous disregard
13 | for Plaintiff's rights and Justify an award of Exemplary and
14 | Punitive Damages in the sum of Two Million Dollars ($2,000,000.00)

1 |  _Count Two_

2 | _Violation of Civil Rights 42 U.S.C. 1983, First Amendment:_

3 | _Right To Petition The Government For Redress of Grievance,_

4 | _And Denied Access To The Court_

5 | _(By Plaintiff Against All Defendants And Does 1 to 10)_

6 | 104. _Plaintiff hereby incorporates and realleges paragraphs_

7 | _1 through 96, of this Complaint, as fully set forth at this_

8 | _place._

9 | 105. _In committing the acts set forth in paragraphs_

10 | _1 through 96, of this Complaint. Plaintiff alleges that in_

11 | _response to his repeated grievances and the filing of_

12 | _several 42 U.S.C. 1983, Civil Rights Complaints:_

13 | _a) Robert Mitchell V. D.G. Adams, et al._

14 | _No. CIV-06-2321-GEB-GGH (PC);_

15 | _b) Robert Mitchell V. R. Wong, et al,_

16 | _No. CIV-07-2090-LEW-CMK;_

17 | _c) Robert Mitchell V. Correctional Officer L. Villa,_

18 | _No. 03-CV-1157-WQH (PoR)_

19 | _d) Carlos Rosado v. Edward Alameida, Jr, et al,_

20 | _No. 03-CV-1110-J (PoR), and the filing of writ of habeas_

21 | _corpus In re Robert Mitchell No. CHW-2327, Defendants,_

22 | _and each of them, conspired to, and interfered with and_

23 | _denied plaintiff his First Amendment rights._

24 | 106. _Plaintiff alleges that in response to his repeated grievances_

25 | _And the filing of several, 42 U.S.C. 1983, Civil Rights Complaints,_

26 | _And A writ of habeas corpus, challenging Defendants' preferential_

27 | _race segregation lockdown policy, the Defendants, and each of_

28 | _them, retaliated against Plaintiff for exercising his First_

1  Amendment rights, by increasing his security housing status

2  from 270 to 180, then transfered him to another prison to

3  moot all claims relating to plaintiff's writ of habeas corpus

4  case In re Robert Mitchell No. CHW-2327, in violation of

5  the First Amendment... [and that] Defendants, and each of

6  them, collectively conspired to, and chilled plaintiff's

7  exercise of his First Amendment rights [through actions

8  that I do [ ] not advance any legitimate penological

9  goals, nor [are] I tailored narrowly enough to achieve such

10  goals.

11  107. By Defendants, and each of them, collectively conspiring to

12  'moot' all claims relating to Plaintiff's writ of habeas corpus,

13  in State Court, in retaliation against plaintiff for exercising

14  his First Amendment rights. Plaintiff suffered a 'chilling effect',

15  when his writ of habeas corpus, challenging defendants'

16  preferential race segregation lockdown policy, Case In re

17  Robert Mitchell No. CHW-2327, was dismissed as a 'moot'

18  claim, because plaintiff was transfered from High Desert State

19  Prison, while the case was pending.

20  108. As a result of Defendants' conduct, and each of them,

21  Plaintiff was denied the right to petition the government, and

22  access to the Court and was therefore, deprived of rights,

23  privileges and immunities secured to him by the First

24  Amendment of the U.S. Constitution and laws enacted thereunder.

25  109. By reason of the aforedescribed acts and omissions, of

26  defendants, and each of them, plaintiff has become mentally upset,

27  distressed and aggravated. By reason of the aforedescribed

28  acts and omissions of defendants, and each of them, plaintiff

1  Sustained numerous physical, mental, and emotional injuries,
2  including, but not limited to, muscles starting to atrophy,
3  loss of muscle mass and bone density, and severe pain, and
4  swelling to his left leg and hip, severe pain, anxiety,
5  dizziness, blurred vision, nightmares, humiliation, indignities
6  and great physical, mental and emotional pain and suffering.
7  Plaintiff claims General and Compensatory Damages For such
8  mental distress and aggravation in a sum of One Million
9  Dollars (*1,000,000.00)
10  110. The aforementioned acts of Defendants, and each of them,
11  were willful, wanton, malicious, oppressive, vexatious, deliberate
12  and done with reckless indifference to and/or callous disregard
13  For Plaintiff's rights and Justify An Award of Exemplary
14  And Punitive Damages in the sum of Two Million Dollars
15  (*2,000,000.00)
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Count Three

2    Violation of Civil Rights 42 U.S.C. 1983   Eighth Amendment

3    Health And Safety

4    (By Plaintiff Against All Defendants and Does 1 to 10)

5    111. Plaintiff hereby incorporates and realleges paragraphs

6    1 through 96, of this Complaint, as fully set forth at this place.

7    112. In committing the acts set forth in paragraphs

8    1 through 96, of this Complaint, Plaintiff alleges that the

9    Defendants have a preferential race segregation lockdown

10   policy, And because of Defendant's policy, Plaintiff and

11   the entire African American inmate population at High

12   Desert State Prison on facility 'c' were placed on

13   lockdown status, confined to their cells and not allowed

14   to receive fresh air, or exercise for approximately fourteen (14)

15   months, while other inmates classified as white, Hispanic or

16   Asian-Pacific Islanders, were allowed to continue programming.

17   113 Plaintiff advised Defendants, and each of them, that he

18   is a disabled inmate and a participant in the Americans with

19   Disabilities Act ("ADA"), due to a medical condition that

20   required to have orthoscopic surgery, that left him mobility

21   impaired.

22   114. Further, Plaintiff advised Defendants, and each of them,

23   that he would experience severe medical complications, if

24   he was not allowed to ambulate and exercise daily, as

25   part of his post operative recovery and rehabilitation

26   as ordered by his treating physician.

27

28

15. Despite Plaintiff's serious diagnosed medical condition "broken ankle and hip"; and in deliberate indifference to and in reckless disregard of plaintiff's health and safety, the Defendants, and each of them, denied plaintiff fresh air and exercise for approximately fourteen (14) months.

116. The acts of Defendants, and each of them, were unnecessary, unreasonable, excessive, deliberate and constituted cruel and unusual punishment and therefore, in violation of Plaintiff's Eighth Amendment rights. Further, the confining of plaintiff to his cell for approximately fourteen (14) months, and not allowing him to receive fresh air or exercise, was in conscious disregard and in deliberate indifference to plaintiff's health and safety and his serious medical needs.

117. Plaintiff alleges that, as a result of the Defendants' preferential race segregation lockdown policy, and their display of deliberate indifference, plaintiff and the entire African American inmate population at High Desert State Prison or Facility "C", were placed on lockdown status, confined to their cells for approximately fourteen (14) months, and not permitted to receive fresh air or exercise. By reason of the aforedescribed acts and omissions, plaintiff has become mentally upset, distressed and aggravated. By reason of the acts and omissions of the defendants, and each of them, Plaintiff sustained numerous physical, mental and emotional injuries, including, but not limited to, muscles starting to atrophy, loss of muscle mass and bone

page 40

1  density, And severe pain And swelling to his left leg And hip,
2  severe pain, Anxiety, dizziness, blurred vision, nightmares,
3  humiliation, indignities, And great physical, mental And
4  emotional pain And suffering. Plaintiff claims General
5  And Compensatory Damages for such Mental Distress And
6  Aggravation in a sum of One Million Dollars ($1,000,000,00.)
7  118. The Aforementioned Acts of Defendants, And each of
8  them, were willful, wanton, malicious, oppressive, vexatious,
9  deliberate And done with reckless indifference to And/or
10 callous disregard for Plaintiff's rights And Justify an
11 Award of Exemplary And Punitive Damages in an amount
12 of Two Million Dollars ($2,000,000,00.)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Count Four

Violation of Civil Rights 42 U.S.C. 1983, Fourteenth Amendment

Substantive and Procedural Due Process and Equal

Protection Violations

(By Plaintiff against all Defendants, And Does 1 to 10)

119. Plaintiff hereby incorporates and realleges paragraphs 1 through 96, of this Complaint, as fully set forth at this place.

120. In committing the acts set forth in paragraphs 1 through 96, of this Complaint, Plaintiff alleges that in response to his repeated grievances and the filing of several 42 U.S.C. 1983 Civil Rights Complaints:

a) Robert Mitchell v. D.G. Adams, et al. No. CIV-06-2321-GEB-GGH (PC);

b) Robert Mitchell v. B. Wong, et al. No. CIV-07-2090-LEW-CMK;

c) Robert Mitchell v. Correctional Officer L. Villa, No. 03-CV-1157-WQH (POR);

d) Carlos Rosado v. Edward Alameida, Jr. et al. No. 03 CV-1110-J- (POR), and the filing of writ of habeas corpus, case In re Robert Mitchell No. CHW-2327, Defendants, and each of them, conspired to, and obstructed the due course of justice in State Court, and interfered with and denied Plaintiff his substantive and procedural due process rights under the First and Fourteenth Amendment.

page 42

121. Plaintiff alleges that in response to his repeated grievances, and the filing of several 42 U.S.C. 1983, Civil Rights Complaints, and a writ of habeas corpus, challenging Defendants' preferential race segregation lockdown policy. the Defendant's and each of them, retaliated against plaintiff for exercising his First Amendment rights, by increasing his security housing status from 270 to 180, then transfered him to another prison to moot all claims, relating to Plaintiff's writ of habeas corpus, Case In re Robert Mitchell No. CHW-2327, in violation of the First Amendment... [and that] Defendants, and each of them, collectively conspired to and chilled plaintiff's exercise of his First Amendment rights [through actions that] do [] not advance any legitimate penological goals, nor [are] tailored narrowly enough to achieve such goals.

122. By Defendants, and each of them, collectively conspiring to moot all claims, relating to Plaintiff's writ of habeas corpus in state court, in retaliation against plaintiff for exercising his First Amendment rights. Plaintiff suffered a chilling effect, when his writ of habeas corpus, challenging defendant's preferential race segregation lockdown policy, case In re Robert Mitchell No. CHW-2327, was dismissed as a moot claim, because plaintiff was transfered from High Desert State Prison, while the case was pending.

123. Plaintiff alleges that the Defendants' conduct, and each of them, shocks the conscience and interfered with rights implicit in the concept of ordered liberty and violates both the substantive and procedural due process clause of the

1 | Fourteenth Amendment of the U.S. Constitution.

2 | 124. Plaintiff alleges that as a result of the Defendants'

3 | preferential race segregation lockdown policy, Plaintiff and

4 | the entire African American inmate population at High

5 | Desert State Prison on Facility 'C', were placed on

6 | lockdown status, confined to their cells, and not

7 | Allowed fresh air or exercise for approximately fourteen

8 | (14) months, while other inmates classified as white,

9 | Hispanic and Asian-Pacific Islanders, were not lockdown,

10 | and allowed to continue programming.

11 | 125. Plaintiff alleges that Defendants' preferential race

12 | segregation lockdown policy, was unnecessary, unreasonable,

13 | excessive, an exaggerated response, and it was not

14 | narrowly tailored and did not advance any compelling

15 | government interest.

16 | 126. Plaintiff alleges that Defendants, and each of them, possess

17 | invidious discriminatory animus, and it was this animus

18 | towards Plaintiff and all African Americans, that was the

19 | catalysis behind Plaintiff and the entire African American

20 | inmate population at High Desert State Prison on Facility 'C'

21 | being placed on lockdown status, confined to their cells

22 | and not allowed fresh air or exercise for approximately

23 | fourteen (14) months, while other inmates classified as

24 | white, Hispanic and Asian-Pacific Islanders, were not

25 | lockdown, and allowed to continue programming. By

26 | reason of the aforedescribed acts and omissions, Plaintiff

27 | has become mentally upset, distressed and aggravated by

28 | reason of the acts and omissions of defendants, and each

page 44

1  of them, plaintiff sustained numerous physical, mental

2  and emotional injuries, including, but not limited to,

3  muscles starting to atrophy, loss of muscle mass and bone

4  density, and severe pain and swelling to his left leg and

5  hip, severe pain, anxiety, dizziness, blurred vision,

6  nightmares, humiliation, indignities and great physical,

7  mental and emotional pain and suffering. Plaintiff

8  claims General and Compensatory Damages for such

9  Mental Distress and Aggravation in a sum of One Million

10  Dollars ($1,000,000.00.)

11  127. The aforementioned acts of Defendants, and each of

12  them, were willful, wanton, malicious, oppressive, vexatious,

13  deliberate and done with reckless indifference to and/or

14  callous disregard for Plaintiff's rights and justify an

15  award of Exemplary and Punitive Damages in an amount

16  of Two Million Dollars ($2,000,000.00.)

17

18

19

20

21

22

23

24

25

26

27

28

Count Five

Violation of Civil Rights 42 U.S.C. 1985(2)

Obstructing Justice In State Court

(By Plaintiff Against All Defendants and Does 1 to 10)

128. Plaintiff hereby incorporates and realleges paragraphs 1 through 96, of this Complaint as fully set forth at this place.

129. In committing the acts set forth in paragraphs 1 through 96, of this Complaint, Plaintiff alleges that in response to his repeated grievances and the filing of several 42 U.S.C. 1983, Civil Rights Complaints:

a) Robert Mitchell v. D.G. Adams, et al.
No. CIV-06-2321-GEB-GGH (PC)

b) Robert Mitchell v. R. Wong, et al.
No. CIV-07-2090-LEW-CMK;

c) Robert Mitchell v. Correctional Officer L. Villa,
No. 03-CV-1157-WQH (POR),

d) Carlos Rosado v. Edward Alameida, Jr., et al.,
No. 03-CV-1110-J (POR), and the filing of writ of habeas corpus case In re Robert Mitchell No. CHW-2327 Defendants, and each of them, conspired to, and obstructed the due course of Justice in State Court, and interfered with and denied plaintiff his substantive and procedural due process rights under the First and Fourteenth Amendment

1 | 130. Plaintiff alleges that in response to his repeated
2 | grievances and the filing of several 42 U.S.C. 1983, Civil
3 | Rights Complaints, and a writ of habeas corpus, challenging
4 | Defendants' preferential race segregation lockdown policy,
5 | the Defendants, and each of them, retaliated against
6 | Plaintiff for exercising his First Amendment rights, by
7 | increasing his security housing status from 270 to 180,
8 | then transfered him to another prison to Moot all
9 | claims relating to Plaintiff's writ of habeas corpus
10 | case In re Robert Mitchell No. CHW-2327, in violation of
11 | the First Amendment... [And that] Defendants, and each
12 | of them, collectively conspired to, and chilled plaintiff's
13 | exercise of his First Amendment rights [through actions that]
14 | do [ ] not advance any legitimate penological goals
15 | nor [are] tailored narrowly enough to achieve such
16 | goals.
17 | 131. By Defendant's, and each of them, collectively conspiring
18 | to Moot all claims, relating to Plaintiff's writ of habeas
19 | corpus, in State Court, in retaliation against plaintiff
20 | for exercising his First Amendment rights, Plaintiff,
21 | suffered a chilling effect, when his writ of habeas corpus,
22 | challenging defendants' preferential race segregation
23 | lockdown policy, case In re Robert Mitchell No. CHW-2327
24 | was dismissed as a moot claim, because plaintiff was
25 | transfered from High Desert State Prison, while the case
26 | was pending.
27 |
28 |

132. Plaintiff alleges that the Defendants' Conduct, and each
of them, shocks the Conscience and interfered with rights
implicit in the concept of ordered liberty and obstructed
the due course of Justice in State Court pursuant to 42 U.S.C.
1985 (2)

133. As a result of Defendants' Conduct, and each of them,
Plaintiff was denied the right to petition the government
and access to the Court, and therefore, was deprived of
rights, privileges and immunities secured to him by the
First and Fourteenth Amendment of the U.S. Constitution
And laws enacted thereunder.

134. By reason of the aforedescribed acts and omissions,
of Defendants, and each of them, Plaintiff has become
mentally upset, distressed, and aggravated. By reason of
the aforedescribed acts and omissions of defendants, and
each of them, Plaintiff sustained numerous physical,
mental and emotional injuries, including, but not limited to,
muscles starting to atrophy, loss of muscle mass and bone
density, and severe pain and swelling to his left leg and
hip, severe pain, anxiety, dizziness, blurred vision, nightmares,
humiliation, indignities, and great physical, mental and
emotional pain and suffering. Plaintiff claims General and
Compensatory Damages for such Mental Distress and
Aggravation in a sum of One Million Dollars ("1,000,000.00)

135. The aforementioned acts of Defendants, and each of them,
were willful, wanton, malicious, oppressive, vexatious, deliberate
and done with reckless indifference to and/or callous disregard
for Plaintiff's rights and Justice an award of Exemplary

1 | And Punitive Damages in the sum of Two Million Dollars

2 | ($2,000,000.00.)

3 | <u>Count Six</u>

4 | <u>Negligence</u>

5 | (By Plaintiff Against All Defendants and Does 1 to 10)

6 | 136. Plaintiff hereby incorporates and alleges paragraphs

7 | 1 through 96, of this, Complaint, as fully set forth at

8 | this place.

9 | 137. By committing the acts set forth in paragraphs

10 | 1 through 96 of this Complaint, the Defendants, and

11 | each of them, fell below the reasonable standard of

12 | care for Law Enforcement and Correctional Employees,

13 | under the exigency of the circumstances. Defendants,

14 | and all of them, did not act as reasonable prudent

15 | law enforcement and correctional employee individuals.

16 | The Defendants, and each of them, breached their duty

17 | of care, by disregarding the high probability that

18 | their conduct would likely result in physical injuries,

19 | and/or emotional distress, shock and anguish to

20 | Plaintiff. Defendant's acts were unreasonable under

21 | the circumstances.

22 | 138. By doing the above aforesaid acts, in disregard

23 | for the consequences, Defendants, and each of them,

24 | inflicted physical injuries, and emotional distress

25 | upon plaintiff; such infliction was a substantial factor

26 | in causing damage and injury to plaintiff as set

27 | forth above.

28 |

139. Plaintiff alleges that Defendants, and each of them,
were the proximate cause of the Plaintiff's physical
and mental injuries. By reason of the aforedescribed
acts and omissions of defendants, and each of them,
plaintiff sustained numerous physical, mental and emotional
injuries, including, but not limited to, muscles starting
to atrophy, loss of muscle mass and bone density, and
severe pain and swelling to his left leg and hip, severe
pain, anxiety, dizziness, blurred vision, nightmares,
humiliation, indignities, and great physical, mental and
emotional pain and suffering. Plaintiff claims General
And Compensatory Damages For such mental distress and
Aggravation in a sum of One Million Dollars ($1,000,000.00)

140. The individual Defendants while acting in the scope of
Authority as agents and employees of Defendants California
Department of Corrections and Rehabilitation, High Desert
State Prison and C.S.P. - sacramento, proximately caused
the personal injury and damage to plaintiff through
their intentional and negligent acts.

141. The aforementioned acts of Defendants, and each of
them, were willful, wanton, malicious, oppressive, vexatious,
deliberate and done with reckless indifference to and/or
callous disregard for Plaintiff's rights and Justify an
award of Exemplary and Punitive Damages in an Amount
of Two Million Dollars ($2,000,000.00)

1

_Count Seven_

2

_Intentional and Negligent_

3

_Infliction of Emotional Distress_

4

(By Plaintiff against all Defendants and Does 1 to 10)

5 142. Plaintiff hereby incorporates and realleyes paragraphs

6 1 through 96, of this Complaint, as fully set forth at this

7 place.

8 143. Defendants, and each of them, did each knowingly,

9 outrageously, willfully, intentionally, carelessly, in reckless

10 disregard of the impact upon and consequences to plaintiff

11 and/or negligently engaged in the acts and omissions described

12 and alleyed all in the presence and view of plaintiff, and

13 by reason thereof, plaintiff suffered and continues to

14 suffer, severe mental, emotional pain, upset, distress, torment,

15 anguish, anxiety, nausea, and depression all to plaintiff's

16 injuries.

17 144. As a result of the aforesaid acts of Defendants,

18 and each of them, Plaintiff has become mentally upset,

19 distressed and aggravated. By reason of the acts and

20 omissions of Defendants, and each of them, Plaintiff sustained

21 numerous physical, mental and emotional injuries, including,

22 but not limited to, muscles starting to atrophy, loss of

23 muscles mass and bone density and severe pain and swelling

24 to his left ley and hip, severe pain, anxiety, dizziness, blurred

25 vision, nightmares, homiliation, indignities, and great physical,

26 mental and emotional pain and suffering. Plaintiff claims

27 General and Compensatory Damages for such mental distress

28 and aggravation in a sum of One Million Dollars ($1,000,000.00)

1 | 145. The aforementioned acts of Defendants, and each of
2 | them, were willful, wanton, malicious, oppressive, vexatious,
3 | deliberate and done with reckless indifference to and/or
4 | callous disregard for Plaintiff's rights and justify an
5 | award of Exemplary and Punitive Damages in an amount
6 | of Two Million Dollars ($2,000,000.00)
7 | _Damages_
8 | Wherefore, plaintiff prays for judgment against the defendants,
9 | and each of them, as follows:
10 | 1. Compensatory/General Damages in the sum of One Million
11 | Dollars ($1,000,000.00)
12 | 2. Exemplary/Punitive Damages in the sum of Two Million
13 | Dollars ($2,000,000.00)
14 | 3. For Cost of Suit herein
15 | 4. Award Punitive Damages pursuant to Penal Code § 422.6
16 | 5. Declaratory Judgment, that defendants' acts and their
17 | preferential race segregation lockdown policy, as described herein
18 | violated plaintiff's federally protected rights under the U.S.
19 | Constitution.
20 | 6. Injunctive Relief, an injunction demanding that defendants,
21 | their successors in office, agent, employees and all others in
22 | active concert and participation with them "Cease and Desist"
23 | from all segregation policies and practices.
24 | _Demand For Jury Trial_
25 | Plaintiff hereby demands a jury trial.
26 |
27 |
28 |

1             Verification

2   I, the undersigned state, that I am the plaintiff in

3 the Action, I declare under penalty of perjury, under the

4 laws of the United States, that the foregoing is true

5 And Correct

6

7

8

9

10 Dated: 5/2//08         By

11             Robert Mitchell P-87230

12            Plaintiff, In Pro Per.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____ *Robert Mitchell* _____, declare:

I am over 18 years of age and a party to this action. I am a resident of _____

_____ *C.S.P.- Sacramento* _____ Prison,

in the county of _____ *Represa* _____,

State of California. My prison address is: *C.S.P.- Sacramento*

*P.o. Box 29, Represa, CA 95671*

On _____ *5/21/08* _____,
(DATE)

I served the attached: *Plaintiff's 42 U.S.C. 1983*

_____ *Civil Rights Complaint* _____
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

1. *U.S. District Court- Eastern District*
*501 'I' Street, Ste. 4-200, Sacramento, CA 95814*

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on _____ *5/21/08* _____
(DATE)

_____
(DECLARANT'S SIGNATURE)