1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT MITCHELL, et al.,

11          Plaintiffs,                No. 2:08-cv-1196 JAM EFB P

12        vs.

13   T. FELKER, et al.,

14          Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16          This case is before the undersigned pursuant to Eastern District of California Local Rule

17   302(c)(17).  *See* 28 U.S.C. § 636(b)(1).  It proceeds on the second amended complaint filed by

18   plaintiffs Mitchell, Abdullah, Trujillo, and Quezada ("plaintiffs").  The case was before the

19   undersigned on January 11, 2012, for a hearing on defendants Cate, Kernan, McDonald,

20   Giurbino, Tilton, Felker, Wright, Foulk, Vanderville, Owen, and Hellwig's ("defendants")

21   motion to dismiss.  Attorneys Damon McClain and Christopher Becker appeared at the hearing

22   on behalf of defendants; attorneys Rebekah Evenson and Donald Spector appeared on behalf of

23   plaintiffs.  For the reasons set forth herein, it is recommended that the motion be granted in part

24   and denied in part.

25   ////

26   ////

I.    PLAINTIFFS' CLAIMS

Plaintiffs are state prisoners proceeding through counsel in an action brought under 42 U.S.C. § 1983.  In the second amended complaint, plaintiffs challenge allegedly race-based and excessively lengthy lockdowns in California prisons.  Each of the four plaintiffs makes specific allegations regarding the lockdown conditions that he experienced.  *See generally* Second Am. Compl. ("Dckt. No. 84").  Based on those allegations, discussed in more detail below, plaintiffs claim that defendants have violated plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment because they have "designed, implemented, and administered a policy and practice that causes Plaintiffs to be locked down based on race, and this policy and practice is not narrowly tailored to serve a compelling state interest."  *Id.* ¶ 75.  Plaintiffs also claim that defendants have violated their rights under the Eighth Amendment because their lockdown policy and practice "causes Plaintiffs to be locked down and deprived of basic human needs for excessive periods of time."  *Id.* ¶ 82.  Plaintiffs seek to enjoin the lockdown policy.  *Id.* ¶¶ 74-87. Plaintiff Mitchell also seeks damages on his Eighth Amendment and Equal Protection claims, as well as his state law claims of negligence and negligent and intentional infliction of emotional distress.[1]  *Id.* ¶¶ 88-105.

II.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss some of plaintiffs' Eighth and Fourteenth Amendment claims under the unenumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure ("Rule") for failure to exhaust available administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA).  Defendants also move to dismiss plaintiff Mitchell's state law claims, arguing that Mitchell (1) failed to exhaust his administrative remedies as required by state law; (2) failed to comply with the California Government Claims Act; and (3)

---

[1] Plaintiff Mitchell's federal and state law claims for damages are based on the High Desert State Prison lockdowns allegedly in place from May 2006 through December 2007.  *See* Dckt. No. 84 ¶¶ 18-24, 50, Claims 3, 4, 5.

because defendants Tilton, Felker, Wright, Vanderville, Foulk, Owen and Hellwig have

discretionary act immunity under California Government Code § 820.2.  *See generally* Mot. to

Dism. ("Dckt. No. 92-1").

       A.     Exhaustion of Eighth and Fourteenth Amendment Claims

     First, defendants contend that plaintiffs Mitchell, Abdullah, and Trujillo did not exhaust

their Eighth Amendment claims because their inmate appeals did not describe or even mention

the alleged conditions giving rise to their Eighth Amendment claims.  Dckt. No. 92-1 at 7-11.

Second, defendants argue that none of the plaintiffs exhausted their equal protection or Eighth

Amendment claims that are based on lockdowns for which they never filed administrative

appeals.[2]  *Id.* at 12-14.

       1.     Exhaustion Under the PLRA

     The PLRA provides that "[n]o action shall be brought with respect to prison conditions

[under section 1983 of this title] until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to the exhaustion requirement

have been defined broadly as "the effects of actions by government officials on the lives of

persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449

(7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002).  To satisfy the

exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has

included in the complaint, but need only provide the level of detail required by the grievance

system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-

---

    [2] In their reply brief, defendants stress that "Plaintiffs do not explain why they cannot seek injunctive relief based on a single, grieved modified program," suggesting that a plaintiff need only exhaust administrative remedies as to one allegedly race-based lockdown before seeking injunctive relief on the grounds that the alleged lockdown policy is unconstitutional. Defs.' Reply to Pls.' Opp'n ("Dckt. No. 103") at 12.  But proving the existence of an unconstitutional policy will likely require evidence of numerous race-based lockdowns, and the PLRA's exhaustion requirement is not a rule of evidence.  Thus, defendants' point suggests that resolution of the second exhaustion argument is purely academic as to the claims of plaintiffs Trujillo, Abdullah, and Quezada, who seek only injunctive relief.  Nevertheless, the court addresses defendants' second exhaustion argument and finds in favor of plaintiffs.

25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").  "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested.  The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code Regs. tit. 15, § 3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims.  *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be "available," there must be the "possibility of some relief. . . ."  *Booth*, 532 U.S. at 738.  Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Although a motion to dismiss for failure to exhaust administrative remedies prior to filing suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, when ruling on such a motion requires the court to look beyond the pleadings in the context of disputed issues of fact the court must do so under "a procedure closely analogous to summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003).  Because care must be taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned applies the Rule 56 standards to exhaustion motions that require consideration of materials

1    extrinsic to the complaint.  *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL

2    3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

3           Defendants bear the burden of proving plaintiff's failure to exhaust.  *Wyatt*, 315 F.3d at

4    1119.  To bear this burden:

5           a defendant must demonstrate that pertinent relief remained available, whether at
            unexhausted levels of the grievance process or through awaiting the results of the
6           relief already granted as a result of that process. Relevant evidence in so
            demonstrating would include statutes, regulations, and other official directives
7           that explain the scope of the administrative review process; documentary or
            testimonial evidence from prison officials who administer the review process; and
8           information provided to the prisoner concerning the operation of the grievance
            procedure in this case . . . . With regard to the latter category of evidence,
9           information provided [to] the prisoner is pertinent because it informs our
            determination of whether relief was, as a practical matter, "available."

10

11   *Brown*, 422 F.3d at 936-37 (citations omitted).

12           2.     Discussion

13          In the second amended complaint, plaintiffs identify and attach copies of the four inmate

14   appeals through which they claim to have exhausted available administrative remedies pursuant

15   to the PLRA.  Dckt. No. 84 ¶¶ 52, 58, 66, 73, Apps. A-D.  In support of their motion, defendants

16   also submit copies of the four inmate appeals, along with the declaration of D. Foston, Chief of

17   the Office of Appeals for the California Department of Corrections and Rehabilitation (CDCR).

18   Foston Decl. ("Dckt. No. 93"), Exs. A-D.  At the hearing, the parties confirmed that the record

19   before the court consists of all inmate appeals relevant to the question of exhaustion.

20           a.     Plaintiff Mitchell's § 1983 Claims Based on Lockdowns On or
                    After September 12, 2006 Are Exhausted

21

22          Plaintiff Mitchell alleges that between May 2006 and December 2007, High Desert State

23   Prison imposed an overlapping series of lockdowns on him and other prisoners identified as

24   "Black."  Dckt. No. 84 ¶ 50.  He claims that he had been under doctor's orders to ambulate and

25   exercise regularly and that the lockdowns prevented him from exercising as required.  *Id.* ¶ 51.

26   ////

He also alleges that the lockdowns exacerbated a leg injury, and caused him various physical and psychological problems. *Id.* ¶¶ 51, 91.  Mitchell claims that he was subjected to additional race-based lockdowns at Folsom State Prison in July, August, September, October, and November 2010. *Id.* ¶ 53.

In his administrative appeal, Mitchell identified his problem as "High Desert's Segregation Lockdown Policy."  Dckt. No. 93, Ex. A at 3.  He complained that since "9-12-06," he had "been confined to [his] cell on 'CTQ' 24hrs a day 7 days a week, for something [he] had no knowledge of and nothing to do with."  *Id.*  As relief, Mitchell requested that High Desert end its policy of locking down "an entire race of inmates" and "to be taken off of this lockdown."  *Id.* In expressing his dissatisfaction with the review of his appeal at the first level, Mitchell stated, "I am still on forced racial lockdown and being denied program, i.e., yard, dayroom, canteen, [and] packages, while other races, whites, Hispanics and Asians are allowed to continue programming [and] I am still being locked in my cell 24/7."  *Id.* at 4.  In expressing his dissatisfaction with the review of his appeal at the second level, Mitchell complained that the lockdown was excessively long, exceeding seven months.  *See id.* (complaining that as of April 2, 2007, "I have been on lockdown for over 7 ½ months for something I had no knowledge of").

Defendants argue that because Mitchell alleges in the second amended complaint that as a result of the lockdowns he did not receive adequate outdoor exercise, exacerbated a leg injury, and experienced physical and psychological problems, but did not describe those particular issues in his administrative appeal, he failed to properly exhaust available administrative remedies for his Eighth Amendment claim.  Dckt. No. 92-1 at 7-9.  According to defendants, Mitchell's appeal "focused solely on alerting prison officials to alleged discrimination in the form of a race-based lockdown."  *Id.* at 8.

To satisfy the exhaustion requirement, a grievance need only provide the level of detail required by the prison grievance system itself.  *Jones*, 549 U.S. at 218.  The grievance process in California requires that the prisoner "describe the problem and action requested."  Cal. Code

Regs. tit. 15, § 3084.2(a).[3]  When a prison's grievance procedures do not specify the requisite

level of factual detail, "a grievance suffices if it alerts the prison to the nature of the wrong for

which redress is sought."  *Griffin*, 557 F.3d at 1120 (internal quotations omitted).  Thus, a

grievance need not include legal terminology or legal theories and need not contain every fact

necessary to prove each element of an eventual legal claim.  *Id.*

Mitchell's appeal went beyond complaining that the lockdowns were improperly based

on race, and was sufficient to put prison officials on notice of the alleged Eighth Amendment

violation.  Mitchell complained that the lockdowns resulted in him being confined to his cell

twenty-four hours a day, seven days a week, for months at time, with no yard time.  Dckt. No.

93, Ex. A at 3-5; *see also Thomas v. Ponder*, 611 F.3d 1144, 1146 (9th Cir. 2010) ("as a matter

of law" the health risk posed by denial of out-of-cell exercise for an extended period is

"obvious").  He complained that the "24/7" confinement to his cell harmed him, and requested

that the lockdowns end.  *Id.*  The administrative appeal thus provided "enough information . . . to

allow prison officials to take appropriate responsive measures."  *Griffin*, 557 F.3d at 1121

(quoting *Johnson v. Testman*, 380 F.3d, 691, 697 (2d Cir. 2004)).   It did not need to reference

the Eighth Amendment or list the injuries that Mitchell claims to have suffered because of the

lockdowns.  *See Jones*, 549 U.S. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir.

2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a

problem, . . .  the grievance is not a summons and complaint that initiates adversarial

litigation")); *Griffin*, 557 F.3d at 1121 ("The primary purpose of a grievance is to alert the prison

to a problem and facilitate its resolution, not to lay groundwork for litigation.").  Moreover, at

the final level of review, prison officials characterized Mitchell's appeal as complaining about

"being punished," for something he did not do.  Dckt. No. 93, Ex. A at 1.   Having so

acknowledged Mitchell's claim in responding to his administrative appeal, defendants cannot

---

[3] Section 3084.2(a) has since been amended and, effective January 28, 2011, requires
that the prisoner "describe the specific issue under appeal and the relief requested."

1   now claim that the appeal did not provide sufficient notice of his claim that the lockdowns

2   amounted to cruel and unusual punishment in violation of the Eighth Amendment.  *See Mitchell*

3   *v. Snowden*, Case No. 2:08-cv-1658 DAD P, 2011 U.S. Dist. LEXIS 22584, at *9 (E.D. Cal.

4   Mar. 5, 2011), *adopted by* Case No. 2:08-cv-1658 JAM DAD P, 2011 U.S. Dist. LEXIS 51460

5   (E.D. Cal. May 2, 2011).

6          Defendants also argue that Mitchell's Eighth and Fourteenth Amendment claims based

7   on lockdowns that occurred before or after the lockdown that Mitchell complained of in his

8   administrative appeal, are unexhausted.[4]  No. 92-1 at 12-13.  Here, Mitchell's administrative

9   appeal references alleged lockdowns between September 12, 2006 through April 2, 2007.  Dckt.

10  No. 93, Ex. A at 3, 4.  In the second amended complaint, however, Mitchell references

11  lockdowns that occurred from May 2006 through November 2010.  Dckt. No. 84 ¶¶ 50, 53.

12         Plaintiffs do not argue or submit evidence showing that Mitchell administratively

13  challenged any lockdowns that occurred prior to September 12, 2006 or that administrative relief

14  was unavailable to him.  Mitchell's claims based on lockdowns occurring prior to September 12,

15  2006, should therefore be dismissed as unexhausted.

16         As for claims based on lockdowns alleged to have occurred after April 2, 2007, however,

17  plaintiffs contend that the exhaustion requirement is satisfied because no further administrative

18  remedy was available to Mitchell.  Pls.' Opp'n to Mot. to Dism. ("Dckt. No. 100") at 9.  The

19  undersigned agrees.

20         By its own terms, the PLRA only requires exhaustion of "available" administrative

21  remedies.  42 U.S.C. § 1997e(a); *see Booth*, 532 U.S. at 738 (defining "available" as requiring

22  "the possibility of some relief for the action complained of").  Thus, the PLRA does not require

23

24         [4] In making this argument, defendants cite to Mitchell's administrative appeal and
     contend that Mitchell "initially complained that from September 6, 2006, through September 18,
25   2006," he was locked down.  Dckt. No. 92-1 at 12.  Review of Mitchell's appeal, however,
     shows that Mitchell initially complained that had been locked down since September 12, 2006,
26   not September 6th.  *See* Dckt. No. 93, Ex. A at 3.

1  exhaustion when circumstances render administrative remedies "effectively unavailable." *Sapp*

2  *v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010); *see id.* (improper screening of administrative

3  appeal may excuse exhaustion requirement); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir.

4  2010) (exhaustion requirement may be excused where inmate "took reasonable and appropriate

5  steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault by

6  the Warden's mistake.").

7       The prison officials reviewing Mitchell's appeal understood it as challenging and

8  requesting a "stop" to the "policy" of race-based lockdowns.  Dckt. No. 93, Ex. A at 3

9  (administrative appeal); 6 (response to appeal at first level of review).  At the final level of

10  review, prison officials not only confirmed that they were on notice of the claim that the alleged

11  policy of race-based lockdowns was unlawful, they acknowledged the existence of that policy:

12      Therefore, the Warden has placed the institution's inmate population on modified
program.  The DLR [Director's Level of Review] notes that the CDCR policy is

13      that when there is an incident involving any race, *all inmates of that race are*
*locked up.*

14

15  *Id.* at 1 (emphasis added).  The denial of Mitchell's appeal at the final level of review effectively

16  told Mitchell that no further administrative relief was "available" for his claim that race-based

17  lockdowns are unlawful.  Because Mitchell exhausted the administrative processes available to

18  him, and in doing so, notified prison officials of the problems now raised in this lawsuit, he was

19  not required to initiate and complete another round of administrative appeals for future race-

20  based lockdowns.   Accordingly, the court finds that Mitchell exhausted available administrative

21  remedies for his Eighth and Fourteenth Amendment claims based on lockdowns that occurred on

22  or after September 12, 2006.

23          b.    Plaintiff Abdullah's Claims Are Exhausted

24      Plaintiff Abdullah alleges that California State Prison, Solano imposed a lockdown on

25  him and all other inmates classified as "Black," from June 2009 through July 2009, from May

26  2010 through June 2010, for an additional two weeks in July 2010, from October 2010 through

1   November 2010, and from March 2011 through April 2011.  Dckt. No. 84 ¶ 69.  He claims he

2   had limited access to medical care during the lockdowns, and was unable to obtain regular

3   dressing for a wound on his leg, causing the wound to become infected.  *Id.* ¶ 70.  Further, he

4   claims he is a devout Muslim, and was unable to attend Islamic religious services during the

5   lockdowns.  *Id.* ¶ 71.  He also alleges that he typically spent 24-hours each day in his cell with

6   his cellmate, and that they were allowed out of their cell for less than an hour every several days

7   to shower or to obtain medical care.  *Id.* ¶ 72.  He claims to have experienced anxiety,

8   depression, and humiliation as a result.  *Id.*

9           In his administrative appeal, Abdullah complained of being "adversely affected" by a

10  race-based lockdown that began on June 8, 2009.  Dckt. No. 93, Ex. B at 3.  In describing his

11  problem, he stated that he and other African American inmates were "confined to [their] cells

12  and denied access to the yard, religious services, law library (i.e., access to the courts), visits,

13  education, vocational training, and employment."  *Id.*  Abdullah described the lockdown as

14  "mass punishment" and requested that the "racially based lockdown be terminated."  *Id.* at 3.

15          Defendants argue that because Abdullah alleges in the second amended complaint that as

16  a result of the lockdowns he was not able to get medical care for a preexisting leg wound and

17  experienced physical and mental health problems, but did not describe those issues in his

18  administrative appeal, he failed to properly exhaust available administrative remedies for his

19  Eighth Amendment claim.  Dckt. No. 92-1 at 9-10.

20          As stated, however, an administrative appeal need not include legal theories or all facts

21  necessary to prove each element of an eventual legal claim.  *Griffin*, 557 F.3d at 1120.

22  Abdullah's appeal accomplished what the PLRA requires for exhaustion of his Eighth

23  Amendment claim.  It put the prison on notice that Abdullah felt punished by the lockdown

24  because it caused him to be confined to his cell for excessive periods of time, and that he wanted

25  the lockdown to end.  *See* Dckt. No. 93, Ex. B at 3; *see also id.* at 1 (Director's Level response

26  characterizing Abdullah's appeal as complaining that he was "unfairly punished," and denied

"access to program"). Additionally, by complaining that the lockdown adversely affected him and requesting that the lockdown end, he provided enough information to allow prison officials to take appropriate responsive measures. *See Griffin*, 557 F.3d at 1121.

Defendants also contend that because Abdullah's appeal concerned a single lockdown that commenced in June 2009, his claims based on lockdowns that occurred after that alleged lockdown are unexhausted.[5] No. 92-1 at 14. However, the court finds that after receiving the final response to his administrative appeal concerning the June 2009 lockdown, no further administrative relief was available for Abdullah's claims challenging the alleged policy of race-based lockdowns. The prison officials reviewing Abdullah's appeal understood it as requesting that prison officials "stop using race as a basis" for imposing lockdowns "for extended periods of time absent review of individual case factors." Dckt. No. 93, Ex. B at 1 (Director's Level response). And in their final response denying Abdullah's appeal, they informed Abdullah "that the CDCR policy is that when there is an incident involving any race, all inmates of that race are locked up . . . [and] it is appropriate to segment the inmate population by ethnic groups as a means to establish a regular program." *Id.* (also stating grounds as to why CDCR contends this policy is constitutionally defensible). Like Mitchell, Abdullah notified prison officials of the problems that now form the basis of his constitutional claims. The prison's responses demonstrate that they were made aware of and rejected those claims and that no further administrative relief was available. *See Holley v. Swarthout*, No. 2:10-cv-00615 MCE EFB P, 2012 U.S. Dist. LEXIS 24387, at *21 (E.D. Cal. Feb. 27, 2012), *adopted by* 2012 U.S. Dist. LEXIS 44159 (E.D. Cal. Mar. 29, 2012) ("If the Department's written statements are to be taken seriously, it is pointless for [the] inmate to return for another round of exhaustion over the same

---

[5] In addition to the June 2009 lockdown, Abdullah alleges in the second amended complaint that he was locked down on various dates in 2010 and 2011. Dckt. No. 84 ¶ 69. In their reply brief, defendants concede that Abdullah exhausted available administrative remedies for his claim concerning a modified program that commenced on September 24, 2010. Dckt. No. 103 at 13.

1   issue of race based lockdowns."). To confirm that no further administrative relief was available,

2   plaintiffs submit evidence with their opposition brief showing that Abdullah subsequently tried

3   to file an appeal in response to a September 2010 race-based lockdown, but that prison officials

4   rejected it as duplicative of the appeal discussed herein. *See* Dckt. No. 100, Evenson Decl. ¶ 2,

5   Ex. A. Defendants' motion to dismiss Abdullah's claims as unexhausted must therefore be

6   denied.

7                   c.   Plaintiff Trujillo's Claims Are Exhausted

8           Plaintiff Trujillo alleges that Ironwood State Prison imposed a lockdown on him and all

9   other inmates classified as "Hispanic," from October 2007 through February 2008, in July 2009,

10  in December 2009, from February 2010 through March 2010, and from October 2010 through

11  November 2010. Dckt. No. 84 ¶ 63. He claims that during the lockdowns he was typically

12  confined to his cell for 24-hours per day, deprived of outdoor exercise, and denied visits and

13  phone calls with his family. *Id.* ¶ 64. He also claims he was prevented from completing

14  educational programs, and was unable to participate in drug and alcohol treatment programs. *Id.*

15  ¶ 65. As a result, he claims to have felt "an overwhelming sense of anxiety, frustration, stress,

16  and deep humiliation." *Id.* ¶ 64.

17          In Trujillo's administrative appeal, Trujillo described the problem as a race-based

18  lockdown imposed on October 14, 2007, and explained that "[b]ased upon race only – I was

19  denied all privileges – including visits." Dckt. No. 93, Ex. C at 3. He included a copy of the

20  prison's "Plan of Operation" for the lockdown, which shows that "Hispanic" inmates were fed in

21  their cells, subjected to modified procedures for obtaining medical care, and were completely

22  denied visits and dayroom or recreational activities. *Id.* at 3, 13. In his request for relief,

23  Trujillo sought an explanation for using race to place him on lockdown "with the resulting loss

24  of all privileges." *Id.* at 6. In expressing his dissatisfaction with the review of his appeal at the

25  second level, Trujillo described the lockdown as "collective punishment." *Id.* at 7.

26  ////

Defendants argue that because Trujillo alleges in the second amended complaint that as a result of the lockdowns he experienced mental health problems and was deprived of outdoor exercise and basic human needs, but did not describe those issues in his administrative appeal, he failed to properly exhaust available administrative remedies for his Eighth Amendment claim. Dckt. No. 92-1 at 10-11.  Like the appeals filed by Mitchell and Abdullah, the court finds that Trujillo's appeal provided the level of detail required by the prison grievance system.  Trujillo put prison officials on notice of his claim that the lockdown resulted in the deprivation of "all privileges," including dayroom and recreational time, and that it amounted to punishment.  He did not need to include legal theories or list the injuries he claims to have suffered, particularly when the health risks posed by lengthy lockdowns are "obvious."  *See Thomas*, 611 F.3d at 1146.

Defendants also argue that Trujillo's Eighth and Fourteenth Amendment claims based on lockdowns that allegedly occurred after the October 2007 lockdown, are unexhausted.  Dckt. No. 92-1 at 14.  While Trujillo's administrative appeal concerned the October 2007 lockdown only, the second amended complaint includes allegations regarding lockdowns that occurred on later dates.  *See* Dckt. No. 84 ¶ 63.  Like Mitchell and Abdullah, however, the court finds that Trujillo did not have available administrative remedies for allegedly race-based lockdowns that occurred after October 2007.  Through his appeal, Trujillo challenged the alleged policy of locking down all inmates of a certain race when one person of that race commits an infraction.  Dckt. No. 93, Ex. C at 3, 11 (second level response to appeal, confirming that "[t]his plan placed the Hispanic population on modified program following an incident where the Hispanic population was the only race involved in an incident . . . .").  In denying Trujillo's appeal at the final level of review, prison officials understood Trujillo as complaining about "the lockdown policy in general."  *Id.* at 1.  The response implicitly admitted to practicing the lockdown policy of which Trujillo complained, explaining that "[s]ome disturbances are racially motivated, requiring increased controls to be employed with only the involved groups, as in this case. . . .  Despite thorough

investigation of such incidents, the true motive of future intent of the perpetrators is often

unknown." *Id.* The response conceded that "[u]nfortunately, those inmates not involved in the

violence may be impacted by the actions of a few." *Id.* at 2. In denying Trujillo's administrative

challenge to this policy at the final level of review, prison officials informed Trujillo that he had

exhausted his remedies for this claim. *See id.* ("This decision exhausts the administrative

remedy available to the appellant within CDCR."). Having so informed Trujillo, Trujillo was

not required to initiate and complete another round of administrative appeals for subsequent

lockdowns based on race. Accordingly, the court finds that Trujillo exhausted available

administrative remedies for his Eighth and Fourteenth Amendment claims.

<u>d.</u>      <u>Plaintiff Quezada's Claims Are Exhausted</u>

Plaintiff Quezada alleges that in February 2010, Kern Valley State Prison imposed a 90-

day lockdown on him and other prisoners classified by the ethnicity of "Other." Dckt. No. 84

¶ 57. He claims that he was also subjected to race-based lockdowns at Kern Valley State Prison

in December 2010 and January 2011. *Id.* ¶ 59. He claims that during the lockdowns, he was

typically confined to his cell for 24-hours per day, deprived of outdoor exercise, and deprived of

visits with his family. *Id.* ¶ 60.

In Quezada's administrative appeal, he described the problem by stating that on February

11, 2010, Kern Valley State Prison imposed a modified program, whereby inmates classified by

ethnicity as "Others," were denied privileges, including outdoor exercise. Dckt. No. 93, Ex. D at

3, 9. In his request for relief, Quezada asked that his privileges be restored. *Id.* at 3.

Defendants do not argue that Quezada's appeal failed to notify the prison of his Eighth

Amendment claim. They argue that Quezada's Eighth and Fourteenth Amendment claims based

on lockdowns that allegedly occurred after the February 2010 lockdown, are unexhausted. Dckt.

No. 92-1 at 14. As discussed below, the court finds that Quezada's appeal exhausted

administrative remedies for his Eighth and Fourteenth Amendment claims regarding defendants'

lockdown policy and practice.

1    Prison officials responded to Quezada's appeal at the second level of review by

2  informing him that "[i]t is standard practice in the Department to place a facility on modified

3  program after disturbances. . . .  The management of inmate populations by ethnicity and or

4  subcultures has long been established by correctional professionals as an effective technique for

5  establishing and maintaining control of inmate populations during periods of emergency." *Id.* at

6  14.  In expressing his dissatisfaction with this response, Quezada sought review at the final level,

7  claiming that prison officials had engaged in "UNCONSTITUTIONAL RACE BASED

8  DISCRIMINATION/PREFERENTIAL TREATMENT POLICIES," whereby inmates are

9  punished because of their race.  *Id.* at 5.  In denying the appeal at the final level of review, prison

10  officials relied on and confirmed the decision made at the second level of review.  *Id.* at 1.  They

11  also informed Quezada that the decision "exhausts the administrative remedy available to [him]

12  within CDCR." *Id.* at 2.  Thus, prison officials acknowledged their practice of imposing

13  modified programs based on ethnicity, and in effect, told Quezada that no further administrative

14  relief was available for him to challenge that practice.  Accordingly, the court finds that Quezada

15  exhausted available administrative remedies for his Eighth and Fourteenth Amendment claims.

16    B.    PLAINTIFF MITCHELL'S STATE LAW DAMAGES CLAIMS

17    Plaintiff Mitchell also brings state law claims for negligence and negligent and

18  intentional infliction of emotional distress based on the High Desert State Prison lockdowns

19  allegedly in place from May 2006 through December 2007.  Dckt. No. 84 ¶¶ 50, 94-105.

20  Defendants contend that Mitchell's state law claims for damages must be dismissed because

21  Mitchell (1) failed to exhaust his administrative remedies as required by state law; (2) failed to

22  comply with the California Government Claims Act; and (3) because defendants Tilton, Felker,

23  Wright, Vanderville, Foulk, Owen and Hellwig have discretionary act immunity under California

24  Government Code § 820.2.  *See* Dckt. No. 92-1 at 14-21.

25  ////

26  ////

15

1            1.      Exhaustion Under State Law

2          Defendants argue that Mitchell's state tort claims should be dismissed for failure to

3    exhaust administrative remedies.  Dckt. No. 92-1 at 15-16.  The exhaustion requirement for state

4    law claims mirrors the federal PLRA exhaustion requirement.  *Wright v. State of California*, 122

5    Cal. App.4th 659, 666 (2004).  As discussed in addressing defendants' PLRA defense, Mitchell's

6    administrative appeal complained about excessively lengthy, race-based lockdowns.  *See* Dckt.

7    No. 93, Ex. A at 3-5 (claiming he was confined to his cell twenty-four hours a day, seven days a

8    week, for months at time, with no yard time).  In doing so, Mitchell notified prison officials of

9    the core problems on which he bases all of his legal claims in this action.  Each claim merely

10   represents a different legal theory under which Mitchell seeks to hold defendants liable for

11   "implementing excessively lengthy and race-based lockdowns, and failing to end those

12   lockdowns in a timely manner."  *See* Dckt. No. 84 ¶¶ 95, 100.  Mitchell was not required to

13   identify those legal theories in order to properly exhaust his claims.  *See Griffin*, 557 F.3d at

14   1120.  And although Mitchell will have to prove that he suffered severe or extreme emotional

15   distress to prevail on his emotional distress claims, for example, *see Christensen v. Superior*

16   *Court*, 54 Cal. 3d 868, 903 (1991), he was not so required in order to properly exhaust those

17   claims through the administrative process, *see Griffin*, 557 F.3d at 1120.  Moreover, defendants

18   do not counter plaintiffs' point that Mitchell filed his administrative appeal in the early stages of

19   the lockdown, before he even knew how the lockdowns might injure him over time.  *See* Dckt

20   No. 100 at 12 n.4.  When prison officials responded to Mitchell's appeal at the final level of

21   review by informing Mitchell that "[t]here [was] no merit to [his] claim that the institution

22   management . . . inappropriately placed the facility on lockdown," and confirmed "that the

23   CDCR policy is that when there is an incident involving any race, all inmates of that race are

24   locked up," Mitchell had exhausted available administrative remedies for his claims based on

25   lengthy, race-based lockdowns.

26   ////

1    Like his Eighth and Fourteenth Amendment claims, the court finds that Mitchell

2    exhausted available administrative remedies for his state tort claims based on lockdowns that

3    occurred on or after September 12, 2006.

4              2.       Compliance with the California Government Claims Act

5        Defendants argue that Mitchell failed to comply with the California Government Claims

6    Act ("Act") for most of the lockdowns about which he complains in the second amended

7    complaint.  Dckt. No. 92-1 at 17-18.  As noted, Mitchell's state law claims for damages are

8    based on the High Desert State Prison lockdowns allegedly imposed from May 2006 through

9    December 2007.  *See* Dckt. No. 84 ¶¶ 18-24, 50, Claims 4, 5.  But defendants contend that those

10   claims should be limited to the alleged lockdowns that occurred on or after July 23, 2007.  Dckt.

11   No. 92-1 at 18.  According to plaintiffs, however, Mitchell may seek damages for his state law

12   claims based on alleged lockdowns from February 28, 2007 through December 5, 2007.[6]  *See*

13   Dckt. No. 100 at 14-16.

14       Under the Act, a plaintiff seeking to recover money damages from a state public entity or

15   its employees must "present" a claim to the California Victim Compensation and Government

16   Claims Board ("Board") before bringing an action, generally no later than six months after the

17   cause of action accrues.  Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2.  Timely claim

18   presentation is not merely a procedural requirement but is a condition-precedent to causes of

19   action against a public entity "for money or damages."  *State of California v. Superior Court*

20   *(Bodde)*, 32 Cal. 4th 1234, 1239-40 (2004).

21       A claim that contains the information required by section 910 is considered "presented"

22   to the public entity.  *Philips v. Desert Hosp. Dist.*, 49 Cal.3d 699, 707 (1989); *see* Cal. Gov't

23   Code § 910 (requiring claim to contain basic information identifying the claimant and the

24   defendant, the amount requested, the "date, place and other circumstances of the occurrence or

25

26       [6] Thus, by implication, plaintiffs concede that Mitchell's state law damages claims do not
include the period of May 2006 though February 27, 2007.

1    transaction which gave rise to the claim asserted" and "[a] general description of the . . . injury

2    . . . incurred so far as it may be known at the time of presentation of the claim.")  However,

3    "substantial compliance" with § 910 is sufficient.  *See Ardon v. City of Los Angeles*, 52 Cal. 4th

4    241, 247-48 (2011) ("A claim substantially complies with a claims statute if the parties have

5    stated sufficient information to reasonably enable the public entity to make an adequate

6    investigation of the merits of the claim and to settle it without the expense of a lawsuit." (internal

7    quotations omitted)).

8           Mitchell initially submitted his claim to the Board on August 29, 2007, and the Board

9    received it on September 4, 2007.[7]  Dckt. No. 94-1 at 3, 14 (showing that Mitchell signed his

10   claim form on August 29, 2007).  Mitchell's claim stated that as of June and July of 2007, High

11   Desert had kept him "on lockdown confined to his cell for over 11 months."  *Id.* at 13-14

12   (requesting damages for negligence and emotional distress).  However, the Board determined

13   that the claim was "incomplete," and asked Mitchell to "explain the circumstances that led to the

14   alleged damages or injuries," and "specify the exact date of the incident and explain what

15   happen[ed] on that date."  *Id.*  Plaintiff resubmitted his claim in January 2008.  *Id.* at 5-10.

16   Subsequently, the Board informed Mitchell that it "received [his] claim on September 4, 2007,"

17   and that "[his] claim is being accepted only to the extent it asserts allegations that arise from

18   facts or events that occurred during the six months prior to the date it was presented."  *Id.* at 3.

19          The court finds that Mitchell's August 29, 2007 claim substantially complied with the

20   requirements of § 910, as it "fairly described" what High Desert officials had allegedly done to

21   plaintiff.  *See Connelly v. County of Fresno*, 146 Cal. App. 4th 29, 38 (2006).  Although the

22   Board found the claim to be incomplete, its omissions would not have prevented the Board from

23

24          [7] The court grants defendants' unopposed request for judicial notice of the Board's
     administrative record of Mitchell's claim (Dckt. No. 94).  *See United States v. Ritchie*, 342 F.3d

25   903, 907-08 (9th Cir. 2003) (a court may consider such materials without converting a motion to
     dismiss into a motion for summary judgment); Fed. R. Evid. 201 (a court may take judicial

26   notice of facts that are capable of accurate determination by sources whose accuracy cannot
     reasonably be questioned).

adequately investigating the merits of Mitchell's claim and possibly settling it without the

expense of litigation.  *See Gen. Sec. Servs. Corp. v. County of Fresno*, 815 F. Supp. 2d 1123,

1138 (E.D. Cal. 2011) (citing *Ardon*, 52 Cal.4th at 247-48 and *Connelly*, 146 Cal. App. 4th at

38).  Thus, under the substantial compliance doctrine, Mitchell's claim was "presented" on

August 29, 2007, and covered allegations going back six months, to February 28, 2007.  *See* Cal.

Gov't Code § 915.2 (claims deemed "presented" at time of mailing).[8]

Mitchell amended the claim in January 2008 and explained that the lockdown continued

until December 5, 2007, when he was transferred out of High Desert State Prison.  Dckt. No. 94-

1 at 5-10; *see* Cal. Gov't Code § 910.6(a) (when a claim is amended to add information related to

the original claim, "the amendment shall be considered part of the original claim for all

purposes.").  Accordingly, the scope of Mitchell's state law claims do not span the entire 18-

month period alleged in the complaint, but should be limited to the period from February 28,

2007 through December 5, 2007, when he was transferred.

### 3.    Discretionary Act Immunity Under California Government Code § 820.2

California Government Code § 820.2 provides that a public employee "is not liable for an

injury resulting from his act or omission where the act or omission was the result of the exercise

of discretion vested in him, whether or not such discretion be abused."  Defendants Tilton,

Felker, Wright, Vanderville, Foulk, Owen, and Hellwig contend that they are immune from

Mitchell's state law claims under § 820.2 because their alleged decision to impose a lockdown is

a discretionary one.  Dckt. No. 92-1 at 19-21.

Defendants are entitled to immunity under § 820.2 if a "fair reading" of the complaint

reveals allegations that the defendants "made an actual, conscious, and considered collective

policy decision."  *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995).  Immunity applies only to

---

[8] Although the actual date of mailing is not apparent from the record, defendants concede in their reply brief that Mitchell submitted his claim on August 29, 2007.  *See* Dckt. No. 103 at 19 (stating that this is "the date Mitchell submitted his original defective tort claim").

1    "deliberate and considered policy decisions, in which a conscious balancing of risks and

2    advantages . . . took place." *Id.* Operational acts that merely "implement a basic policy already

3    formulated" do not receive immunity. *Id.*

4           Here, Mitchell's state law claims are based on the allegations that defendants Tilton,

5    Felker, Wright, Vanderville, Foulk, Owen, and Hellwig "implemented" lockdowns pursuant to

6    existing CDCR lockdown policy. *See* Dckt. No. 84 ¶¶ 2, 95, 100.  Thus, a "fair reading" of the

7    complaint does not establish defendants' claimed immunity. *See AE v. County of Tulare*, 666

8    F.3d 631, 640 (9th Cir. Cal. 2012) ("It would be odd indeed if a plaintiff included in a Complaint

9    allegations that would establish a basis for finding discretionary act immunity on the part of

10   government defendants.").  Moreover, determining whether defendants Tilton, Felker, Wright,

11   Vanderville, Foulk, Owen, and Hellwig made "deliberate and considered policy decisions" with

12   respect to the alleged lockdowns are questions of fact that cannot properly be resolved on a

13   motion to dismiss.  Accordingly, defendants' motion must be denied as to this ground, without

14   prejudice to its renewal at summary judgment, or if material factual disputes warrant, at trial.

15   III.    CONCLUSION

16          Based on the above, IT IS HEREBY RECOMMENDED that defendants' motion to

17   dismiss (Dckt. No. 92) be denied in all respects except that:

18          a.  Plaintiff Mitchell's Eighth and Fourteenth Amendment claims based on lockdowns

19   that occurred before September 12, 2006 be dismissed as unexhausted, and

20          b.  Plaintiff Mitchell's state law damages claims be limited to the period from February

21   28, 2007 through December 5, 2007.

22          These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24   after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  June 28, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE