1  PRISON LAW OFFICE
   DONALD SPECTER (SBN 83925)
2  REBEKAH EVENSON (SBN 207825)
   1917 Fifth Street
3  Berkeley, California 94710-1916
   Telephone: 510.280.2621
4  Facsimile: 510.280.2704
   dspecter@prisonlaw.com
5  revenson@prisonlaw.com

6  BINGHAM MCCUTCHEN LLP
   GEOFFREY HOLTZ (SBN 191370)
7  MANU PRADHAN (SBN 253026)
   HEATHER SHOOK (SBN 268716)
8  Three Embarcadero Center
   San Francisco, CA  94111-4067
9  Telephone:  415.393.2000
   Facsimile:  415.393.2286
10 geoffrey.holtz@bingham.com
   manu.pradhan@bingham.com
11 heather.shook@bingham.com

12 Attorneys for Plaintiffs

13                    UNITED STATES DISTRICT COURT

14                   EASTERN DISTRICT OF CALIFORNIA

15

16
   ROBERT MITCHELL, *et al.*,          No. 08-CV-1196 JAM EFB
17
              Plaintiffs,               **PLAINTIFFS' NOTICE OF MOTION,**
18      v.                              **MOTION AND MEMORANDUM OF POINTS**
                                        **OF AUTHORITIES IN SUPPORT OF**
19 TOM FELKER, *et al*.,                **MOTION FOR CLASS CERTIFICATION**

20            Defendants.               Judge:        John A. Mendez
                                        Date:         April 3, 2013
21                                      Time:         10 a.m.
                                        Courtroom:    6
22                                      Action Filed: May 30, 2008

23

24

25

26

27

28

---

PLAINTIFFS' MOTION FOR CLASS CERTIFICATON

1

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

2      NOTICE IS HEREBY GIVEN that on April 3, 2013 at 10:00 a.m., or as soon thereafter

3  as counsel may be heard, in Courtroom 6, located at 501 I Street, Sacramento, California,

4  Plaintiffs Robert Mitchell, Alvaro Quezada, Hanif Abdullah and Tony Trujillo, on behalf of

5  themselves and others similarly situated, will and hereby do respectfully move the Court for an

6  order certifying this proceeding as a class action pursuant to Rule 23(a) and 23(b)(2) of the

7  Federal Rules of Civil Procedure.  The proposed class, on whose behalf the representative

8  Plaintiffs named in the Complaint bring constitutional claims, is defined below.  Plaintiffs also

9  request an order appointing the undersigned counsel to represent the certified class pursuant to

10  Rule 23(g).

11      This Motion is based on Plaintiffs' Notice of Motion and Motion; the accompanying

12  Memorandum of Points and Authorities; the accompanying Declarations of Rebekah Evenson,

13  Geoffrey T. Holtz, Donald Specter, Eldon Vail, Devin McDonell, Hanif Abdullah, Robert

14  Mitchell, Alvaro Quesada, and Tony Trujillo; the accompanying Request for Judicial Notice; and

15  on the argument of counsel, the documents on file in this case, and such other evidence as may

16  be presented at or before any hearing.

17      Pursuant to United States District Court for the Eastern District of California Local Rule

18  230(g), Plaintiffs respectfully request oral argument on this motion and estimate that they

19  anticipate one hour of argument will be required for the hearing.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 2

III.  ARGUMENT .............................................................................................. 7

    A.   Plaintiffs Satisfy All Requirements For Class Certification ................................. 7

        1.   The More than 125,000 Class Members Satisfy the Numerosity Requirement of Rule 23(a)(1) ..................... 7

        2.   The Commonality Requirement of Rule 23(a)(2) is Satisfied Because the Challenged Policies Present Numerous Common Questions of Fact and Law ......................... 8

        3.   The Typicality Requirement of Rule 23(a)(3) is Satisfied Because the Named Plaintiffs' Claims are Representative of Those of the Class ...................... 14

        4.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class as Required by Rule 23(a)(4) ................................. 15

    B.   The Requirements of Rule 23(b)(2) are Satisfied Because This Case Seeks Declaratory and Injunctive Relief from Policies and Practices that Place the Class at Risk of Harm ...................... 16

IV.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL UNDER RULE 23(G)(1) .............................. 18

V.    CONCLUSION ......................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aaron Escalera v. Calvin Terhune, et al.,*
  Case No. A101614, California Court of Appeal, First Appellate District, Division
  One (February 10, 2004) ............................................................................................. 11

*Aaron Escalera v. Calvin Terhune, et al.,*
  Case No. HCPB 00-5164, Superior Court of California, County of Del Norte
  (December 10, 2002) ...................................................................................................... 11

*Allen v. Sakai,*
  48 F.3d 1082 (9th Cir. 1994) .......................................................................................... 12

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds,*
  No. 11-1085, 2013 WL 691001 (U.S. Feb. 27, 2013) ...................................................... 8

*Armstrong v. Wilson,*
  124 F.3d 1019 (9th Cir. 1997) ................................................................................ passim

*Baby Neal for and by Kanter v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ............................................................................................... 16

*Bradley v. Harrelson,*
  151 F.R.D. 422 (M.D. Ala. 1993) ................................................................................... 16

*Brown v. Plata,*
  131 S. Ct. 1910 (2011) ....................................................................................... 12, 13, 18

*Clark v. California,*
  123 F.3d 1267 (9th Cir. 1997) ........................................................................................ 17

*Connor B. v. Patrick,*
  278 F.R.D. 30 (D. Mass. 2011) ....................................................................................... 13

*Consolidated Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ............................................................................................... 7

*D.G. ex rel. Strickland v. Yarbrough,*
  278 F.R.D. 635 (N.D. Okla. 2011) .................................................................................. 13

*Henderson v. Thomas,*
  No. 2:11-cv-224, 2012 WL 3777146 (M.D. Ala. Aug. 30, 3012) .................................. 13

*Hoptowit v. Ray,*
  682 F.2d 1237 (9th Cir. 1982) ........................................................................................ 17

ii

*In re the Application of Randolph Haro,*
　　Case No. FCR282399, Superior Court of California, County of Solano (January 18,
　　2013) .................................................................................................................. 11

*In re Marcellious Tucker,*
　　Case No. FCR233502, Superior Court of California, County of Solano (May 13,
　　2009) .................................................................................................................. 11

*In re Morales,*
　　212 Cal. App. 4th 1410 (1st Dist. 2013) ...................................................... 9, 10, 11

*Inmates of San Diego Cnty. Jail in Cell Block 3B v. Duffy,*
　　528 F.2d 954 (9th Cir. 1975)............................................................................... 17

*Johnson v. California,*
　　543 U.S. 499 (2005)............................................................................................. 9

*Leeds v. Watson,*
　　630 F.2d 674 (9th Cir. 1980)............................................................................... 17

*L.H. v. Schwarzenegger,*
　　No. CIV. S-06-2042 LKK/GGH (E.D. Cal. Feb. 28, 2008). ................................. 16

*Lopez v. Smith,*
　　203 F.3d 1122 (9th Cir. 2000) (en banc)............................................................ 12

*Mayweathers v. Newland,*
　　258 F.3d 930 (9th Cir. 2001)............................................................................... 17

*Morrow v. Washington,*
　　277 F.R.D. 172 (E.D. Tex. 2011)......................................................................... 13

*Ortega-Melendres v. Arpaio,*
　　836 F. Supp. 2d 959 (D. Ariz. 2011).................................................................... 13

*Richardson v. Runnels,*
　　594 F.3d 666 (9th Cir. 2010)................................................................................. 9

*Rodriguez v. Hayes,*
　　591 F.3d 1105, 1122 (9th Cir. 2009)................................................... 13, 14, 15, 17

*Rosas v. Baca,*
　　No. CV 12-00428-DDP, 2012 WL 2061694 (C.D. Cal. June 7, 2012) ................. 12

*Spain v. Procunier,*
　　600 F.2d 189 (9th Cir. 1979)............................................................................... 12

*Thomas v. Ponder,*
　　611 F.3d 1144 (9th Cir. 2010)............................................................................. 12

iii

*Toussaint v. Yockey*,
    722 F.2d 1490 (9th Cir. 1984) ................................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ___, 131 S.Ct. 2541 (2011) ................................................................. 8, 9

*Walters v. Reno*,
    145 F. 3d 1032 (9th Cir. 1998) ............................................................. 7, 15, 16, 17

**OTHER AUTHORITIES**

15 C.C.R. § 3378 ................................................................................................. 11

CDCR Weekly Report of Population, *available at*
    http://www.cdcr.§ca.gov/Reports_Research/Offender_Information_Services_Branch/
    Population_Reports.html .................................................................................... 7

Fed. R. Civ. P. 23 ........................................................................................ passim

William B. Rubenstein, et al., *Newberg on Class Actions*, § 3.12 at 198 (5th ed. 2011) ............... 7

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        This case arises from Defendants' statewide policy and practice of imposing lengthy

4    race-based lockdowns in California prisons in violation of the Eighth and Fourteenth

5    Amendments to the United States Constitution.  During the last three years, the California

6    Department of Corrections and Rehabilitation ("CDCR") has imposed over fourteen hundred

7    lockdowns in its prisons, more than six hundred and fifty of which were imposed on specified

8    racial groups, affecting nearly every prisoner in CDCR's men's prisons.  More than two hundred

9    of the lockdowns lasted for a month or more, and some lasted for six months, a year, or multiple

10   years.

11       Four prisoners who have been subject to and harmed by Defendant's unconstitutional

12   lockdown policy seek to represent a class of prisoners housed in CDCR men's prisons who are

13   subject to CDCR's lockdown policy.  Plaintiffs seek declaratory and injunctive relief, including

14   an order prohibiting Defendants from implementing their policy of imposing lengthy and race-

15   based lockdowns.

16       The class comprises all prisoners who are now, or will in the future be, subjected to

17   CDCR's lockdown policy.  Because the class comprises of more than 125,000 prisoners there is

18   no question that Plaintiffs satisfy the numerosity requirement.  *See* Fed. R. Civ. P. 23(a)(1).

19   Similarly, as explained below, Plaintiffs and their counsel easily satisfy the adequacy of

20   representation prong of Rule 23(a)(4).  Finally, Plaintiffs satisfy the commonality and typicality

21   requirements.  CDCR has a single, central lockdown policy applicable to all prisons, and CDCR

22   headquarters staff review each prison lockdown to ensure that the lockdown complies with this

23   policy.  Therefore the Plaintiffs' claims about the unconstitutionality of that policy are common

24   to, and typical of, those of the Class.  Rule 23(a)(2), (3).  The centralized lockdown policy also

25   demonstrates that Defendants have "acted or refused to act on grounds that apply generally to the

26   class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

27   the class as a whole."  Rule 23(b)(2).

28

## II.     STATEMENT OF FACTS

CDCR has a single statewide policy that governs all lockdowns implemented at CDCR prisons.  Declaration of Rebekah Evenson ("Evenson Decl."), ¶ 6 & Ex. C [Harrington Dep. Excerpts] at 199:21-24 (statewide policy documents "set[] standardized procedures for implementing and managing and ending modified programs," which prison wardens must follow), 199:18-200:2 ("the secretary sets the policy; the wardens implement it"), 310:20-311:2 (centralized lockdown policy applies "with equal affect to all the prisons that are in the state of California" and "also to the out-of state institutions where California has contract beds.")]; *id.*, ¶ 12 & Ex. I [Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015 (July 6, 2007)]; *id.*, ¶ 13 & Ex. J [Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015 (October 15, 2012)].

Under this policy, prisons may lock down entire racial groups.  Evenson Decl., ¶ 6 & Ex. C at 95:21-96:14 (It is appropriate under state policy to lockdown "all of one ethnic group"), 94:5-24 (a lockdown on black prisoners, white prisoners, Hispanic prisoners, or prisoners listed as "others" is "consistent with [CDCR] policy")].  Thus, if a fight breaks out in a prison, the State's policy permits the prison to impose a lockdown on the *racial groups* to which the fighting inmates belong.  *Id.*, ¶ 6 & Ex. C at 304:12-305:10.

Defendants persist in this policy even though they understand that there are individual prisoners at every custody level who are not involved in violent activities, and not involved in gangs.  Evenson Decl., ¶ 18 & Ex. O [Defendant Cate's Response to Plaintiffs' Requests for Admission, Set One, October 1, 2012, at 2].  Indeed, Defendants explicitly acknowledge that some prisoners are locked down just because they are members of the targeted racial group, even though those individuals had no involvement in the incident giving rise to the lockdown; what is more, some of the affected prisoners *were not even in prison at the time that the precipitating incident occurred.  Id.*, ¶ 6 & Ex. C at 305:11-20 (appropriate for a lockdown to affect all black and white prisoners in a unit, even if some of the black and white prisoners affected were not even living in the prison when the precipitating event occurred), 246:2–247:9 (racial lockdown impacts all prisoners of a given race, even if not involved in gang politics).

2

1    In order to implement its race-based lockdown policy, CDCR assigns a race or ethnic tag

2  to every inmate.  Defendants concede that they put each California prisoner into one of four

3  racial groupings:  Black, White, Hispanic, and "Other."  Evenson Decl., ¶ 18 & Ex. O, ¶ 6 & Ex.

4  C at 266:7-9.

5    This racial identifier is listed on various prison forms, and a prisoner's race is also listed

6  on the "bed cards" that prison housing units maintain to identify which prisoners live there.

7  Evenson Decl., ¶ 6 & Ex. C at 258:11-260:2, 153:12-24, 155:3-156:8.  Some prisons even put

8  color-coded signs on cell doors to identify the race of prisoners living there, which helps prison

9  staff to facilitate the lockdowns of entire racial groups.  Evenson Decl., ¶ 6 & Ex. C at 270:4-

10  271:12, ¶ 7 & Ex. D [Arthur Dep. Excerpts] at 72:8-73:8, ¶ 14 & Ex. K [Arthur Dep. Ex. 36];  ¶

11  19 & Ex. P [Defendants' Answer to Plaintiffs' Second Amended Complaint] at ¶¶ 32, 68.  The

12  visual effects of this policy are startling:  blue signs on a cell door announce that black prisoners

13  live there; white signs on a cell door proclaim the residence of white prisoners, etc.  Declaration

14  of Robert Mitchell ("Mitchell Decl."), at ¶ 2; Declaration of Hanif Abdullah ("Abdullah Decl."),

15  ¶ 2; Evenson Decl., ¶ 7 & Ex. D at 69:18-71:4, ¶ 14 & Ex. K, ¶ 19 & Ex. P at ¶ 68.

16    CDCR also explicitly permits the lockdowns to last for an indefinite period of time.

17  Evenson Decl., ¶ 6 & Ex. C at 113:13-114:12.  Lockdowns last for months, years, and sometimes

18  more than a decade.  Declaration of Devin McDonell ("McDonell Decl."), ¶¶ 2-9 & Exs. A & B

19  [PSR Summary Spreadsheets] (compilation summarizing lockdowns occurring in California

20  men's prisons during the past three years); Evenson Decl., ¶ 6 & Ex. C at 98:9-20 (describing

21  lockdown lasting approximately 10 years), 96:19-97:21 (agreeing that there is no time limit for

22  how long a lockdown can last under State lockdown policy; some last for months, some for more

23  than a year), 114:4-12 (permissible to deprive prisoners of exercise for months or years).

24    During the lockdowns, prisoners of the affected race may be locked in their cells twenty-

25  four hours a day, without any ability to attend religious services, receive visits or telephone calls

26  from their family members, go to school, go to work, or access other prison programs.  *See, e.g.*,

27  Evenson Decl., ¶ 15 & Ex. L [Arthur Dep. Ex. 38], ¶ 17 & Ex. N  [Arthur Dep. Ex. 62], ¶ 16 &

28  Ex. M [Arthur Dep. Ex. 49].  Prisoners of the unaffected races have normal access to all of these

3

1   privileges and activities.

2          The practice of race-based lockdowns is not isolated or infrequent.  During each of the

3   last three years, there were more than 650 race-based lockdowns in California's men's prisons.

4   McDonell Decl., ¶¶ 2, 9 Exs. A & B (compilation summarizing lockdowns occurring in

5   California men's prisons during the past two years).  Twenty-nine of California's thirty in-state

6   men's prisons, and all of the out-of-state facilities where California prisoners are held, have had

7   race-based lockdowns in the last three years.  *Id.*  In that timeframe, more than 200 lockdowns

8   lasted a month or more, many of them lasting for several months, and even years.  *Id.*

9          Defendants do not attempt to mask the fact that they lock down prisoners based solely on

10  the color of their skin.  For example, in response to an isolated incident between seven black and

11  Hispanic prisoners in June 2009, Solano State Prison locked down 944 black and Hispanic

12  prisoners for one month even though there was no evidence that non-involved black or Hispanic

13  prisoners would attack each other if not locked down.  Evenson Decl., ¶ 7 & Ex. D at 77:15-

14  79:21, 100:11-20; ¶ 15 & Ex. L.  Similarly, in response to a fight between three "Mexican

15  Nationals" (prisoners born in Mexico) over a debt, Solano State Prison locked down all Mexican

16  National prisoners for one month in September 2011.  Evenson Decl., ¶ 7 & Ex. D at 178:19-

17  181:15, 179:16-180:24 (prison staff determined it was appropriate to continue the lock down for

18  a full month even though "preliminary interviews indicated that it was an isolated incident"), [¶

19  17 & Ex. N.  In another example at Solano State Prison in September 2010, in response to an

20  isolated fight between four black prisoners, 535 black prisoners were locked down for nearly

21  three weeks only because "the prisoners involved in the fight were black."  Evenson Decl., ¶ 7 &

22  Ex. D at 136:1-5, ¶ 16 & Ex. M.

23         Although each lockdown arises from a different incident, all lockdowns are closely

24  monitored and controlled by the Secretary of CDCR through his designee, a CDCR associate

25  director.  The Secretary's designee is tasked with ensuring that each lockdown conforms with

26  CDCR's centralized lockdown policy.  Evenson Decl., ¶ 6 & Ex. C at 50:4-52:13, 24:18-28:4.

27  At the outset, any decision to maintain a lockdown for more than 24 hours must be approved by

28  the Secretary of CDCR or his designee.  Evenson Decl., ¶ 6 & Ex. C at 39:7-23.  In deciding

4

1   whether to permit a lockdown to continue, the Secretary's designee examines who is subject to

2   the lockdown, why the lockdown is being imposed, and what programs (including outdoor

3   exercise) are eliminated for prisoners subject to the lockdown.  Evenson Decl., ¶ 6 & Ex. C at

4   24:18-28:4, 50:4-52:13, 142:20-145:23.

5           The Secretary's designee will not permit a lockdown to continue if it violates state policy.

6   Evenson Decl., ¶ 6 & Ex. C at 27:25-28:4 (if lockdown was "outside of policy" the Associate

7   Director "would step in to get that warden to change course"), 52:4-13 (signature of an Associate

8   Director on lockdown reports "affirms that the lockdown is consistent with state lockdown

9   policy.").  After the lockdown is approved, the Secretary's designee maintains close contact with

10  the warden who is implementing it.  *Id.* at 24:18-25:3, 52:15-53:18 (after the associate director is

11  initially notified about a lockdown or modified program, the warden and the associate director

12  confer regularly; at first daily and then weekly).  Every week, the warden submits to the

13  Secretary's designee a formal lockdown "update," and for the lockdown to continue, the

14  Secretary's designee must give his or her stamp of approval.  *Id.* at 204:5-9 (it is the Associate

15  Director's responsibility "to disapprove any weekly status report or update that doesn't conform

16  to state policy").  In addition, the Secretary's designee and the Warden have period formal

17  "unlock" conference calls, in which they discuss the decision to maintain the lockdown; here,

18  again, it is the responsibility of the Secretary's designee to stop any lockdown that violates state

19  policy.  *Id.* at 63:3-66:11 (during the 30-day unlock calls, if the associate director "determine[s]

20  that the warden is not following state modified program policies, [the associate director]

21  instruct[s] the warden to do so.")

22          At each step, the Secretary of Corrections has authority – and the obligation – to order a

23  warden to lift any lockdown that violates state policy.  Yet for at least five years – during which

24  time CDCR prisons have implemented hundreds of race-based lockdowns, many of which

25  deprived prisoners of outdoor exercise for months and years – the Secretary or his designee has

26  never once ordered a warden to lift a lockdown.  Evenson Decl., ¶ 6 & Ex. C at 139:19-140:4;

27  165:15-24.  That is because all the lockdowns that CDCR prisons have implemented over the last

28  five years conformed to State lockdown policy.  *Id.* at 165:15-24

5

1    The State's lockdown policy has remained essentially unchanged since at least 2007.  For

2    many years, CDCR freely acknowledged that its policy is to "manage[] inmate populations by

3    ethnicity and subcultures."  Evenson Decl., ¶ 20 & Ex. Q [Foston Decl. in Support of Defs' Mot

4    to Dismiss] at 93-1 (p. 2).  CDCR has repeatedly proclaimed – including to this Court – that it is

5    official CDCR policy that "when there is an incident involving any race, all inmates of that race

6    are locked up."  *Id*. at 93-1 (p. 2); *id.*, at 93-2) (p. 2) (same).  CDCR readily acknowledges that

7    the "unfortunate[]" result of this policy of race-based lockdowns is that "those inmates not

8    involved in the violence may be impacted by the actions of a few."  *Id.* at 93-3 (p. 3); *see also*

9    Evenson Decl., ¶ 8 & Ex. E at 148:15-18 ("And occasionally that means holding large numbers

10   of Hispanics responsible for the actions of the few?  Yes . . .").

11   Although CDCR purported to "revise" some of the language in these documents after the

12   Court decided that this case could proceed, and despite the fact that CDCR made some revisions

13   to the lockdown policy document in 2012, Defendants concede that CDCR has not made

14   substantive changes to the policy permitting race-based lockdowns, or excessively lengthy

15   lockdowns.  Evenson Decl., ¶ 6 & Ex. C at 201:3-206:13 (2012 revised policy made no change

16   to the policy regarding imposing racial lockdowns, or how long lockdowns can last), 184:1-6

17   (policy governing when a lockdown may be "imposed upon individuals identified by an ethnic or

18   racial group" is unchanged), 201:11-22 (although new policy has new verbiage about racial

19   lockdowns, that language is "not a substantive change to policy," but rather was intended to

20   codify existing procedure, and the "language was added at the advice of legal counsel.").

21   Under the new policy, as under the old policy, wardens may lock prisoners down on the

22   basis of race or ethnicity, and there is no limit on how long such race-based lockdowns may last.

23   Evenson Decl., ¶ 6 & Ex. C at 200:22-202:22.  Under the new policy, as under the old policy,

24   wardens may deprive prisoners of outdoor exercise, and there is no limit on how long such

25   deprivations may last.  *Id.* at 200:22-202:22, 113:13-114:12.  All of the prison lockdowns that

26   were approved under the 2007 policy (including those described above) would also be approved

27   under the 2012 policy.  *Id.* at 184:12-185:13 (unaware of any lockdown that was valid under the

28

6

2007 policy that would have been invalid under 2012 policy).[1]

Moreover, under the new statewide policy, as under the old policy, it is the responsibility of CDCR's Secretary to ensure that all wardens are uniformly following all lockdown procedures.  Evenson Decl., ¶ 6 & Ex. C at 183:14-25.

## III.    ARGUMENT

### A.    Plaintiffs Satisfy All Requirements For Class Certification.

For a district court to certify a class, the named plaintiffs must satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Walters v. Reno*, 145 F. 3d 1032, 1045 (9th Cir. 1998). Plaintiffs satisfy each of these requirements.

### 1.    The More than 125,000 Class Members Satisfy the Numerosity Requirement of Rule 23(a)(1)

To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  A class with 40 or more members raises a presumption that the numerosity requirement has been satisfied.  William B. Rubenstein, et al., *Newberg on Class Actions*, § 3.12 at 198 (5th ed. 2011); *see also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

The proposed class comprises all prisoners who are now, or will in the future be, subjected to CDCR's lockdown policy.  Since all prisoners are subject to the policy, and all male prisoners are affected by the racial and lengthy lockdowns challenged herein (McDonell Decl., ¶¶ 2-9, Exs. A & B) the class includes all of the more than 125,000 male prisoners currently in the custody of CDCR.  CDCR Weekly Report of Population, *available at* http://www.cdcr.ca.gov/Reports_Research/Offender_Information_Services_Branch/Population_

---

[1]The main change made by the 2012 lockdown policy is that prison staff are now required to follow new steps after they have made the decision to end a lockdown.  Evenson Decl., ¶ 6 & Ex. C at 208:17-209:22, 257:25-258:10.  This does not change the length of the lockdown, or who is subject to it, only the procedure for ending a lockdown that the warden has already decided to end.  *Id.* at 216:25-217:16.  In other words, under the new policy, the prisons can continue imposing lengthy, race-based lockdowns as they have always done.

7

Reports.html (last viewed January 30, 2013).  These numbers are more than adequate to satisfy

the numerosity requirement of Rule 23(a)(1).

> **2.      The Commonality Requirement of Rule 23(a)(2) is Satisfied Because the Challenged Policies Present Numerous Common Questions of Fact and Law.**

To meet the commonality requirement, there must be "questions of law or fact common

to the class."  Rule 23(a)(2).  In a civil rights suit such as this one, "'commonality is satisfied

where the lawsuit challenges a system-wide practice or policy that affects all of the putative class

members.'"  *Armstrong*, 275 F.3d at 868.

The Supreme Court recently reiterated that commonality requires the plaintiffs to show

that each member of the class "ha[s] suffered the same injury;" that is, that the claims "must

depend upon a common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct.

2541, 2551 (2011) (citation and quotation marks omitted).  At the same time, however, Plaintiffs

are not required to prove the *truth* of that common contention.  While there may be some overlap

with the merits inquiry, "Rule 23 grants courts no license to engage in free-ranging merits

inquiries at the certification stage.  Merits questions may be considered to the extent – but only to

the extent – that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, No. 11-1085,

2013 WL 691001 (U.S. Feb. 27, 2013).

In *Dukes*, the Court clarified that, to fulfill the commonality requirement, a class claim

must be "capable of classwide resolution … mean[ing] that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Dukes*, 131 S.Ct. at 2551.  In other words, "[w]hat matters to class certification . . . [is] the

capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

litigation."  *Id.* (emphasis in original) (citation and quotation marks omitted).  Importantly, "for

purposes of Rule 23(a)(2) [e]ven a single [common] question will do."  *Id.* at 2556 (citation and

internal quotation marks omitted).

Here, there are several common questions, all of which satisfy the *Dukes* standard.

1   All California prisoners are assigned to one of four racial groups, and all are subject to

2   Defendants' statewide lockdown policy under which Defendants impose lockdowns on all

3   members of the targeted identified racial group.  *See*, *e.g.*, Evenson Decl., ¶ 19 & Ex. P at ¶ 31

4   (prisoners are assigned a racial group), ¶ 6 & Ex. D at  94:5-24 (race based lockdowns are

5   "consistent with [CDCR] policy"); McDonell Decl., ¶¶ 4 & 9, Exs. A & B (all of California's in-

6   state prisons for men have imposed race-based lockdowns since January 1, 2011).  One question

7   common to all members of the Class, then, is whether Defendants' uniform lockdown policy and

8   practice violates the Plaintiffs' right to equal protection under law, pursuant to the Fourteenth

9   Amendment of the Constitution.  The Court's answer to that question is "apt to drive the

10   resolution of the litigation" because it will be the foundation for determining whether it is

11   appropriate to issue an injunction directing these Defendants to cease implementing the

12   unconstitutional policy.  *Dukes*, 131 S.Ct. at 2551 (citation omitted).

13   Resolution of the Equal Protection claim will depend upon whether the State can

14   demonstrate that its policy of imposing racial lockdowns is narrowly tailored to serve a

15   compelling state interest.  *Johnson v. California*, 543 U.S. 499, 511 (2005) ("[S]ociety as a

16   whole suffers" when California prison officials "use race as a proxy for gang membership and

17   violence without demonstrating a compelling government interest and proving that their means

18   are narrowly tailored."); *Richardson v. Runnels*, 594 F.3d 666, 671 (9th Cir. 2010) (subjecting

19   race-based lockdowns to strict scrutiny); *In re Morales*, 212 Cal. App. 4th 1410, 1412 (1st Dist.

20   2013) (upholding order enjoining Pelican Bay State Prison from locking down prisoners on the

21   basis of ethnicity under strict scrutiny).  In the *Richardson* case, California prison officials

22   locked down all black prisoners after several incidents perpetrated or planned by African

23   American prisoners.  The State justified the lockdown on the grounds that "race alone tied

24   together the perpetrators and the larger group."  *Id.* at 671.  As the Ninth Circuit found, "An

25   assumption of this kind is grounded on race" and must therefore satisfy strict scrutiny.  The

26   *Richardson* court announced the standard as follows: Defendants must "show that reasonable

27   men and women could not differ regarding the necessity of a racial classification in response to

28   prison disturbances and that the racial classification was the least restrictive alternative (i.e., that

9

1  any race-based policies are narrowly tailored to legitimate prison goals)." *Id.* at 671.

2       Accordingly, Class Members in the case at hand share the following common questions:

3       • Whether the State's lockdown policy relies on racial classifications.

4       • Whether the CDCR's policy and practice of using racial classifications to impose

5          lockdowns is "the least restrictive alternative" and is "narrowly tailored."*Id.*

6       Many of the factual issues pertaining to Defendants' defense will be common.  For

7  example, Defendants make the broad claim that prisoners are "normally" associated with a

8  racially-affiliated prison gang, and so race-based lockdowns prevent further violence.  *See*, *e.g.*,

9  Evenson Decl., ¶ 6 & Ex. C at 103:6-12, 104:5-20, 254:5-11 (lockdowns are imposed "just

10 because of the violence that occurs").  Under the state's lockdown policy, Defendants may

11 initiate a racial lockdown whenever an incident "occurs between two groups – or it could occur

12 between one ethnic group" and prison staff do not know who was "actually involved;"  prison

13 staff will "just tell you there was a whole bunch of Hispanics, a whole bunch of black guys, a

14 whole bunch of white guys, whatever the ethnic groups are, and for security and safety of the

15 institution, until we can figure out who's actually involved in the incident, that would be a type

16 of program where you could modify [lock down] all of one ethnic group."  *Id.* at 95:21-96:14.

17 The question whether this rationale, which applies a statewide policy, meets the narrow tailoring

18 test will be common to all class members.

19       Similarly, many of the issues presented by Plaintiffs will be common.  The evidence

20 regarding the prevalence of the lockdowns will be common to all class members, as will the

21 evidence regarding Defendants' role in implementing and maintaining the challenged

22 lockdowns.  Also common to all class members will be the evidence showing that there are

23 readily available race-neutral policies that will protect prison security while treating prisoners as

24 individuals rather than racial stereotypes.  For example, Plaintiffs will show that no other state

25 implements race-based lockdowns.  Declaration of Eldon Vail ("Vail Decl."), ¶¶ 6, 8.  Instead,

26 other states manage prisoners as individuals, reacting to incidents by isolating the involved

27 prisoners, and controlling the movement of only those prisoners who, as individuals, pose a risk

28 to institutional security.  *Id*. ¶¶ 8-9.  Defendants could implement such policies as a race-neutral

10

means to protect prison safety. *Id.* ¶ 14.  Defendants could also individually assess whether each prisoner belongs to a gang, pursuant to state regulations expressly designed to ensure the accuracy of gang designations. 15 C.C.R. § 3378; Vail Decl., ¶¶ 9 & 14.  Defendants could also assess each individual's likelihood of engaging in violent acts, and ensure that lockdowns do not apply to low-risk prisoners who have demonstrated that they do not engage in gang activities or violence.  Vail Decl., ¶ 9.  Indeed, several courts have already ordered Defendants to do just that: to stop using race as a proxy for gang membership, to stop imposing race-based lockdowns, and instead to treat prisoners as individuals.  Request for Judicial Notice ("RJN"), Ex. 1 [Decisions and Order re Habeas Corpus, *Aaron Escalera v. Calvin Terhune, et al.*, Case No. HCPB 00-5164, Superior Court of California, County of Del Norte (December 10, 2002)] (requiring Pelican Bay State Prison officials to make individual determinations, not based on race, regarding which prisoners could be released from lockdown); *id.*, Ex. 2 [Opinion, *Aaron Escalera v. Calvin Terhune, et al.*, Case No. A101614, California Court of Appeal, First Appellate District, Division One (February 10, 2004)] (affirming trial court order); *In re Morales*, 212 Cal. App. 4th 1410, 1412 (1st Dist. 2013) (affirming order requiring Pelican Bay State Prison officials to refrain from locking down prisoners on the basis of ethnicity unless prison security requires it and it is done only "on a short-term emergency basis" without preferential treatment); *id.*, Ex. 4 [Decision of the Court re Writ of Habeas Corpus, *In re Marcellious Tucker*, Case No. FCR233502, Superior Court of California, County of Solano (May 13, 2009)] (enjoining Solano State Prison officials from "locking down and/or maintaining inmates on modified program based on an inmate's ethnic or racial classification")]; *id.*, Ex. 5 [Decision of the Court re Writ of Habeas Corpus, *In re the Application of Randolph Haro*, Case No. FCR282399, Superior Court of California, County of Solano (January 18, 2013)] (requiring CSP-Solano officials to stop using race based criteria for institution of modified programs).  Whether such remedies pose an adequate alternative to Defendants' race-based lockdown policy is common to all class members.

　　　　Another question common to all members of the Class is whether Defendants' policy and practice of depriving prisoners of exercise for unlimited periods of time, including months and years, creates a "sufficiently serious" deprivation to arise to a violation of the Eighth

11

1   Amendment to the United States constitution.  *See, e.g., Thomas v. Ponder*, 611 F.3d 1144, 1151

2   (9th Cir. 2010) (*citing LeMaire* at 1457) ("Exercise has been determined to be one of the basic

3   human necessities protected by the Eighth Amendment"); *id.* at 1152 (citing *Lopez v. Smith*, 203

4   F.3d 1122, 1132-33 (9th Cir. 2000)(en banc); *Allen v. Sakai*, 48 F.3d 1082, 1086 (9th Cir. 1994))

5   (prohibition on outdoor exercise for six weeks "sufficiently serious" to support an Eighth

6   Amendment claim); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) ("There is substantial

7   agreement among the cases in this area that some form of regular outdoor exercise is extremely

8   important to the psychological and physical well-being of the inmates.")  Such questions are

9   appropriately resolved on a class level.  *See, e.g.*, *Brown v. Plata*, 131 S. Ct. 1910 (2011)

10  (affirming class-wide injunctive relief to remedy eighth amendment violations arising from

11  inadequate medical and mental health care in California prisons); *Rosas v. Baca*, No. CV 12-

12  00428-DDP (SHx), 2012 WL 2061694, at *5 (C.D. Cal. June 7, 2012) (certifying prisoner class

13  where the common question was whether officials were deliberately indifferent to a pattern or

14  practice of violence).

15          Another common question is whether, by implementing their lockdown policy,

16  Defendants were deliberately indifferent to inmate health or safety; that is, whether they knew

17  of a substantial risk of harm to the prisoner's health from the deprivation.  *See, e.g.*, *Thomas,* 611

18  F.3d at 1152 (prison officials aware "as a matter of law" that depriving prisoners of outdoor

19  exercise creates a substantial risk of serious harm).

20          Finally, a determination of the appropriate remedy in this case will be common to all

21  class members.  Since the remedy sought is an injunction, questions as to the appropriate terms

22  and scope of any injunction will be common to all class members.

23          A finding of commonality is appropriate in civil rights cases challenging overarching

24  policies and practices such as these.  *See Rosas v. Baca*, No. CV 12-00428-DDP (SHx), 2012

25  WL 2061694, at *5 (C.D. Cal. June 7, 2012) (certifying prisoner class where the question

26  whether officials were deliberately indifferent to a pattern or practice of violence was a common

27  question likely to yield a common answer); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959,

28  989 (D. Ariz. 2011) (certifying class in racial profiling lawsuit against sheriff; court found that

1  commonality was satisfied despite the fact that "the factual circumstances of the individual stops

2  involving the named Plaintiffs differ[ed], [where the named Plaintiffs] claim[ed] generally that

3  [the sheriff's office] ha[d] a policy of racial profiling"); *Henderson v. Thomas*, No. 2:11-cv-224,

4  2012 WL 3777146, at *5-*7 (M.D. Ala. Aug. 30, 3012) (certifying prisoner class where

5  plaintiffs alleged a statewide policy of HIV segregation in the state prison system); *Morrow v.

6  Washington*, 277 F.R.D. 172, 192 (E.D. Tex. 2011) (certifying class where plaintiffs alleged a

7  "city wide policy … of targeting racial and ethnic minorities for traffic stops"); *Connor B. v.

8  Patrick*, 278 F.R.D. 30, 31-35 (D. Mass. 2011) (certifying class of  abused children in custody of

9  state agency); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 639 (N.D. Okla. 2011)

10  (certifying class of children in foster care seeking redress for the defendants' failure to

11  adequately monitor their safety); *see also Brown v. Plata*, 131 S. Ct. 1910 (2011) (affirming

12  class-wide injunctive relief to remedy inadequate medical and mental health care in all California

13  prisons).

14       Differences among class members with respect to the specific incidents that gave rise to

15  the lockdowns they experienced do not undermine commonality.  *Armstrong*, 275 F.3d at 868

16  (rejecting defendant's argument that class of prisoners with disabilities was improperly certified

17  in prison case alleging several forms of systemic disability discrimination).  In *Rodriguez v.

18  Hayes*, the Ninth Circuit held:

19
20       It is not necessary that all questions of fact and law ... be common to satisfy the
         rule.... [T]he existence of shared legal issues with divergent factual predicates is
         sufficient.... The commonality requirement asks us to look only for some shared
21       legal issue or a common core of facts.

22  591 F.3d 1105, 1122 (9th Cir. 2009) (internal citations and quotations omitted).

23       As in *Armstrong* and *Rodriguez*, any dissimilarities between class members here pose no

24  bar to a finding of commonality.  The claims of the Class depend upon the same underlying

25  questions: whether Defendants' statewide lockdown policy constitutes illegal race

26  discrimination, and whether the policy deprives inmates of basic necessities such as outdoor

27  exercise.  These questions are common to all class members.

28       **3.       The Typicality Requirement of Rule 23(a)(3) is Satisfied Because the**

13

1        **Named Plaintiffs' Claims are Representative of Those of the Class.**

2              To meet the typicality requirement, the claims of the named plaintiffs must be "typical of

3     the claims or defenses of the class."  Rule 23(a)(3).  The typicality requirement is "satisfied when

4     each class member's claim arises from the same course of events, and each class member makes

5     similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868 (citations

6     omitted).  The injuries do not have to be identical, but must be "reasonably co-extensive with

7     those of absent class members" and arise from the same course of conduct. *Rodriguez*, 591 F.3d

8     at 1124; *Armstrong*, 275 F.3d at 86.  In *Armstrong*, the Ninth Circuit affirmed a ruling certifying

9     a class composed of prisoners with different disabilities, holding that the "plaintiffs all suffer a

10    refusal or failure to afford them accommodations as required by statute, and are objects of

11    discriminatory treatment on account of their disabilities." *Armstrong*, 275 F.3d at 869.

12    Recognizing that prisoners with different disabilities will suffer different injuries as a result of

13    the defendants' conduct, the Court held that those "minor" differences were "insufficient to

14    defeat typicality." *Id.*

15            Here, the injuries suffered by the named Plaintiffs are similarly typical of the Class as a

16    whole.  Each Plaintiff and each Class member is subject to the State's lockdown policy, by

17    which prisoners are locked down by race, and for extensive periods of time.  The Plaintiffs have

18    each suffered as a result of Defendants' lengthy racial lockdowns.  Mitchell Decl., ¶¶ 5-8;

19    Declaration of Alvaro Quezada ("Quezada Decl."), ¶ 8; Declaration of Tony Trujillo ("Trujillo

20    Decl."), ¶¶ 9-10; Abdullah Decl., ¶¶ 10-13.

21            Even though every lockdown is precipitated by different events, CDCR employs

22    statewide policies and procedures to regulate the imposition of lockdowns regardless of the

23    precipitating event, and it tightly supervises and controls the decision whether to impose or

24    maintain all lockdowns.  Evenson Decl., ¶ 6, Ex. C at 199:6-200:2, 310:8-24, 50:4-54:6.

25            Each member of the class is subject to the same statewide policy, and the harm that

26    Plaintiffs suffer from Defendants' actions is typical of the harm to other members of the Class.

27    Mitchell Decl., ¶¶ 3-4, 6 (all Black prisoners at High Desert Prison were subjected to nearly 18

28    months of continuous lockdowns); Quezada Decl., ¶¶ 5, 7 (all "Hispanic Others" were locked

down at Kern Valley State Prison for 90 days beginning in February 2010 and from January 2010 to January 2011); Trujillo Decl., ¶¶ 4-7 (all Hispanic prisoners were locked down at Ironwood State Prison for several one-month periods in 2009 and 2010);  Abdullah Decl., ¶¶ 5-8 (all Black prisoners were locked down on five separate occasions from June 2009 through April 2011).

As in *Armstrong* and *Rodriguez*, the fact that every prisoner in CDCR custody does not suffer exactly the same injuries as the named Plaintiffs, and that deprivations arise from the conduct of various staff members, are not grounds for denying class certification.  Because the risk of injury arises from the same deficient system-wide policies and practices, the Plaintiffs' claims are typical of those of the Class.

> **4.**      **The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class as Required by Rule 23(a)(4).**

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately represent the interests of the class.  Rule 23(a)(4).  Satisfying this requirement depends on "'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Walters*, 145 F.3d at 1046 (citation omitted).

The named Plaintiffs and the Class raise the same claims giving rise to common questions of fact and law.  The class representatives do not have any interests that are antagonistic to the interests of the Class, and they are committed to the vigorous prosecution of this suit.  Mitchell Decl., ¶ 10; Quezada Decl., ¶ 9; Trujillo Decl., ¶ 12; Abdullah Decl., ¶ 15. Both the class representatives and class members have a common interest in ensuring that prisoners in the custody of CDCR are not subjected to unconstitutional lockdowns, and each has affirmed his or her willingness to perform the duties of a class representative.  Mitchell Decl., ¶ 10; Quezada Decl., ¶ 9; Trujillo Decl., ¶ 12; Abdullah Decl., ¶ 15.  No absent class member has an interest in continuing to be subjected to lockdowns based on his race or to unconstitutionally long lockdowns, and there is thus no conflict or antagonism between the named plaintiffs and absent class members.  There is no suggestion of any collusion between the named Plaintiffs and

15

any of the Defendants.  Moreover, no conflicts exist that could hinder the named Plaintiffs' ability to pursue this lawsuit vigorously on behalf of the Class.  The named Plaintiffs will fairly and adequately protect the interests of the Class.

Plaintiffs' counsel are fully competent to prosecute this class action.  The Prison Law Office and Bingham McCutchen have served as class counsel in prisoners' rights actions in this District recently in *Valdivia v. Brown* and *L.H. v. Brown*.  Holtz Decl., ¶ 9.  In certifying a class, this District has previously described the Prison Law Office and Bingham McCutchen as " competent and experienced. . . . The court has observed first-hand the high level of competence exhibited by plaintiffs' counsel."  Order Certifying Class, *L.H. v. Schwarzenegger*, No. CIV. S-06-2042 LKK/GGH, (E.D. Cal. Feb. 28, 2008).

Accordingly, this case satisfies all the requirements for a class action enumerated in subsection (a) of Rule 23.

**B.      The Requirements of Rule 23(b)(2) are Satisfied Because This Case Seeks Declaratory and Injunctive Relief from Policies and Practices that Place the Class at Risk of Harm.**

In addition to satisfying Rule 23(a), a class action must meet the requirements of one of the provisions of Rule 23(b).  For the reasons described below, this case fits squarely within Rule 23(b)(2), which authorizes class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2).  As the Ninth Circuit has explained, this section "was adopted in order to permit the prosecution of civil rights actions."  *Walters*, 145 F.3d at 1047; *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief"); *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (subsection (b)(2) "is particularly applicable to suits… involv[ing] conditions of confinement in a correctional institution").

Whether a class may be certified under Rule 23(b)(2) depends on "whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez*, 591 F.3d at

16

1   1125.  The fact that different class members have suffered different injuries—or no injury at

2   all—does not bar certification under Rule 23(b)(2).  *Id.*; *see also Walters*, 145 F.3d at 1047 ("We

3   note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual

4   differences among the class members appears to demonstrate a fundamental misunderstanding of

5   the rule. . . . It is sufficient if class members complain of a pattern or practice that is generally

6   applicable to the class as a whole.").

7          Here, the Secretary of CDCR has imposed a policy and affirmed a practice of imposing

8   lengthy race-based lockdowns in all the men's prisons under CDCR jurisdiction.  Plaintiffs seek

9   injunctive and declaratory relief to end this policy and practice, and to abate the injuries that

10  Defendants' policies and practices inflict on the Class.  All class members are subject to the

11  unconstitutional policies and practices of locking down prisoners based on their race and locking

12  them down for prolonged periods of time, and an injunction against such practices is thus

13  appropriate with respect to the class as a whole.  *Rodriguez,* 591 F.3d at 1125 (class certification

14  in action to enjoin statewide policy or practice appropriate even if not all class members have yet

15  suffered harm, or if the harm differs between class members); *Mayweathers v. Newland*, 258

16  F.3d 930, 933-34 (9th Cir. 2001) (class action by Muslim prisoners at California state prison);

17  *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (statewide class action on behalf of

18  physically disabled California prisoners); *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997)

19  (statewide class action on behalf of developmentally disabled California prisoners); *Toussaint v.

20  Yockey*, 722 F.2d 1490, 1491 (9th Cir. 1984) ("class of approximately 2,000 prisoners confined

21  in administrative segregation in four California State Prisons"); *Hoptowit v. Ray*, 682 F.2d 1237,

22  1249 (9th Cir. 1982) (class of all prisoners in Washington State Penitentiary challenging, inter

23  alia, "a pattern and practice of brutality and harassment by the prison guards"); *Leeds v. Watson*,

24  630 F.2d 674, 675 (9th Cir. 1980) (class action on behalf of prisoners in county jail); *Inmates of

25  San Diego Cnty. Jail in Cell Block 3B v. Duffy*, 528 F.2d 954, 956-57 (9th Cir. 1975) (reversing

26  denial of class certification for detainees in a county jail cellblock).  *See also Brown v. Plata*, 131

27  S. Ct. 1910 (2011) (affirming class-wide injunctive relief to alleviate prison overcrowding and

28  inadequate medical and mental health care).

Plaintiffs' suit seeks to enjoin Defendants from implementing their policy and practice of lengthy, race-based lockdowns. The relief requested here will redound to the benefit of all members of the Class and the Subclass and the requirements of Rule 23(b)(2) are accordingly satisfied.

## IV.  THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL UNDER RULE 23(G)(1).

Rule 23(g) requires that the district court appoint class counsel for any class that is certified. See Rule 23(g)(1). The attorneys appointed to serve as class counsel must "fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). The appointed class counsel must be listed in the Court's class certification order. Rule 23(c)(1)(B).

The Rule identifies four factors that the Court must consider in appointing class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A). The Prison Law Office and Bingham McCutchen LLP, which have agreed to act jointly as class counsel if the Court so designates them, satisfy each of these requirements.

First, Plaintiffs' counsel have worked for more than two years to identify and investigate the claims in the action. Evenson Decl., ¶ 2. In particular, Plaintiffs' counsel have interviewed the named Plaintiffs, scores of other putative class members and other potential fact witnesses, consulted with experts, reviewed court records, reviewed tens of thousands of pages of lockdown reports, and engaged in extensive other factual and legal research. Evenson Decl., ¶ 2. With regard to the second and third factors, Plaintiffs' counsel have significant experience in handling class actions as well as other complex litigation, including civil rights actions on behalf of institutionalized persons; they are knowledgeable with regard to the applicable law. Evenson Decl., ¶ 3; Declaration of Donald Specter ("Specter Decl."), ¶ 6; Declaration of Geoffrey Holtz ("Holtz Decl."), ¶ 8. Finally, Plaintiffs' litigation team has dedicated, and will continue to commit, major staffing and material resources to the representation of this class, including by

18

retaining highly qualified experts.  Evenson Decl., ¶ 2; Specter Decl., ¶¶ 4-5; Holtz Decl., ¶ 4.  In sum, Plaintiffs' counsel fully satisfy the criteria for class counsel set forth in Rule 23(g) and Plaintiffs respectfully request that the Court appoint them in its class certification order.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court certify, pursuant to Rule 23(a) and (b)(2), a Class consisting of all prisoners who are now or will in the future be housed in a men's prison under the jurisdiction of CDCR and who are now or will in the future be subject to CDCR's lockdown policy.  Plaintiffs also request that the Court appoint the undersigned as class counsel pursuant to Rule 23(g).

DATED:  March 5, 2013                     Respectfully submitted,

BINGHAM MCCUTCHEN LLP


By:_____ /s/ *Geoffrey T. Holtz*_____
                        Geoffrey T. Holtz
                        Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION