1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT MITCHELL, et al.,                  No.  2:08-CV-01196

12              Plaintiff,

13        v.                                    **ORDER DENYING
                                                PLAINTIFFS' MOTION FOR
14   MATTHEW CATE, et al.,                      PRELIMINARY INJUNCTION**

15              Defendants.

16

17

18          This matter is before the Court pursuant to Plaintiffs Mitchell and Quezada's (collectively

referred to as "Plaintiffs") Motion for Preliminary Injunction.[1]  (ECF No. 156.)  Defendants Cate,
19
Kernan, McDonald, Giurbino, Tilton, Felker, Wright, Foulk, Vanderville, Owen and Hellwig,
20
(collectively hereinafter referred to as "Defendants") oppose Plaintiffs' motion.  (ECF No. 214.)
21
The Court has carefully considered the arguments raised by both parties.  For the reasons set forth
22
herein, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 156) is DENIED.
23
       **I.     FACTUAL AND PROCEDURAL BACKGROUND**
24
           Plaintiff Robert Mitchell ("Mitchell") initiated this case pro se on May 30, 2008, to
25
challenge, among other things, a series of allegedly race-based lockdowns to which he was
26

27   ─────────────────────
[1] This Court dismissed Plaintiffs Trujillo and Abdullah's claims for injunctive relief as moot.  (*See* Order, ECF No.
28   317.)  For this reason, the Court does not address the parties' arguments relating to Plaintiffs Trujillo and Abdullah's
     now-dismissed claims.

                                                    1

1   subjected to while imprisoned at High Desert State Prison ("HDSP") beginning on September 12,

2   2006.  (Compl., ECF No. 1 at 12−14.)[2]  In his original complaint, Mitchell alleged that he filed

3   administrative appeals concerning the lockdown policy as it was applied to him and, in response

4   to his appeals, the prison staff informed Mitchell that it was the policy of the California

5   Department of Corrections and Rehabilitation ("CDCR") that "when there is an incident

6   involving any race, all inmates of that race are locked up."  (ECF No. 1 at 15.)  Mitchell further

7   alleged that the CDCR policy utilized ethnic groups as a classification in segmenting the inmate

8   population during the process of establishing a regular program following an incident.  (ECF No.

9   1 at 15.)  Mitchell alleged that he was subjected to cruel and unusual punishment in violation of

10  his Eighth Amendment rights as a result of the lockdowns and that the lockdowns violated his

11  rights to equal protection and due process.  (ECF No. 1 at 17, 30−31, 38−44.)  Mitchell further

12  asserted that prison officials took adverse actions against him in response to his filing of

13  grievances and lawsuits.  He alleged that their conduct constituted unlawful retaliation,

14  obstruction of justice and denial of access to the courts, thereby violating his due process and

15  equal protection rights.  (ECF No. 1 at 17−27, 32−37, 45−48.)  Lastly, Mitchell asserted state law

16  claims of negligence and intentional infliction of emotional distress.  (ECF No. 1 at 48−51.)

17      The case was originally assigned to District Court Judge John A. Mendez, but was

18  reassigned to visiting Judge Richard A. Jones of the Western District of Washington in January

19  2009.  (ECF No. 7.)  During pretrial proceedings, the court appointed counsel for Mitchell for the

20  limited purpose of assisting him in settlement negotiations with Defendants.  (ECF No. 60.)

21  Counsel for Mitchell subsequently agreed to continue providing continuing representation to

22  Mitchell and sought to amend the complaint in order to transform the case into a class action

23  challenging the allegedly race-based lockdowns throughout California's men's' prisons.  (ECF

24  Nos. 70, 74.)  Judge Jones directed the transfer of the case back to a judge within the Eastern

25  District of California, concluding that it was "far from ideal for a judge sitting in the Western

26  District of Washington to consider presiding over an action challenging policies at all of

27  _____

28  [2] All page numbers cited herein refer to those assigned by the Court's electronic docketing system and not those assigned by the parties.

2

1    California's prisons."  (ECF No. 82 at 1.)  The case accordingly was reassigned to Judge John A.

2    Mendez and Magistrate Judge Edmund F. Brennan, who granted the motion to amend on

3    September 22, 2011.  (ECF No. 83.)  Mitchell filed the second amended complaint ("SAC") on

4    September 23, 2011.  (ECF No. 84.)

5            The SAC changed the case in the following ways:

6            (1) Adding three plaintiffs to the claims for injunctive and declaratory relief regarding

7    CDCR's lockdown policies who seek to act, along with Mitchell, as representatives of a class of

8    "all prisoners who are now or will in the future be housed in a men's prison under the jurisdiction

9    of CDCR and who are now or will in the future be subject to CDCR's policy and practice of

10   implementing race-based lockdowns" and a similar class of prisoners who are or will be "subject

11   to CDCR's policy and practice of implementing excessively lengthy lockdowns" (ECF No. 84 at

12   6);

13           (2) Adding Defendants CDCR Secretary Matthew Cate, CDCR Undersecretary of

14   Operations Scott Kernan, CDCR Chief Deputy Secretary for Adult Operations Terri McDonald,

15   and CDCR Director of the Division of Adult Institutions George Giurbino in their official

16   capacities to the injunctive and declaratory relief claims (ECF No. 84 at 4−5);

17           (3) Deleting the claims for retaliation, denial of access to courts, and obstruction of

18   justice;

19           (4) And deleting Defendants T. Barnard, R. Beamon, R. Blanthorn, C. Buckley, D. Cade,

20   T. Kimzey, D. Leiber, T. Lockwood, A. Masuret, J. Mayfield, J. McClure, and J. Walker (ECF

21   No. 84).

22           The case was further narrowed on Defendants' November 2, 2011, motion to dismiss.

23   (ECF No. 92.)  The court dismissed Mitchell's Eighth and Fourteenth Amendment claims based

24   on lockdowns that occurred before September 12, 2006 as unexhausted and limited his state law

25   damages claims to the period from February 28, 2007 through December 5, 2007.  (ECF Nos.

26   107, 114.)

27           On March 5, 2013, Plaintiffs filed a motion to certify class as well as a motion for

28   preliminary injunction.  (ECF Nos. 155, 156.)  On April 3, 2013, this case was assigned to the

1    undersigned.  (ECF No. 178.)  Subsequently, Plaintiffs filed a request for the district court to hear

2    its pending motions for class certification and injunctive relief pursuant to Eastern District of

3    California Local Rule 302(d).  (ECF No. 182.)  Before the Court had an opportunity to rule on

4    Plaintiffs' request, Defendants filed their motion for summary judgment.  (ECF No. 253.)  On

5    August 5, 2013, the Court granted Plaintiffs' request stating that "because Plaintiffs' class

6    certification and preliminary injunction motion, as well as Defendants' summary judgment

7    motion, are likely to require de novo review, this Court finds that judicial economy would be best

8    served by this Court retaining all future motions associated with this case."  (ECF No. 278.)

9    Thus, this Court retained all matters associated with this case going forward.

10       This Court ruled on Defendants' Motion for Summary Judgment on February 11, 2014.

11   (ECF No. 317.)  The Court dismissed Plaintiffs Trujillo and Abdullah's claims for declaratory

12   and injunctive relief as moot.  The Court also dismissed Plaintiffs' Eighth Amendment claims

13   against Defendants Felker, Vanderville, Owen, Hellwig, Tilton, Foulk and Wright.  (ECF No.

14   317.)  Plaintiffs' suriving claims include: Mitchell and Quezada's claims for injunctive relief

15   based on Fourteenth Amendment violations; Plaintiff Mitchell's Fourteenth Amendment claim;

16   and Mitchell's state law claims for intentional infliction of emotional distress, negligence, and

17   negligent infliction of emotional distress.  (ECF No. 317.)  The Court addresses Plaintiffs'

18   Motion for a Preliminary Injunction below.[3]

19       **II.    LEGAL STANDARD**

20       Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

21   showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.,* 555

22   U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)).  "The

23   purpose of a preliminary injunction is merely *to preserve the relative positions* of the parties until

24

25   ───────────────
     [3] Plaintiffs request that this Court take judicial notice of several decisions issued by the Superior Courts of California, Counties of Del Norte and Solano, as well as motions and declarations filed with those courts, and an opinion by the
26   California Court of Appeal, First Appellate District, Division One.  (ECF No. 157.)  This Court may consider proceedings in other courts if they have a direct relation to the matters at issue.  *See United States ex rel. Robinson*
27   *Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992).  Here, the proceedings before the California State Courts are "directly related" to these proceedings because the state court proceedings each relate to CDCR's race-based lockdown policy.  For this reason, the Court GRANTS Plaintiffs' request for judicial notice.

28

4

1   a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)

2   (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal.

3   App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final

4   determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt*

5   *Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to

6   any situation before the filing of a lawsuit, but instead to the last uncontested status which

7   preceded the pending controversy.") (internal quotation marks omitted).  In cases where the

8   movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of

9   scrutiny must apply.  *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005).

10  Preliminary injunction is not automatically denied simply because the movant seeks to alter the

11  status quo, but instead the movant must meet heightened scrutiny.  *Tom Doherty Associates, Inc.*

12  *v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

13          "An even more stringent standard is applied where mandatory, as opposed to prohibitory,

14  preliminary relief is sought."  *Rouser v. White*, 707 F. Supp. 2d 1055, 1061 (E.D. Cal. 2010).

15  Mandatory injunction is one that orders a responsible party to "take action."  *Meghrig v. KFC*

16  *Western, Inc.*, 516 U.S. 479, 484 (1996).  A prohibitory injunction is one that "restrains" a

17  responsible party from further action.  *Id.*  In cases where "a party seeks mandatory preliminary

18  relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely

19  cautious about issuing a preliminary injunction."  *Martin v. International Olympic Committee*,

20  740 F. 2d 670, 675 (9th Cir. 1984).  "[A]n award of mandatory preliminary relief is not to be

21  granted unless both the facts and the law clearly favor the moving party and extreme or very

22  serious damage will result."  *Rouser v. White*, 707 F. Supp. 2d 1055, 1061 (E.D. Cal. 2010)

23  (citing *Anderson v. United States,* 612 F. 2d 1112, 1115 (9th Cir. 1979)).  "'[I]n doubtful cases' a

24  mandatory injunction will not issue."  *Id.*

25          "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

26  on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

27  [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

28  *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test

1   to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135

2   (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may

3   weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.*  A

4   stronger showing on the balance of the hardships may support issuing a preliminary injunction

5   even where the plaintiff shows that there are "serious questions on the merits . . . so long as the

6   plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

7   public interest." *Id.*  Simply put, Plaintiff must demonstrate, "that [if] *serious* questions going to

8   the merits were raised [then] the balance of hardships [must] tip[] *sharply* in the plaintiff's favor,"

9   in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

10      **III.   ANALYSIS**

11          Plaintiffs seek an order compelling Defendants to cease implementing race-based

12   lockdowns at all California prisons.  (ECF No. 156.)  To obtain a preliminary injunction,

13   Plaintiffs must establish that they are likely to succeed in showing that Defendants have an

14   ongoing practice of imposing race-based lockdowns in violation of Plaintiffs' rights to equal

15   protection.  (ECF No. 156 at 7.)  Plaintiffs must also show that they are likely to suffer irreparable

16   harm if the Court does not grant a preliminary injunction, that the balance of the hardships weighs

17   in their favor, and that the public interest would be best served by enjoining Defendants from

18   imposing race-based lockdowns.  *See Winter*, 555 U.S. at 20.

19          As discussed below, the Court finds that Plaintiffs demonstrate a likelihood of success on

20   the merits of their claims.  However, the Court finds that the other three factors weigh in favor of

21   denying Plaintiffs' motion because: (1) Plaintiffs cannot meet the high burden to demonstrate

22   they will suffer irreparable harm; (2) the balance of hardships would be suffered by Defendants;

23   and (3) a strong public interest weighs in favor of denying Plaintiffs' motion for injunctive relief.

24   Thus, Plaintiffs have not met the heightened level of scrutiny necessary for this Court to grant

25   them relief and alter the status quo.  The Court addresses each of these factors in turn.

26      A.  <u>Likelihood of Success on the Merits</u>

27          Plaintiffs must demonstrate that they are likely to prevail on their claims that Defendants'

28   race-based lockdown policy violates Plaintiffs' rights to equal protection.  Because Defendants'

1    policy is race-based, the burden is shifted to Defendants to show that the lockdown policy

2    survives a strict scrutiny review.  *See Johnson v. California*, 543 U.S. 499, 515 (2005) ("Prisons

3    are dangerous places, and the special circumstances they present may justify racial classifications

4    in some contexts.  Such circumstances can be considered in applying strict scrutiny, which is

5    designed to take relevant differences into account.").

6          Under strict scrutiny review, the government must show that the policy is "narrowly

7    tailored to further a compelling governmental interest."  *Richardson v. Runnels,* 594 F.3d 666,

8    671 (9th Cir. 2010) (quoting *Johnson,* 543 U.S. at 505–07).  "Strict scrutiny does not preclude the

9    ability of prison officials to address the compelling interest in prison safety.  Prison

10   administrators, however, will have to demonstrate that any race-based policies are narrowly

11   tailored to that end."  *Johnson,* 543 U.S. at 514.

12         To demonstrate that their race-based lockdown policy and practice are narrowly tailored,

13   Defendants must show that their use of racial distinctions is "the least restrictive alternative" to

14   achieve prison safety, *Richardson*, 594 F.3d at 671, and that they have "actually considered and

15   rejected the efficacy of less restrictive measures before adopting the challenged practice."

16   *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) (internal citations omitted).  Thus,

17   likelihood of success on the merits turns on whether Defendants can show that their use of racial

18   classifications in implementing prison lockdowns is the least restrictive alternative to achieve

19   prison safety.

20         **1.  *Defendants' Lockdown Policy Is Not Narrowly Tailored Because Race-Neutral***

21             ***Alternatives Are Available.***

22         Plaintiffs contend that Defendants' policy is overbroad because it unnecessarily locks

23   down inmates who were not involved in the precipitating security disturbance and are not

24   affiliated with a security threat group ("STG").  (ECF No. 156 at 20–22.)  Additionally, Plaintiffs

25   assert inmates are locked down merely because they share the same race as the prisoners involved

26   in the original security disturbance.  (ECF No. 156 at 20–22.)  Defendants counter that their race-

27   based lockdown policy is narrowly tailored to restrict only those inmates who must be locked

28   down to maintain prison safety.  (ECF No. 214 at 26.)  Defendants insist that such procedures are

1  only implemented when necessary to ensure security and when the only other option would be to

2  lockdown all inmates in a prison facility.  (ECF No. 214 at 49.)

3       In support, Defendants assert that in the California Correctional System, inmates form

4  STGs based on racial affiliations.  (ECF No. 214 at 10.)  Defendants acknowledge that there are

5  prisoners who are not affiliated with any race-based gang and who do not participate in gang

6  activities.  (ECF No. 214 at 14.)   However, Defendants aver that even unaffiliated inmates pose a

7  security threat because the gangs target inmates of the same race and threaten them with violence

8  to compel them to attack other inmates.  (ECF. No. 214 at 14.)  For these reasons, Defendants

9  argue that in some instances they cannot narrow the scope of lockdowns by restricting them to

10  only those prisoners directly involved in a security incident.  Defendants assert that to do so

11  would permit unaffiliated prisoners under gang control to continue committing acts of inter-racial

12  violence.  (ECF No. 214 at 20–22.)  Thus, Defendants argue that these race-based lockdowns are

13  the least restrictive way of ensuring inmate and CDCR employee safety.

14       Plaintiffs claim there are less restrictive race-neutral means of achieving prison security

15  because other states and the federal prison system do not impose race-based lockdowns.

16  Specifically, Plaintiffs' strongest argument is that Defendants have already imposed race-neutral

17  lockdowns at Pelican Bay State Prison, pursuant to court order, without a negative impact on that

18  facility's security.  (ECF No. 156 at 20–21.)  Plaintiffs propose that going forward, Defendants

19  could follow the policy implemented at Pelican Bay and lockdown the area where the disturbance

20  occurred, and then subsequently release inmates from lockdown based on a review of their

21  individual likelihood of causing or contributing to violence.  (ECF No. 156 at 22.)  Plaintiffs also

22  advocate that Defendants should follow the California laws governing the identification of

23  members of STGs and direct measures to control racial violence at the actual members of the

24  STGs, rather than continuing to use race as a proxy for identifying which prisoners belong to the

25  group.  (ECF No. 156 at 22.)  Defendants counter that they already work to identify gang

26  members and that their lockdown policy as applied meets Plaintiffs' criteria.  (ECF No. 156 at

27  11.)

28

1   If Plaintiffs' assertions are true, Plaintiffs' evidence strongly suggests that there are

2   workable race-neutral alternatives.  Defendants have not denied that they drafted and

3   implemented race-neutral lockdown policies for Pelican Bay State Prison and California State

4   Prison ("CSP") Solano.  Furthermore, Defendants do not claim that Pelican Bay or CSP Solano

5   became unsafe as a result of the race-neutral policies.

6   The Ninth Circuit has held that "comparisons between institutions [are] analytically useful

7   when considering whether the government is employing the least restrictive means." *Warsoldier*,

8   418 F.3d at 1000.  In *Warsoldier*, a Native American inmate sought a preliminary injunction to

9   prevent enforcement of CDCR's grooming policy that requires inmates to keep hair three inches

10   or shorter on grounds of religious and cultural beliefs.  *Id.* at 991–93.  The plaintiff in *Warsoldier*

11   presented evidence of cases where other prisons allowed prisoners the freedom to have their hair

12   however they like for religious reasons.  The *Warsoldier* Court stated that "the failure of a

13   defendant to explain why another institution with the same compelling interests was able to

14   accommodate the same religious practices may constitute a failure to establish that the defendant

15   was using the least restrictive means." *Id.* at 1000.

16   Here, Defendants have not effectively addressed why the race-neutral policies in place at

17   Pelican Bay and CSP Solano could not be safely implemented system-wide.  Instead Defendants

18   rely on conclusory statements that their policy meets strict scrutiny to illustrate that the statewide

19   policy is in fact the least restrictive means without providing factual support.  Thus, as in

20   *Warsoldier*, the failure to explain why other institutions that share a compelling interest can

21   accommodate their inmates is a fatal flaw in Defendants' argument that they already employ the

22   least restrictive means.  Accordingly, the Court finds Plaintiffs are likely to succeed on the merits

23   of their claim.  However, Plaintiffs' showings on the three remaining factors do not weigh in

24   favor of granting Plaintiffs' request for injunctive relief.

25   B.  Irreparable Injury

26   Defendants assert that Plaintiffs will not suffer irreparable harm absent an injunction

27   because Defendants have implemented a new lockdown policy that is not race-based and only

28   employs race as a factor as a last resort.  (ECF No. 214 at 26; Decl. Harrington ¶ 42, Ex. A, ECF

9

1    No. 238.)  Thus, Defendants contend that the new policy passes strict scrutiny.  The new

2    lockdown policy, implemented in late 2012, calls into question Plaintiffs' likelihood of suffering

3    unconstitutional lockdowns absent an injunction.  "Preliminary injunctive relief is available only

4    if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'"

5    *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22).  The

6    burden is on Plaintiffs to show that the injury is likely, not merely possible.  *See Winter* at 22,

7    (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972, (1997) (*per curiam*)).  "Issuing a preliminary

8    injunction based only on a possibility of irreparable harm is inconsistent with our characterization

9    of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing

10   that the plaintiff is entitled to such relief."  *Id.*

11          In deciding whether Plaintiffs are likely to suffer irreparable injury absent an injunction,

12   the Court must address whether they are likely to suffer from constitutional violations under the

13   new lockdown policy.

14          ***1.   Plaintiffs Have Not Shown that the Revised Lockdown Creates a Risk of Harm to***

15             ***Plaintiffs.***

16          Plaintiffs argue that they are likely to suffer irreparable harm without an injunction despite

17   Defendants' new lockdown policy, because the revised policy permits Defendants to impose the

18   same alleged unconstitutional race-based lockdowns.  (ECF No. 156 at 27 (citing Evenson Decl.,

19   at ¶ 6 & Ex. C at 184:1–6, 201:11–22 (admitting that past race-based lockdowns would all be

20   permitted under the new policy)).)  Plaintiffs contend that Defendants will continue to implement

21   non-narrowly tailored race-based lockdowns in violation of their equal protection rights under the

22   new policy.  (ECF No. 156 at 27.)  Plaintiffs cite *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

23   Cir. 2012), in support of their contention that they are entitled to a presumption that they are

24   likely to face irreparable injury because they have alleged that Defendants will violate their equal

25   protection rights absent an injunction.  (ECF No. 156 at 25.)

26          The Court finds that Plaintiffs' reliance on *Melendres* is misplaced.  In *Melendres*, the

27   plaintiffs alleged that defendants, Maricopa Deputies, stopped, detained, and targeted plaintiffs

28   because of their race in violation of the Fourth and Fourteenth Amendments and sought a

1   preliminary injunction.  *Melendres*, 695 F.3d at 994–96.  The court relied on the defendants' own

2   representations that they would continue to commit acts, of which the plaintiffs complained, in

3   finding that the plaintiffs faced irreparable harm.  *Id.* at 1002.  "The Defendants' representations

4   during the summary judgment hearing, reasonably interpreted, demonstrate . . . Plaintiffs faced a

5   real possibility that they would again be stopped or detained and subjected to unlawful detention

6   on the basis of their unlawful presence alone."  *Id.*  Here, Defendants have not represented that

7   they intend to use race in a non-narrowly tailored manner.  Thus, Plaintiffs are not entitled to the

8   conclusion that they face irreparable harm absent an injunction.

9   ### 2.  *Plaintiffs Have Not Met Their Burden in Showing Likelihood of Harm.*

10  Defendants argue that Plaintiffs Mitchell and Quezada cannot show that it is likely they

11  will personally suffer irreparable injury absent an injunction because Plaintiffs' allegations about

12  past lockdowns occurring under the old policy do not establish their current likelihood of

13  irreparable injury.  (ECF No. 214 at 36–37.)

14  To succeed, Plaintiffs must actually show they are likely to suffer irreparable harm absent

15  an injunction.  *Winter*, 555 U.S. at 22.  In *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983),

16  the Supreme Court held that "past wrongs do not in themselves amount to that real and immediate

17  threat of injury necessary to make out a case or controversy."  The Court stated that "Lyons'

18  assertion that he may again be subject to an illegal chokehold does not create the actual

19  controversy that must exist for a declaratory judgment to be entered."  *Id.* at 104.

20  Mitchell currently resides at Folsom State Prison.  Warden Hill, who oversees Folsom

21  State Prison, has stated that his policy is to follow the new lockdown policy and only impose

22  race-based lockdowns as a last resort.  (ECF No. 214 at 40.)  Plaintiffs counter that Plaintiff

23  Mitchell has shown he is likely to suffer irreparable injury in the absence of an injunction because

24  Warden Hill has authorized numerous race-based lockdowns at Folsom State Prison.  However,

25  the Court notes that Mitchell's declaration only mentions lockdowns that were instituted before

26  the change in policy.[4]  Moreover, the lockdown cited by Mitchell was based on gang and STG

27

28

---

[4] Folsom State prison adopted the modified CDCR policy in October of 2012.  (ECF No. 214 at 39.)  On October 10, 2012, just prior to the policy adoption, Warden Hill implemented a lockdown on members of the Blood STG and their cellmates following an attack by nine African-American inmates.  (ECF No. 214 at 40–41.)  The lockdown

1    affiliation, not race.  Accordingly, Mitchell has not shown that he is likely to suffer irreparable

2    harm absent injunctive relief.

3         The issue as to whether Plaintiff Quezada has shown a likelihood of irreparable harm is a

4    closer issue.  Quezada alleges that Warden Diaz, of California Substance Abuse Treatment

5    Facility and State Prison at Corcoran ("SATF"), has implemented race-based lockdowns without

6    a compelling reason to do so and despite available less restrictive alternatives.  (ECF No. 270 at

7    34–35.)  Plaintiffs further state that these lockdowns that occurred after the implementation of

8    CDCR's modified policy are unconstitutional.  (ECF No. 270 at 20–23.)

9         In support of Plaintiffs' contention, they cite numerous incidents that precipitated

10   lockdowns and allege that racial classifications were used.  In reply, Defendants assert that some

11   of the incidents cited by Plaintiffs actually resulted in *all* inmates being locked down.[5]

12   Defendants also assert that the situations which resulted in one race being locked down involved

13   circumstances with STGs.  Thus Defendants opine that the actions taken were the least restrictive

14   means and were necessary in ensuring both prisoners' and prison employees' safety.  (ECF Nos.

15   214 at 14; 270 at 34.)

16        In reviewing the parties' briefing as to the likelihood of irreparable harm, the Court notes

17   that it is difficult to ascertain whether in fact the practices employed at SATF were narrowly

18   tailored.  At this time, the Court cannot determine whether Defendants' procedures under the new

19   policy are violative of Plaintiffs' constitutional rights.  Here, the relief sought by Plaintiffs would

20   require Defendants to employ a new policy and thus goes well beyond simply maintaining the

21   status quo.  Although the Court finds that Plaintiffs' briefing is slightly more persuasive than that

22   offered by Defendants, Plaintiffs have not presented the type of overwhelming evidence under

23   this prong that is required to warrant granting the extraordinary relief sought.  *See Anderson*, 612

24   F. 2d at 1114 ("Mandatory preliminary relief, which goes well beyond simply maintaining the

25   status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and

26

27   lasted six days and only Bloods and their cellmates were locked down for fear that the Bloods might force their
     cellmates to act.  (ECF No. 214 at 40–41.)
     [5] On January 26, 2013, in response to a violent altercation between one black male and two Hispanic males, all
28   inmates housed in Facility G were locked down for a period of two days.  (*See* ECF No. 214 at 44.)

1    law clearly favor the moving party."). Accordingly, Plaintiffs have not met their burden. At best

2    this factor benefits neither party, and is thus neutral.

3            C.   Balance of the Hardships

4            "The balance between the harm to the plaintiff if injunctive relief is denied and the harm

5    to the defendant if it is granted is a critical consideration in deciding whether to grant a

6    preliminary injunction." *Ayres v. City of Chicago*, 125 F.3d 1010, 1012 (7th Cir. 1997).

7    However, "the real issue in this regard is the degree of harm that will be suffered by the plaintiff

8    or the defendant if the injunction is *improperly* granted or denied." *Scotts Co. v. United*

9    *Industries Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (emphasis in original). "In evaluating the

10   balance of hardships a court must consider the impact granting or denying a motion for a

11   preliminary injunction will have on the respective enterprises. Thus the relative size and strength

12   of each enterprise may be pertinent to this inquiry." *International Jensen, Inc. v. Metrosound*

13   *U.S.A, Inc.*, 4 F.3d 819, 827 (9th Cir. 1993). If the balance of hardships tips strongly in

14   defendant's favor, plaintiff is required to demonstrate a stronger likeliness of success on the

15   merits. *MacDonald v. Chicago Park District*, 132 F.3d 355, 357 (7th Cir. 1997).

16           Plaintiffs allege that Defendants would not suffer any hardship because the injunction

17   would not be unduly intrusive since the Defendants proposed a similar approach in a previous

18   state superior court case involving the CDCR. (ECF. No. 270 at 35.) Defendants contend that the

19   balance of the hardships weighs in Defendants' favor and assert that "[e]njoining CDCR from

20   ever using race in modified-program decisions, even in emergency situations following race-

21   based disturbances, will result in greater harm and possibly death to inmates, staff, and even to

22   Plaintiffs." (ECF No. 214 at 49.) The Court agrees with Defendants. Defendants bear the heavy

23   responsibility of keeping inmates, prison staff and the public safe. An order that enjoins

24   Defendants from using a policy that the Court has not yet determined to be unconstitutional is an

25   extreme remedy that could endanger those whom the CDCR has been entrusted to protect.

26   *Ciempa v. Jones*, 477 Fed. Appx. 508, 510 (10th Cir. 2012). As a result, the Court finds that this

27   factor weighs in favor of the Defendants.

28

1

2          D.   The Public Interest

3               "In exercising their sound discretion, courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at

4    376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest

5    analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there

6    exists some critical public interest that would be injured by the grant of preliminary relief."

7    *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks

8    and citations omitted), *vacated and remanded on other grounds*, 132 S. Ct. 1204 (2012).  The

9    Prison Litigation Reform Act requires the Court to "give substantial weight to any adverse impact

10   on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. §

11   3626(a)(1).

12              Plaintiffs argue that an injunction is in the public interest because "it is always in the

13   public interest to prevent the violation of a party's constitutional rights."  (ECF 156 at 27 (quoting

14   *Melendres*, 695 F.3d at 1002 (internal citations omitted)).)  Here, Plaintiffs stand on the above

15   broad proclamation and fail to address the public's interest in maintaining public safety and safe

16   prisons.  Defendants argue that the lives of prison staff and prisoners, including Plaintiffs, depend

17   on Defendants' ability to engage in safe and effective prison administration.  (ECF No. 214 at

18   49.)   Defendants maintain that if the Court issues Plaintiffs' requested injunction, CDCR will be

19   forced to either lockdown all inmates or only those who were directly involved in a security

20   disturbance, which will cause "[i]nmates under CDCR's jurisdiction [to] be subjected to more

21   modified programs or more race-based violence."  (ECF No. 214 at 50.)   For this reason,

22   Defendants argue that "[an injunction] is not in the public interest, nor is it in Plaintiffs' or any

23   other inmate's interest."  (ECF No. 214 at 53.)  Plaintiffs assert that this Court may grant an

24   injunction even if Plaintiffs make the minimum showing on this prong; they assert that the

25   sliding-scale analysis permits this Court to balance less robust evidence on one prong against

26   stronger showings on other prongs.  (*See* ECF No. 156 at 23 (citing *Alliance for the Wild Rockies

27   v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011))).

28              The Court declines Plaintiffs' invitation.  Plaintiffs have not met the heightened standard

14

required of requests for preliminary injunctions that alter the status quo.  At this time, the Court defers to Defendants' experience and judgment regarding prison administration.

## IV.     CONCLUSION

For the reasons stated above, the Court hereby DENIES Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 156.)  Although Plaintiffs have identified serious questions on the merits as to Defendants' use of race in lockdowns, they have not met their burden as to the other factors.

Dated: June 24, 2014

Troy L. Nunley
United States District Judge

15