1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT MITCHELL, et al.,                    No.  2:08-CV-01196

12                  Plaintiff,

13        v.                                      **ORDER GRANTING
                                                  PLAINTIFFS' MOTION FOR
14   MATTHEW CATE, et al.,                        CLASS CERTIFICATION**

15                  Defendants.

16

17

18        This matter is before the Court pursuant to Plaintiffs Mitchell and Quezada's (collectively

19   referred to as "Plaintiffs") Motion and Memorandum of Points and Authorities in Support of

20   Class Certification.[1]  (ECF No. 155.)  Defendants Cate, Kernan, McDonald, Giurbino, Tilton,

21   Felker, Wright, Foulk, Vanderville, Owen and Hellwig, (collectively hereinafter referred to as

22   "Defendants") oppose Plaintiffs' motion.  (ECF No. 213.)  The Court has carefully considered the

23   arguments raised by both parties.  For the reasons set forth herein, Plaintiffs' Motion for Class

24   Certification (ECF No. 155) is GRANTED.

25        **I.        FACTUAL AND PROCEDURAL BACKGROUND**

26        Plaintiff Robert Mitchell ("Mitchell") initiated this case pro se on May 30, 2008, to

27   _____

     [1]     This Court dismissed Plaintiffs Trujillo and Abdullah's claims for injunctive relief as moot.  (*See* Order,
     ECF No. 317.)  For this reason, the Court does not address the parties' arguments relating to Plaintiffs Trujillo and
28   Abdullah's now-dismissed claims.

                                                    1

1   challenge, among other things, a series of allegedly race-based lockdowns to which he was

2   subjected to while imprisoned at High Desert State Prison ("HDSP") beginning on September 12,

3   2006.  (Compl., ECF No. 1 at 12−14.)[2]  In his original complaint, Mitchell alleged that he filed

4   administrative appeals concerning the lockdown policy as it was applied to him and, in response

5   to his appeals, the prison staff informed Mitchell that it was the policy of the California

6   Department of Corrections and Rehabilitation ("CDCR") that "when there is an incident

7   involving any race, all inmates of that race are locked up."  (ECF No. 1 at 15.)  Accordingly,

8   Mitchell alleged that the CDCR policy improperly utilized ethnic groups as a classification in

9   segregating the inmate population during the process of establishing a regular program following

10  an incident in violation of the Fourteenth Amendment.  (ECF No. 1 at 15.)  Mitchell also alleged

11  that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment

12  rights as a result of the lockdowns and that the lockdowns violated his rights to equal protection

13  and due process.  (ECF No. 1 at 17, 30−31, 38−44.)  Mitchell further asserted that prison officials

14  took adverse actions against him in response to his filing of grievances and lawsuits.  He alleged

15  that their conduct constituted unlawful retaliation, obstruction of justice, and denial of access to

16  the courts, thereby violating his due process and equal protection rights.  (ECF No. 1 at 17−27,

17  32−37, 45−48.)  Lastly, Mitchell asserted state law claims of negligence and intentional infliction

18  of emotional distress.  (ECF No. 1 at 48−51.)

19       The case was originally assigned to District Court Judge John A. Mendez, but was

20  reassigned to visiting Judge Richard A. Jones of the Western District of Washington in January

21  2009.  (ECF No. 7.)  During pretrial proceedings, the court appointed counsel for Mitchell for the

22  limited purpose of assisting him in settlement negotiations with Defendants.  (ECF No. 60.)

23  Counsel for Mitchell subsequently agreed to continue providing representation to Mitchell and

24  sought to amend the complaint in order to transform the case into a class action challenging the

25  allegedly race-based lockdowns throughout California's men's prisons.  (ECF Nos. 70, 74.)

26  Judge Jones directed the transfer of the case back to a judge within the Eastern District of

27

28  [2]      All page numbers cited herein refer to those assigned by the Court's electronic docketing system and not those assigned by the parties.

2

1    California, concluding that it was "far from ideal for a judge sitting in the Western District of

2    Washington to consider presiding over an action challenging policies at all of California's

3    prisons."  (ECF No. 82 at 1.)  The case accordingly was reassigned to Judge John A. Mendez and

4    Magistrate Judge Edmund F. Brennan, who granted the motion to amend on September 22, 2011.

5    (ECF No. 83.)  Mitchell filed the second amended complaint ("SAC") on September 23, 2011.

6    (ECF No. 84.)

7           The SAC amended the allegations in the following ways:

8           (1) Adding three plaintiffs to the claims for injunctive and declaratory relief regarding

9    CDCR's lockdown policies who seek to act, along with Mitchell, as representatives of a class of

10   "all prisoners who are now or will in the future be housed in a men's prison under the jurisdiction

11   of CDCR and who are now or will in the future be subject to CDCR's policy and practice of

12   implementing race-based lockdowns" and a similar class of prisoners who are or will be "subject

13   to CDCR's policy and practice of implementing excessively lengthy lockdowns" (ECF No. 84 at

14   6);

15          (2) Adding Defendants CDCR Secretary Matthew Cate, CDCR Undersecretary of

16   Operations Scott Kernan, CDCR Chief Deputy Secretary for Adult Operations Terri McDonald,

17   and CDCR Director of the Division of Adult Institutions George Giurbino in their official

18   capacities to the injunctive and declaratory relief claims (ECF No. 84 at 4−5);

19          (3) Deleting the claims for retaliation, denial of access to courts, and obstruction of

20   justice; and

21          (4) Deleting Defendants T. Barnard, R. Beamon, R. Blanthorn, C. Buckley, D. Cade, T.

22   Kimzey, D. Leiber, T. Lockwood, A. Masuret, J. Mayfield, J. McClure, and J. Walker (ECF No.

23   84).

24          The case was further narrowed on Defendants' November 2, 2011, motion to dismiss

25   (ECF No. 92) in which the Court dismissed Mitchell's Eighth and Fourteenth Amendment claims

26   based on lockdowns that occurred before September 12, 2006,.  The Court dismissed said claims

27   as unexhausted and limited the state law damages claims to the period from February 28, 2007,

28   through December 5, 2007.  (ECF Nos. 107, 114.)

1    On March 5, 2013, Plaintiffs filed a motion for class certification as well as a motion for

2    preliminary injunction.  (ECF Nos. 155, 156.)  On April 3, 2013, this case was assigned to the

3    undersigned.  (ECF No. 178.)  Subsequently, Plaintiffs filed a request for the district court to hear

4    its pending motions for class certification and injunctive relief pursuant to Eastern District of

5    California Local Rule 302(d).  (ECF No. 182.)  Before the Court had an opportunity to rule on

6    Plaintiffs' request, Defendants filed their motion for summary judgment.  (ECF No. 253.)  On

7    August 5, 2013, the Court granted Plaintiffs' request stating that "because Plaintiffs' class

8    certification and preliminary injunction motion, as well as Defendants' summary judgment

9    motion, are likely to require de novo review, this Court finds that judicial economy would be best

10   served by this Court retaining all future motions associated with this case."  (ECF No. 278.)

11   Thus, this Court retained all matters associated with this case going forward.

12       This Court ruled on Defendants' Motion for Summary Judgment on February 11, 2014.

13   (ECF No. 317.)  The Court dismissed Plaintiffs Trujillo and Abdullah's claims for declaratory

14   and injunctive relief as moot.  The Court also found that Defendants Felker, Vanderville, Owen,

15   Hellwig, Tilton, Foulk and Wright were entitled to qualified immunity as to Plaintiffs' Eighth

16   Amendment claims.  (ECF No. 317.)  Thus, Plaintiffs' surviving claims include: Mitchell and

17   Quezada's claims for injunctive relief based on Fourteenth Amendment violations; Plaintiff

18   Mitchell's claim for compensatory damages for violations of his Fourteenth Amendment rights;

19   and Mitchell's state law claims for intentional infliction of emotional distress, negligence, and

20   negligent infliction of emotional distress.  (ECF No. 317.)

21       On June 24, 2014, the Court denied Plaintiffs' Motion for a Preliminary Injunction (ECF

22   No. 328) finding that Plaintiffs had not met the high burden required to obtain the extraordinary

23   relief sought.  Accordingly, the Court now turns to Plaintiffs' outstanding motion for class

24   certification.  (*See* ECF No. 155.)

25       **II.      LEGAL STANDARD**

26       **A.      Equal Protection**

27       A party alleging a section 1983 violation bears the burden of pleading and proving two

28   essential elements: (1) conduct that deprived the plaintiff of a right, privilege, or immunity

4

1    protected by the Constitution or laws of the United States; and (2) the alleged deprivation was

2    committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

3    (1988); *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir.), cert. denied, 522 U.S. 996 (1997);

4    *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).  To state an equal protection claim, a

5    plaintiff first must show that he "has been intentionally treated differently from others similarly

6    situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Like race, ethnicity and

7    national origin are suspect classifications. *See Johnson v. California*, 543 U.S. at 503, 508 (2005)

8    (holding that California's policy of temporarily segregating new inmates or transferees by race,

9    ethnicity, and national origin for up to 60 days was an "express racial classification" triggering

10   strict scrutiny).  To allege an equal protection violation based on race or other protected status,

11   the plaintiff "must show that the defendant acted with an intent or purpose to discriminate against

12   him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082

13   (9th Cir. 2003) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "'Intentional

14   discrimination means that a defendant acted at least in part because of a plaintiff's protected

15   status.'"  *Id.* (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)).  Under a

16   strict scrutiny analysis the government must show that "reasonable men and women could not

17   differ regarding the necessity of a racial classification in response to prison disturbances and that

18   the racial classification was the least restrictive alternative (i.e., that any race-based policies are

19   narrowly tailored to legitimate prison goals)." *Richardson v. Runnels*, 594 F.3d 666, 671 (9th Cir.

20   2010).

21       **B.    Rule 23**

22       Before certifying a class, the trial court must conduct a "rigorous analysis" to determine

23   whether the party seeking certification has met the prerequisites of Rule 23.  *Wal–Mart Stores,*

24   *Inc. v. Dukes*, __U.S.__, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Telephone Co. of Sw. v.*

25   *Falcon*, 457 U.S. 147, 161 (1982)).  "While the trial court has broad discretion to certify a class,

26   its discretion must be exercised within the framework of Rule 23." *Zinser v. Accufix Research*

27   *Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001) (citing *Doninger v.*

28   *Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977)); *see also Wang v. Chinese Daily News,*

1    *Inc.*, 737 F.3d 538, 542–43 (9th Cir. 2013).  A court may certify a class if a plaintiff demonstrates

2    that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met and that at

3    least one of the requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; *see also Wal–Mart*

4    *Stores, Inc. v. Dukes*, 131 S.Ct. at 2548–49.

5            Rule 23(a) states that one or more members of a class may sue or be sued as representative

6    parties on behalf of all only if:

7                      (1) the class is so numerous that joinder of all members is
                     impracticable [the "numerosity" requirement]; (2) there are
8                      questions of law or fact common to the class [the "commonality"
                     requirement]; (3) the claims or defenses of representative parties are
9                      typical of the claims or defenses of the class [the "typicality"
                     requirement]; and (4) the representative parties will fairly and
10                     adequately protect the interests of the class [the "adequacy of
                     representation" requirement].
11

12   In addition, Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk

13   of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting

14   the class as a whole would be appropriate; or (3) that common questions of law or fact

15   predominate and the class action is superior to other available methods of adjudication.  Fed. R.

16   Civ. P. 23(b).

17           **III.    ANALYSIS**

18           Plaintiffs Mitchell and Quezada have moved the Court to certify this proceeding as a class

19   action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  Accordingly,

20   the Court addresses each factor below.

21           **A.    Numerosity**

22           To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that

23   joinder of all members is impracticable."  Rule 23(a)(1); *see also Consolidated Rail Corp. v.*

24   *Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40

25   members"); *Andrews Farms v. Calcot*, Ltd., CV-F-07-0464 LJO DLB, 2009 WL 1211374, at *3

26   (E.D. Cal. May 1, 2009); *see also* William B. Rubenstein, et al., Newberg on Class Actions, §

27   3.12 at 198 (5th ed. 2011).  Plaintiffs' proposed class is comprised of all male prisoners who are

28   now, or will in the future be, subjected to the CDCR's lockdown policy.  (*See* ECF No. 155 at

                                                6

13.)  Thus, the class would be in the ballpark of 125,000 male prisoners.  *See* http://www.cdcr.ca.
gov/Reports_Research/Offender_Information_Services_Branch/Population_Reports.html
(providing current CDCR population information).[3]  The number of plaintiffs vastly exceeds the
threshold contemplated by courts and would make joinder of all members impossible.  Therefore,
numerosity is satisfied.

### B.      Commonality

To meet the commonality requirement, there must be "questions of law or fact common
to the class."  Fed. R. Civ. P. 23(a).  In *Wal–Mart v. Dukes*, the Supreme Court announced that
this provision requires plaintiffs to "demonstrate that the class members 'have suffered the same
injury,' not merely violations of the same provision of law." 131 S.Ct. at 2551 (quoting *Gen.Tel.
Co. of Sw. v. Falcon*, 457 U.S. 147,157 (1982)).  Thus, "plaintiffs' claims 'must depend upon a
common contention' such that 'determination of [their] truth or falsity will resolve an issue that is
central to the validity of each one of the claims in one stroke.'"  *Parsons v. Ryan*, No. 13-16396,
2014 WL 2523682, at *10 (9th Cir. June 5, 2014) (quoting *Wal-Mart*, 131 S.Ct. at 2551).
Plaintiffs need not show that "every question in the case, or even a preponderance of questions, is
capable of class wide resolution.  So long as there is even a single common question, a would-be
class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* at *11 (internal quotations
omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012)
(noting that "commonality only requires a single significant question of law or fact").  "Thus,
'[w]here the circumstances of each particular class member vary but retain a common core of
factual or legal issues with the rest of the class, commonality exists.'"  *Id.* (quoting *Evon v. Law
Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Here, Plaintiffs allege that commonality is met because "all California prisoners are
assigned to one of four racial groups, and all are subject to Defendants' statewide lockdown[4]

---

[3]      Pursuant to Federal Rule of Evidence 201, this Court takes judicial notice of the approximate CDCR inmate population which is available on the CDCR's referenced website.
[4]      Defendants define lockdown as "a means the restriction of all inmates to their cells/dormitory beds encompassing no less than a Facility. . . The movement of any inmate to an assignment or resumption of any program would change the lockdown status of the program, returning the institution/facility to a diminished level of modified program or to normal program."  (ECF NO. 238 at 3 (citing Cal. Code Regs. tit. 15, § 3000).)

1   policy under which Defendants impose lockdowns on all members of the targeted identified racial

2   group." (ECF No. 155 at 15.)  Plaintiffs assert that the overarching question that predominates

3   this litigation and is common to all proposed class members is whether Defendants' uniform

4   lockdown policy violates Plaintiffs' right to equal protection under the law, pursuant to the

5   Fourteenth Amendment.  (ECF No. 155 at 15.)  Therefore, the central issue of fact as to all

6   proposed class members is whether Defendants can demonstrate that its policy is narrowly

7   tailored.[5]  *See Johnson v. California*, 543 U.S. 499, 505 (2005) ("We have insisted on strict

8   scrutiny in every context, even for so-called benign racial classifications, such as race-conscious

9   university admissions policies, race-based preferences in government contracts, and race-based

10  districting intended to improve minority representation.") (internal citations omitted).  Plaintiffs

11  also assert that the evidence presented will be common to all class members, i.e. evidence

12  regarding the following: the prevalence of the lockdowns; Defendants' role in implementing and

13  maintaining the challenged lockdowns; and readily available race-neutral policies.

14      In opposing Plaintiffs' motion, Defendants make numerous assertions.  First, Defendants

15  try to deny the existence of a CDCR policy.  Defendants then describe Plaintiffs' claims as being

16  an aggregation of claims that involve different factual circumstances, including different

17  prisoners, security levels and facilities.  Thus, Defendants opine that the proposed class lacks

18  commonality.  (ECF No. 213 at 59–62.)  Defendants cite the Supreme Court's decision in *Wal-*

19  *Mart* as support for their contention that Plaintiffs cannot meet the commonality requirement.

20  (ECF No. 213 at 61–67.)

21      First, it is undisputed that the CDCR has a single statewide policy that governs lockdowns

22  implemented at CDCR prisons.  Defendants have admitted the existence of both of the lockdown

23  policies at issue: the 2007 policy and the 2012 policy which is currently in effect and replaced the

24  2007 policy.[6]  Both of these policies utilize race in lockdown situations.  In fact, Defendants'

25  _____

    [5]     The Court notes that Defendants have conceded throughout their briefing that strict scrutiny applies to the
26  policy at issue because the CDCR's policy expressly allows race as a classification.
    [6]     Both parties have submitted a voluminous amount of depositions, declarations and other evidence in support
27  of their respective positions.  A large amount of the evidence submitted has been filed under seal pursuant to a
    stipulated protected order.  (ECF No. 123.)  The order allows the parties to file documents under seal as
    "confidential" if they have a good faith belief that the information is entitled to protection from disclosure under
28  California state law, including but not limited to the names and numbers of prisoners, confidential employment

1    previous briefing as well as proffered evidence including sworn declarations and deposition

2    testimony has consistently referenced the existence of the aforementioned polices.  As such, the

3    Court finds any assertion denying the existence of the CDCR's policy to be insincere at the very

4    least, especially in light of the fact that this litigation concerns those very same policies. (*See*

5    Lewis Depo., ECF No. 158-2 at 19:05–19:11 (testifying "if that particular incident occurs, and

6    it's an immediate emergency threat to the security of the institution, and it involves large numbers

7    of two racial groups, then those groups, based upon their ethnicity, would be modified, until such

8    time as interviews can be completed, or, if required, individual assessments with each inmate");

9    Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015 (July 6, 2007),

10   Ex. I; Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015 (October

11   15, 2012), Ex. J.; Evenson Decl., Ex. O, ECF No. 158-15 at 3 (In order to implement its race-

12   based lockdown policy, the CDCR assigns a race or ethnic tag to every inmate.  Defendants

13   acknowledge that they put each California prisoner into one of four racial groupings: Black;

14   White; Hispanic; and "Other."))

15          Second, the Court finds that Defendants' description of this case is predicated upon a

16   misunderstanding of Plaintiffs' allegations.  Although Plaintiffs' Complaint did include specific

17   allegations dealing with the mistreatment of individuals, those claims pertained to Plaintiffs'

18   Eighth Amendment claim that is no longer at issue.[7]  In contrast, Plaintiffs' Fourteenth

19   Amendment claim challenges the CDCR's statewide policy.  Although not explicitly stated, the

20   Court reads Plaintiffs' allegations as posing a facial challenge to the CDCR's policy.  Thus, the

21   Court is not persuaded by Defendants' challenges to commonality that are based upon its

22   contention that the policy as applied is constitutional.  The Ninth Circuit has explained that

23   individual claims are discrete from claims for systemic reform in which a plaintiff alleges that

24   many inmates are simultaneously harmed by a single policy.  *See Parsons*, 2014 WL 2523682, at

25

26   records for CDCR Employees, and information that might compromise the safety or security of a prison or prisoner.
     The Court has reviewed all of the documentation filed by the parties.  In an effort to maintain the confidentiality of
27   the documents, the Court has limited its discussion to portions of the sealed documents that do not fall within the
     "confidential" standard described above or to those documents that have been discussed in the parties' briefing which
     is available to the public.
28   [7]      *See* Summary Judgment Order, ECF No. 317.

1    *13 (holding that the different circumstances surrounding prisoners' health care while

2    incarcerated did not defeat commonality where plaintiffs were challenging the constitutionality of

3    specified statewide ADC policies and practices that govern the overall conditions of health care

4    services and confinement); *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013); *see also Brown*

5    *v. Plata*, 131 S.Ct. 1910, 1925 n.3 (2011).

6         Finally, Defendants reliance on *Wal-Mart* is misplaced.  In *Wal-Mart*, the plaintiffs were

7    female employees who alleged that defendants discriminated against them on the basis of their

8    sex by denying them equal pay or promotions, in violation of Title VII of the Civil Rights Act of

9    1964.  Wal-Mart's employment policy allowed local supervisors to use discretion in employment

10   matters but, unlike the policy at issue in this case, it forbade sex discrimination and imposed

11   penalties for denial of equal employment opportunity.  131 S.Ct. at 2553–54.  However, plaintiffs

12   asserted that the corporate culture made it "vulnerable to gender bias."  *Id.*  The Supreme Court

13   held that plaintiffs' effort to "sue about literally millions of employment decisions as once"

14   thwarted commonality because "the invalidity of one manager's use of discretion will do nothing

15   to demonstrate the invalidity of another's."  131 S.Ct. at 2552, 2254.  In contrast, here Plaintiffs

16   challenge a statewide policy that expressly allows the use of racial classification.  Therefore,

17   Plaintiffs challenge the policy of allowing racial classifications, not the individual warden's

18   discretion as to when to use the classification.  Accordingly, the instant case is distinguishable

19   from *Wal-Mart*.

20        Because this case involves an express policy that is utilized on all male inmates, the

21   posture is more analogous to the Ninth Circuit's opinion in *Parsons*.  The *Parsons* court affirmed

22   the certification of a class of inmates challenging the Arizona Department of Corrections health

23   care policy.  *See Parsons*, 2014 WL 2523682, at *16 (discussing numerous cases in which district

24   courts have certified class litigation concerning prison policies).[8]  There the panel specifically

25   ─────────────
     [8]      *See, e.g., Chief Goes Out v. Missoula Cnty.*, No. 12 Civ. 155, 2013 WL 139938, at *5 (D. Mont. Jan.10,
26   2013) ("[C]ourts have long recognized that, in prison condition cases like this one, the injury is the [deprivation]
     itself, not just the negative effects resulting from the [deprivation].... [O]ther courts have certified classes of inmates
     claiming unconstitutional deprivation of outdoor exercise, and scores of courts have certified classes of prisoners
27   claiming other unconstitutional prison conditions."); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D. N.Y. 2013)
     ("Whether the County was aware of and deliberately indifferent to the conditions at the [prison] is a common
28   question subject to class-wide resolution."); *Hughes v. Judd*, No. 12 Civ. 568, 2013 WL 1821077, at *23 (M.D. Fla.

                                                                 10

1  addressed the applicability of *Wal-Mart's* holding to prisoner cases and stated that "since *Wal-*

2  *Mart*, numerous courts have concluded that the commonality requirement can be satisfied by

3  proof of the existence of systemic policies and practices that allegedly expose inmates to a

4  substantial risk of harm." *Id.* at 16.  Accordingly, the Court finds that commonality is met.

5        **C.**     **Typicality**

6        To meet the typicality requirement, the claims of the named plaintiffs must be "typical of

7  the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under [Rule 23's] permissive

8  standards, representative claims are 'typical' if they are reasonably coextensive with those of

9  absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150

10  F.3d 1011, 1020 (9th Cir.1998).  "The test of typicality 'is whether other members have the same

11  or similar injury, whether the action is based on conduct which is not unique to the named

12  plaintiffs, and whether other class members have been injured by the same course of conduct.'"

13  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108

14  F.R.D. 279, 282 (C.D. Cal. 1985)).  Thus, "[t]ypicality refers to the nature of the claim or defense

15  of the class representative, and not to the specific facts from which it arose or the relief sought."

16  *Id.*

17        "As the Supreme Court recognized in *Wal-Mart,* Rule 23(a)'s commonality and typicality

18  requirements occasionally merge: 'Both serve as guideposts for determining whether under the

19  particular circumstances maintenance of a class action is economical and whether the named

20  plaintiff's claim and the class claims are so interrelated that the interests of the class members

21  will be fairly and adequately protected in their absence.'" *Parsons*, 2014 WL 2523682, at *19

22

23  Mar. 27, 2013) *report and recommendation adopted as modified*, No. 12 Civ. 568, 2013 WL 1810806 (M.D. Fla. Apr. 30, 2013) ("Plaintiffs' claims related to these [prison] conditions are capable of class-wide resolution: Plaintiffs seek permanent injunctive and declaratory relief that would enjoin allegedly unconstitutional behavior as applied to

24  the entire class.  Importantly, the questions of law are applicable in the same manner to each potential class member.... Each class member, if proceeding separately against Defendants, would need to meet the same test under

25  the Eighth and Fourteenth Amendments to prevail."); *Rosas v. Baca*, No. 12 Civ. 428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (Pregerson, J.) ("In a civil rights suit such as this one ... commonality is satisfied where the lawsuit

26  challenges a system-wide practice or policy that affects all of the putative class members.  Under such circumstances, individual factual differences among class members pose no obstacle to commonality."); *Indiana Prot. & Advocacy*

27  *Servs. Comm'n v. Comm'r, Indiana Dep't of Correction*, No. 08 Civ. 1317, 2012 WL 6738517, at *18 (S.D. Ind. Dec. 31, 2012) ("The mentally ill prisoners here, have demonstrated through a wealth of evidence, that the class is

28  united by the common question of whether the lack of treatment and isolated living conditions in IDOC facilities violate the Eighth Amendment.").

1    (quoting *Wal-Mart*, 131 S.Ct. at 2551 n.5).

2        Here, Plaintiffs are all inmates in the CDCR's custody.  Each declares that he is being

3    exposed, like all other members of the putative class, to a substantial risk of serious harm by the

4    challenged policy.  *Hanon*, 976 F.2d at 508.  Named Plaintiffs allege being locked down based on

5    their race which is "the same or [a] similar injury" as the rest of the putative class; they allege that

6    this injury is a result of the warden's implementation of the policy that is not unique to any of

7    them; and they allege that the injury follows from the policy itself, which is at the center of the

8    class claims.[9]  (*See* Mitchell Decl., ECF No. 161 at ¶¶ 2–4, 6 (all Black prisoners at High Desert

9    Prison were subjected to nearly 18 months of continuous lockdowns); Quezada Decl., ECF No.

10   163 at ¶¶ 4,5, 7 ("Because I am classified as Hispanic 'Other,' I have been locked down when

11   CDCR locks down all 'Hispanics,' and I have also been locked down when CDCR locks down

12   inmates whose ethnicity is 'Other.'"))  Furthermore, it does not matter that Plaintiffs may have in

13   the past suffered varying injuries; Rule 23(a)(3) requires only that their claims be "typical" of the

14   class, not that they be identically positioned to each other or to every class member.  *See Ellis v.*

15   *Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011) ("Differing factual scenarios

16   resulting in a claim of the same nature as other class members does not defeat typicality."); *see*

17   *also Hanon*, 976 F.2d at 508 (holding that typicality refers to the nature of the claim and not to

18   the specific facts from which it arose or the relief sought).  Thus, typicality is met.

19       **D.    Adequacy of Representation**

20       The named Plaintiffs must fairly and adequately protect the interests of the class.  Fed. R

21   Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent a class, courts

22   must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of

23   interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

24

25   [9]    As previously discussed in Section III(B), Defendants have admitted that the policy at issue is applied to all
     inmates and allows the use of racial classification as a means for lockdowns subsequent to an "incident."  *See* Lewis
26   Depo., ECF No. 158-2 at 19:05–19:11 (testifying "if that particular incident occurs, and it's an immediate emergency
     threat to the security of the institution, and it involves large numbers of two racial groups, then those groups, based
27   upon their ethnicity, would be modified, until such time as interviews can be completed, or, if required, individual
     assessments with each inmate"); Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015
     (July 6, 2007), Ex. I; Restricted Operations Manual, Chapter 50000, Subchapter 55000, Section 51015 (October 15,
28   2012), Ex. J.)

                                          12

1    action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at

2    1020).

3         Defendants argue that Plaintiff Mitchell would not be an adequate representative of the

4    class because he has a conflict of interest with the putative class.  (ECF No. 213 at 71.)

5    Specifically, Defendants assert that Mitchell alone seeks monetary damages based on alleged

6    injuries resulting from past modified programs and thus his "demand to be awarded millions of

7    dollars in damages could conflict with the plaintiff class's demand for injunctive relief."  (ECF

8    No. 213 at 71.)  In response, Plaintiffs cite *Local Joint Executive Bd. of Culinary/Bartender Trust*

9    *Fund v. Las Vegas Sands, Inc.*, in which the Ninth Circuit held that "the adequacy-of-

10   representation requirement is satisfied as long as one of the class representatives is an adequate

11   class representative."  244 F.3d 1152, 1162 n.2 (9th Cir. 2001).

12        The Court is not convinced that Plaintiff Mitchell's other claims hamper his ability to

13   adequately represent the proposed class.  *See Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138

14   (1st Cir. 2012) ("[P]erfect symmetry of interest is not required and not every discrepancy among

15   the interests of class members renders a putative class action untenable.  Only conflicts that are

16   fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting

17   the Rule 23(a)(4) adequacy requirement."); *Allied Orthopedic Appliances, Inc. v. Tyco*

18   *Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ("Class certification will be

19   inappropriate if fundamental conflicts of interest are determined to exist among the proposed

20   class members. . .  A conflict is "fundamental" when it goes to the specific issues in controversy,

21   where, as here, some plaintiffs claim to have been harmed by the same conduct that benefited

22   other members of the class, preventing the named representatives from "vigorously prosecut[ing]

23   the interests of the class through qualified counsel.")  However, even if Defendants' assertion has

24   merit, Plaintiff Quezada does not have an alleged conflict.  Moreover, Defendants do not dispute

25   that Quezada would be an adequate representative.  Accordingly, the Court finds that Plaintiff

26   Mitchell's additional claims do not prevent Plaintiffs from adequately representing the class.

27        Furthermore, Plaintiffs' counsel, the Prison Law Office and Bingham McCutchen LLP,

28   who are seeking to represent the class, satisfy the requirements set forth in Rule 23(g) and thus

                                              13

1    would adequately represent the class.  Rule 23(g) requires that the district court appoint class

2    counsel for any class that is certified.  The Rule identifies four factors that the Court must

3    consider in appointing class counsel: (1) "the work counsel has done in identifying or

4    investigating potential claims in the action;" (2) "counsel's experience in handling class actions,

5    other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge

6    of the applicable law;" and (4) "the resources that counsel will commit to representing the class."

7    Fed. R. Civ. P.  23(g)(1)(A).  So far, Plaintiffs' counsel has been diligent in representing Plaintiffs

8    which is evidenced by the numerous motions and briefs that have been submitted to the Court.

9    Thus, Rule 23(g)(1) is satisfied.  Furthermore, Plaintiffs' counsel has previous experience with

10   both prisoner litigation and class actions (*see* Evenson Decl., ECF No. 158, Evenson CV, ECF

11   No. 158-1, Holtz Decl., ECF No. 165 at ¶¶ 8–9).  In addition Plaintiffs' litigation team has

12   already dedicated time and resources to this litigation and states that it will continue to "commit

13   major staffing and material resources to the representation of this class, including by retaining

14   highly qualified experts."  (*See* ECF No. 155 at 25; ECF No. 158 at ¶ 2; ECF No. 165 at ¶ 4;

15   Specter Decl., ECF No. 166 at ¶¶ 4–5.)  As such, the Court finds that the class would be

16   adequately represented by Plaintiffs.

17          **E.      Rule 23(b)(2)**

18          In addition to satisfying Rule 23(a), a class action must meet the requirements of one of

19   the provisions of Rule 23(b).  Plaintiffs assert that this case fits squarely within Rule 23(b)(2),

20   which authorizes class certification where "the party opposing the class has acted or refused to act

21   on grounds that apply generally to the class, so that final injunctive relief or corresponding

22   declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The

23   Ninth Circuit has repeatedly stated that "the primary role of Rule 23(b)(2) has always been the

24   certification of civil rights class actions."  *Parsons*, 2014 WL 2523682, at *20 (citing *Amchem*

25   *Products, Inc. v. Windsor*, 521 U.S. 591, 614, (1997)); *see also Walters v. Reno*, 145 F.3d 1032,

26   1047 (9th Cir. 1998) (Rule "23(b)(2) was adopted in order to permit the prosecution of civil rights

27   actions."); *see also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) ("The

28   writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits

1  that challenge widespread rights violations of people who are individually unable to vindicate

2  their own rights." (citations omitted)).  Accordingly, whether a class may be certified under Rule

3  23(b)(2) depends on "whether class members seek uniform relief from a practice applicable to all

4  of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009).  "'[I]t is sufficient' to meet

5  the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is

6  generally applicable to the class as a whole.'" *Id.* (quoting *Walters*, 145 F.3d at 1047).

7        Here, Plaintiffs seek injunctive relief from the race-based lockdown policy utilized in all

8  the men's prisons under CDCR jurisdiction.  Plaintiffs have alleged that the allegedly

9  unconstitutional policy is applied to the entirety of the class, and the relief sought is uniform to all

10  members of the proposed class.  The Court agrees that the relief sought by Plaintiffs puts this case

11  squarely within the framework of Rule 23(b).  In fact, this is exactly the type of wide spread civil

12  rights violation that subsection (b)(2) was intended to facilitate.  *See Baby Neal for & by Kanter*,

13  43 F.3d at 63. Moreover, the Court notes that Defendants do not present any arguments

14  purporting that Plaintiffs' motion for class certification is improper under Rule 23(b)(2).  As such,

15  Plaintiffs have met their burden under Rule 23(b)(2).

16        **IV.    CONCLUSION**

17        For the reasons stated above, the Court hereby GRANTS Plaintiffs' Motion in Support of

18  Class Certification (ECF No. 155).  The Court finds that the named Plaintiffs are adequate

19  representatives of the class of male inmates within the CDCR.  The Court further finds that

20  Plaintiff Quezada is an adequate representative of the aforementioned class.  Finally, the Court

21  finds that Plaintiffs' litigation team comprised of the Prison Law Office and Bingham McCutchen

22  LLP, is competent to pursue this action on behalf of the class.  In light of the foregoing and the

23  Court's determination that Plaintiffs' Motion for Class Certification should be granted, the Court

24  hereby appoints the Prison Law Office and Bingham McCutchen LLP as class counsel.

25        IT IS SO ORDERED.

26  Dated: July 21, 2014

27  _____

28                Troy L. Nunley
                  United States District Judge