UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MITCHELL, et al., | No. 2:08-CV-01196-TLN-EFB |
| Plaintiff, | |
| v. | **ORDER** |
| MATTHEW CATE, et al., | |
| Defendants. | |

This matter is before the Court pursuant to what this Court deems to be an impermissible communication submitted to this Court by an individual claiming to be a California Department of Corrections and Rehabilitation ("CDCR") employee concerning present litigation. (*See* Attached Email from CDCR employee.) In accordance with Canon Three of the Code of Conduct for United States Judges, the Court hereby notifies the parties of the impermissible communication and publishes said communication on the docket. Such ex parte communications are impermissible and thus the Court declines to consider the attached communication[1]. *See* Canon 3A(4)(b) of the Code of Conduct for United States Judges ("If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should

---

[1] The impermissible email was addressed to the Court's judicial assistant who does not know the person identified as the sender and has never communicated with said sender in any form or fashion.

promptly notify the parties of the subject matter of the communication . . ."); E.D. Cal. Local R. 135(d) ("Unless a party expressly waives service, copies of all documents submitted to the Court shall be served upon all parties to the action . . .").

The matters involved in this litigation exemplify the situation that the rule prohibiting ex parte communications was made to govern. Indeed, a case involving civil liberties in California's penal system is exactly the type of case that spurs impassioned debate. The Court is cognizant of the importance of this case and does not take its role lightly. Consequently, the Court hereby orders the Defendants and their counsel to take steps to ensure that no further impermissible ex parte communications are sent to the Court involving this matter. In doing so, the Court expresses no opinion as to whether the ex parte communication was initiated by this individual's own volition or submitted with the approval, consent or willful ignorance of someone at the CDCR. In any event, the Court cautions the parties going forward that further ex parte communications will not be tolerated. Rule 5-300(B) of Professional Conduct governing the California Bar prohibits attorneys from:

> directly or indirectly communicat[ing] with or argu[ing] to a judge or judicial officer upon the merits of a contested matter pending before such judge or judicial officer, except: (1) In open court; or (2) With the consent of all other counsel in such matter; or (3) In the presence of all other counsel in such matter; or (4) In writing with a copy thereof furnished to such other counsel; or (5) In ex parte matters.

This prohibition extends to a judge's staff, including but not limited to "law clerks, research attorneys, or other court personnel who participate in the decision-making process." Cal. State R. Prof'l Conduct, rule 5-300(C).

As indicated above, although the communication in question does not appear to come from counsel, the Court reminds counsel that it is counsel's province to advise their client as to their actions involving litigation. Furthermore, counsel is prohibited from advising a client to violate "any law, rule, or ruling of a tribunal unless the member believes in good faith that such law, rule, or ruling is invalid" or to "knowingly assist in, solicit, or induce any violation of these rules or the State Bar Act." Cal. State R. Prof'l Conduct, rules 1-120 and 3-210. Should such

///

///

///

matters persist, the Court is inclined to issue an Order to Show Cause as to why the offending parties and their counsel should not be sanctioned pursuant to Local Rules 110 and 184(a).

**IT IS SO ORDERED**.

Dated: August 1, 2014

Troy L. Nunley
United States District Judge

3

# ATTACHMENT

| | |
|---|---|
| From: | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| To: | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| Date: | 07/24/2014 11:43 AM |
| Subject: | CDCR's Racial Segregation Policy |

I am writing regarding the case before Hon. Troy L. Nunley which seeks to determine whether CDCR's racial segregation of inmates following violence within prison walls violates the 14th Amendment .

I work in a California prison as a Correctional Officer, it's hard to explain to someone who doesn't work inside a prison how inmate politics work. Inmates will set aside their street gang alliances and join together based on race alone, for example Bloods will align with Crips because they are black. We don't separate them based on their race alone, we have white crips and black "Sureno's" (southern hispanic aligned), we separate them based on gang affiliation as well it's very complicated. It serves as a legitimate penological interest to separate inmates involved in violence against each other when they are of different races or affiliated with different gangs to prevent the immediate furtherance of violence (and protect staff) until all of the facts surrounding the incident can be gathered and a decision made as to how to proceed. For example you can have a riot where southern hispanics riot against blacks, in the group of southern hispanics you can have white inmates who are members of hispanic street gangs and in the group of blacks you can have white inmates who are crips or bloods, not all white inmates will be placed on a lock down because it's clearly a gang related issue. It just seems to me that if you say it's a violation of the 14th Amendment to segregate inmates of racial groups because they perpetrated violence against each other you open yourself up to lawsuits based on the fact that you knew they were violent toward each other and failed to separate them, thus allowing the furtherance of violence.

I don't expect this email to make it to Judge Nunley, but in case it does I just thought perhaps the viewpoint of someone who works inside a prison around inmates might give some perspective. Thank you for your time.